**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| A.T. and O.T. individual and on behalf of A.T., | : | |
| *Plaintiffs.* | : | Case No. 3:25-cv-1728 |
| | : | |
| v. | : | |
| | : | |
| FREEHOLD REGIONAL HIGH SCHOOL DISTRICT BOARD OF EDUCATION | : | |
| | : | |

**BRIEF OF PLAINTIFFS, A.T. and O.T. individually and o/b/o A.T., a Minor, IN SUPPORT  OF PLAINTIFFS MOTION FOR SUMMARY JUDGEMENT AGAINST THE DEFENDANT FREEHOLD REGIONAL HIGH SCHOOL DISTRICT BOARD OF EDUCATION**

**MONTGOMERY LAW GROUP**
Bradley Flynn, Esquire
NJ Attorney ID Number 173762016
P: (215) 650-7563
bradley@ed-law.com
1420 Locust St, Suite 420, Phila. PA, 19102

**TABLE OF CONTENTS**

**I. PRELIMINARY STATEMENT**........................................................................................ **2**

**II. STATEMENT OF FACTS**............................................................................................ **4**

**III. STANDARD OF REVIEW**.........................................................................................**4**

**IV. ARGUMENT**.............................................................................................................**6**

    A. The ALJ Erred When he Did Not Find that the District Denied A.T. a FAPE when the Defendant District Failed to Provide an Appropriate Program for A.T...................................6

1. The ALJ erred when he failed to find that the District denied A.T. a FAPE when it did not implement the IEP's, including A.T's modifications, or offer an IEP at all..................6

2. The ALJ Erred when he found that the ICR placement would be appropriate for A.T...9

3. The ALJ erred when he did not find that two of the District's proposed IEP's were never offered to Parents........................................................................................ 10

B. The ALJ Erred When he Did Not Find that the District Denied A.T. a FAPE when the Defendant District Failed to Develop Appropriate IEP's for A.T.............................................11

C. The ALJ Erred When He Did Not Award Compensatory Education...................................13

1. The ALJ Should have awarded compensatory education to A.T. for when the District Failed to Implement the IEP and Provide Related Services.............................................. 15

2. The District Owes Compensatory Education for its substantive-procedural violations of the IDEA........................................................................................................................ 16

a. The District Committed a Substantive Procedural Violation of the IDEA when it excluded Parents from the IEP decision-making process.................................................17

b. The District committed a substantive-procedural violation of the IDEA when it denied Parents' outside evaluator the ability to observe A.T. in the classroom........................... 18

c. The District committed a substantive-procedural violation of the IDEA when it failed to offer translation services to Parents...................................................................... 19

d. The District Owes A.T. Compensatory Education for Developing Deficient IEP's......20

e. The ALJ Erred When he ruled on the Section 504 and Americans with Disabilities Act Discrimination and Retaliation Claims...........................................................................21

**V. CONCLUSION..............................................................................................................23**

**TABLE OF AUTHORITIES**

**Cases**

*Abigail P. ex rel. Sarah F. v. Old Forge Sch. Dist.*, 105 F.4th 57 (3d Cir. 2024) ……..................5–6

*Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247 (3d Cir. 2014) …........................................... 3–4

*Board of Education v. Rowley,* 458 U.S. 176 (1982) ............................................................ 15, 19

*C.H. v. Cape Henlopen Sch. Dist.,* 606 F.3d 59 (3d Cir. 2010) ..................................................... 16

*D.B. v. Esposito,* 675 F. Supp. 2d 387 (D.N.J. 2009) ........................................................... 6

*Endrew F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386 (2017) ............................................. 10

*Ferren C. v. School Dist. of Phila.,* 612 F.3d 712 (3d Cir. 2010) .............................. 13–15, 19–20

*G.L. v. Ligonier Valley Sch. Dist. Auth.,* 802 F.3d 601 (3d Cir. 2015) ......................................... 13

*Houston Indep. Sch. Dist. v. Bobby R.,* 200 F.3d 341 (5th Cir. 2000) ............................................. 6

*Knable ex rel. Knable v. Bexley City Sch. Dist.*, 238 F.3d 755 (6th Cir. 2001)............................. 16

*L.J. ex rel. N.N.J. v. Sch. Bd. of Broward Cnty.*, 927 F.3d 1203 (11th Cir. 2019) ……................... 6

*Lester H. ex rel. Octavia P. v. Gilhool,* 916 F.2d 865 (3d Cir. 1990) ..................................... 13–14

*M.F. v. Central Reg'l Sch. Dist.*, No. EDS 11873-15 (N.J. O.A.L. June 22, 2016).................13–14

*Marple Newtown Sch. Dist. v. Rafael N.,* 2007 U.S. Dist. LEXIS 62494 (E.D. Pa. Aug. 23, 2007) ................................................................................................................................ 19

*New Milford Bd. of Educ. v. C.R.*, 431 F. App'x 157 (3d Cir. 2011) ............................................. 11

*Oberti v. Bd. of Educ. of Borough of Clementon,* 995 F.2d 1204 (3d Cir. 1993) .......................... 8

*P.P. ex rel. Michael P. v. West Chester Area Sch. Dist.*, 585 F.3d 727 (3d Cir. 2009) …… 3, 14–15
*Reid ex rel. Reid v. District of Columbia,* 401 F.3d 516 (D.C. Cir. 2005) ............................ 13–15
*Ridley Sch. Dist. v. M.R.,* 680 F.3d 260 (3d Cir. 2012) ......................................................... 4
*Ridgewood Bd. of Educ. v. N.E.,* 172 F.3d 238 (3d Cir. 1999) ......................................... 12
*S.H. v. State-Operated Sch. Dist. of Newark,* 336 F.3d 260 (3d Cir. 2003) ............................... 3–4

**Statutes**

20 U.S.C. § 1401(26) ................................................................................................................ 10
20 U.S.C. § 1412(a)(5) .............................................................................................................. 11
20 U.S.C. § 1414(d)(1)(A)(i)(VIII) ......................................................................................... 12
20 U.S.C. § 1415(b)(1), (b)(4), (d)(2), (f)(1)(A), (i)(2)(C), (j) .......................................... 3, 15–19
20 U.S.C. § 6312(g)(2) .............................................................................................................. 19

**Regulations**

34 C.F.R. § 300.9 ...................................................................................................................... 19
34 C.F.R. § 300.24 / § 300.34 ................................................................................................ 10
34 C.F.R. § 300.116 .................................................................................................................. 16
34 C.F.R. § 300.324 ............................................................................................................. 10, 16
34 C.F.R. § 300.327 .................................................................................................................. 16
34 C.F.R. § 300.501 .................................................................................................................. 16
N.J.A.C. 1:6A-14.1(d) ............................................................................................................... 9
N.J.A.C. 6A:14-2.3 ................................................................................................................ 5, 19
N.J.A.C. 6A:14-2.5(c)(6) .......................................................................................................... 18
N.J.A.C. 6A:14-2.7 .............................................................................................................. 15–16
N.J.A.C. 6A:14-3.3 .............................................................................................................. 10–11
N.J.A.C. 6A:14-3.7 ................................................................................................................ 9–12
N.J.A.C. 6A:14-3.8(e) ............................................................................................................... 11
N.J.A.C. 6A:14-4.1(a), 4.2(a) ................................................................................................ 7, 11

## I.    PRELIMINARY STATEMENT

Plaintiffs A.T. and O.T. (*collectively*, the "Parents") on behalf of A.T. have appealed the December 11, 2024, Final Order and Decision (the "Order") of the Honorable Jacob B. Gertsman, ALJ (the "ALJ"), which denied all relief to the Plaintiffs. Plaintiffs alleged, *inter alia*, that the Freehold Regional High School District (the "District" or the "Defendant") denied student A.T. a free appropriate public education ("FAPE") when the District, *inter alia*, failed to

3

offer an appropriate program for the 2021-2022, 2022-2023, and 2023-2024 school years; when it did not offer to place A.T. in the in-class resource ("ICR") setting, during the 2023-2024 school year; when it failed to develop appropriate Individualized Education Programs ("IEP") for the 2021-2022, 2022-2023, and 2023-2024 school years, including when the District offered no IEP at all during the 2022-2023 school year (Vol II, A577-A591); and when the District violated Section 504 of the Rehabilitation Act of 1973 and the Americans with Disabilities Act ("ADA") by discriminating against and retaliating against A.T. and/or his parents. (Vol I, A2).

After two days of plenary hearing, the ALJ ruled, on December 11, 2024, favorably for the District, thus, denying Parents all relief in their Petitions for Due Process. Parents now assert that the ALJ erred, as a matter of law, when, *inter alia*, he denied the relief requested in their Petition for Due Process. (Vol.I, A26).

By way of brief introduction, A.T. is diagnosed, *inter alia*, with Autism Spectrum Disorder, receptive-expressive language disorder, social communication disorder, spinal-cord malformations, and immune dysfunction. Because of these disabilities, the District programmed for A.T. through an individualized education program ("IEP") under the classification communication impairment. A.T. disenrolled from the District in June 2025, which was his senior year. (ECF 1  3).

Plaintiffs contend the District has inconsistently provided special education and related services to A.T. through an IEP and that it has denied A.T. access to the benefits of his education on the basis of his disability by refusing to offer or implement an IEP. This includes the District refusing to implement the IEP's accommodations and specially-designed instruction. By refusing to implement the IEP accommodations, supplementary services, and specially-designed instruction, or update or offer an IEP to meet A.T. 's evolving needs, the District continued to

4

deny him access to the benefits of his program. Parents additionally contend that the District denied them meaningful participation as members of the IEP team, which only further denied A.T. a FAPE. Despite adducing overwhelming evidence at the due process hearing, the ALJ found favorably for the District and against the Parents. (Vol. I, A26). As such, and as demonstrated in the below paragraphs, the ALJ erred when he did not rule favorably for the Parents

## II.    STATEMENT OF FACTS

Plaintiffs incorporate by reference their Local Rule 56.1 Statement of Facts.

## III.    STANDARD OF REVIEW

When reviewing state administrative decisions under the Individuals with Disabilities Education Act (the "IDEA"), a District court, "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines appropriate." 20 U.S.C. §1415(i)(2)(c). The Third Circuit has described this standard as "modified *de novo*" review. *P.P. ex. rel. Michael P. v. West Chester Area Sch. Dist.,* 585 F. 3d 727, 734 (3d Cir. 2009).

The Third Circuit Court of Appeals has set forth the following standard of review when a federal District Court reviews an IDEA Hearing Officer or ALJ decision:

> When a district court reviews an administrative law judge's decision, a court of appeals exercises plenary review over the court's legal conclusions, and reviews its findings of fact with a "modified de novo" standard of review (giving the administrative factual findings "due weight" and considering them to be prima facie correct) for clear error.

*Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 266 (3d Cir. 2014).  It has been further explained that "[a] federal district court reviewing the administrative fact finder in the first instance is similarly required to defer to the ALJ's factual findings unless it can point to contrary non-testimonial extrinsic evidence on the record." *S.H. v. State-Operated Sch. Dist. of City of Newark*, 336 F.3d 260, 270 (3d Cir. 2003). However, "[w]hen the hearing officer's determination does not contain 'reasoned and specific findings' it 'deserves little deference.'" *N.W. v. D.C.*, No. CV 16-0573 (RC), 2017 WL 2080250, at *8 (D.D.C. May 15, 2017) quoting *Kerkam ex. rel Kerkam v. Superintendent, D.C. Pub. Sch.*, 931 F.2d 84, 87 (D.C. Cir. 1991).  As a result, where an administrative law judge's factual findings are contradicted by non-testimonial evidence, are not supported by the record, or run contrary to law, the court may properly reverse the findings of the administrative law judge, so long as the court explains its rationale for the same.  *See, e.g., Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 279 (3d Cir. 2012)(affirming a District Court's reversal of a Hearing Officer's decision, which was inconsistent with the documented evidence in the case and when decision was internally inconsistent).

Applying this standard to the current matter, for the reasons outlined in this brief, the ALJ's Decision should be reversed. This Court, in applying the above standard, should find that the ALJ erred when, *inter alia*, he did not find that Defendant District failed to offer an appropriate program for the 2021-2022, 2022-2023, and 2023-2024 school years; when it did not offer an IEP for the 2022-2023 school year; when it did not offer to place A.T. in the ICR setting; when it failed to develop an appropriate IEP for the 2021-2022, 2022-2023, and 2023-2024 school years; and when the ALJ ruled on whether the District violated Section 504 of the Rehabilitation Act of 1973 and the Americans with Disabilities Act ("ADA") by discriminating against and retaliating against A.T. and/or his parents.

6

The Federal District Court of New Jersey, per L.Civ.R. 56.1, requires parties moving for summary judgement to submit a "statement" listing those material facts for which they alleged there exists no genuine issue of fact, from which each party believes they are entitled to prevail. However, because this case is simply an appeal, and not a case of first impression, it is based on a Joint Discovery File[1], as opposed to Affidavits or Declarations, consisting of documentary evidence introduced at the due process hearings, as well as the transcripts of the testimony of all of the witnesses who testified at those same due process hearings.

## IV.    ARGUMENT

### A. The ALJ Erred When he Did Not Find that the District Denied A.T. a FAPE when the Defendant District Failed to Provide an Appropriate Program for A.T.

#### 1. The ALJ erred when he failed to find that the District denied A.T. a FAPE when it did not implement the IEP's, including A.T's modifications, or offer an IEP at all.

Courts have concluded that "The IEP consists of a detailed written statement arrived at by a multi-disciplinary team summarizing the child's abilities, outlining the goals for the child's education and specifying the services the child will receive." *Polk v. Central Susquehanna Intermediate Unit 16*, 853 F.2d 171, 173 (3d Cir. 1988) (citing 34 C.F.R. § 300.347), *cert. denied*, 488 U.S. 1030, 109 S. Ct. 838, 102 L. Ed. 2d 970 (1989). N.J.A.C. 6A:14-2.3 (d) further requires the District to implement the agreed-upon IEP without delay, as Parent had given her consent to the IEP. In *Abigail P.*, the Third Circuit handed down a "materiality standard" for evaluating failure to implement claims. *Abigail P. through Sarah F. v. Old Forge Sch. Dist.*, 105 F.4th 57, 66 (3d Cir. 2024). Under this standard, "'a party challenging the implementation of an IEP must show more than a *de minimis* failure to implement all elements of that IEP, and, instead, must

---

[1] Citations to the record shall be designated "JA" followed by the appropriate page number or shall reference a specific exhibit.

7

demonstrate that the school board or other authorities failed to implement substantial *or significant provisions* of the IEP.'" *Id.* at 65 (quoting [\*18] *Houston Indep. Sch. Dist. v. Bobby R.*, 200 F.3d 341, 349 (5th Cir. 2000)) (emphasis in original). When a party challenges the implementation of an IEP, "the heart of [the] issue [i]s . . . whether any deviation whatsoever from an IEP necessarily violates the IDEA, and—if not—how far is too far." *L.J. ex rel. N.N.J. v. Sch. Bd. of Broward Cnty.*, 927 F.3d 1203, 1211 (11th Cir. 2019).

The District denied A.T. a FAPE when it did not implement the assistive technology per his IEP. In *D.B. v. Esposito*, the court emphasized that the failure to provide assistive technology specified in the student's IEP constitutes a FAPE. 675 F. Supp. 2d 387 (D.N.J. 2009). The court ruled that providing necessary supports and services is essential for students with disabilities to access their education effectively, underscoring that the lack of assistive technology impedes educational progress.  Similarly in  *R.L. v. S. D. of Philadelphia*, the court emphasized the failure to provide the assistive technology necessary for the student to complete assignments undermines the purpose of the IEP and denies the student meaningful access to their education. 2021 WL 148143 (E.D. Pa. Jan. 15, 2021).

As applied here, by neglecting to provide the required assistive technology and accommodations, the District engaged in both substantive and procedural violations, denying A.T. the critical support needed to succeed academically.Teachers consistently failed to accommodate A.T.'s needs and did not provide the assistive technology outlined in his IEP, due to handwriting difficulties (Assistive Technology listed under supplementary services). For example, A.T.'s teachers required him to handwrite in-class assignments and graded work as late, despite his IEP accommodations for assistive technology and extended time, and he was denied computer access for certain in-class assessments. (Vol. IV, A1217-A1220; A1223- A1225;

8

A1231- A1234; A1239-A1243; A1250). Despite the parent's efforts to modify assignments at home, these modifications were unrecognized, and A.T. was denied credit (Vol. III, A1162 - A1165). During the due process hearing, Parents presented evidence that the District did not implement these accommodations; yet, the ALJ did not find that the District denied A.T. a FAPE. Applying the above case law, however, the ALJ should have found that the District denied A.T. a FAPE when it did not implement the assistive technology, per the explicit language of his IEP. (Vol. I, A104).

The ALJ erred when he did not find that the District did not implement the IEPs when it failed to provide speech therapy and counseling services to A.T.[2] The IEP specifically called for four, twenty-minute Counseling sessions per month, but from February 2022 to June 2023, the District did not provide this service. Similarly, the IEP called for speech therapy; yet, the District did not provide this related service between February 2022 and June 2023.(Vol. II, A881). Though Plaintiffs adduced evidence at the due process hearing that the District did not provide these services per A.T.'s IEP, he did not find that the District failed to provide A.T. with a FAPE.

The ALJ further erred when he did not find that the District denied A.T. a FAPE when A.T.'s teachers failed to implement his IEP accommodations. For example, the administrative record shows that in November 2021, A.T. 's English teacher refused to provide him with digital graphic organizers, which were one of the accommodations required by his IEP. (Vol. III, A1025-A1035). By way of further example, during the 2021-2022 school year, A.T.'s geometry teacher refused to provide A.T. with any of the accommodations required by his IEP. (Vol. III, A1189-A1191). Because the District did not implement the accommodations, A.T. did not

---

[2] 34 CFR § 300.34(a) specifies that school districts are to provide related services to assist a child with a disability to benefit from special education. Furthermore, N.J.A.C. 6A:14-4.1(a) affirms "Each district board of education shall provide educational programs and related services for students with disabilities required by the IEP's of students for whom the district board of education is responsible."

9

perform well in these classes and did not make meaningful gains. Despite Plaintiff's presenting this evidence during the due process hearing, the ALJ did not find that the District failed to implement the IEP. The ALJ's findings, moreover, are counter to the weight of evidence.

**2. The ALJ erred when he found that the ICR placement would not be appropriate for A.T.**

The ALJ failed to apply the Third Circuit's standard to determine whether the Learning Language Disabilities ("LLD") was appropriate to provide FAPE to A.T. In *Oberti v. Bd. of Educ. of Borough of Clementon Sch. Dist.,* the Third Circuit established the standard for whether a placement meets the least-restrictive mandate. 9 F.2d 1204 (3d. Cir. 1993). The two-prong test asserts: (1.) Can the District satisfactorily educate the student in the general education classroom with the use of supplementary aids and services; and (2.) if after considering the factors outlined under the first prong, then to what extent does the proposed placement allow for the student to interact with non-disabled students? *Oberti v. Bd. of Educ. of Borough of Clementon Sch. Dist.* 99 F.2d 1204 (3d. Cir. 1993). Under the first prong, hearing officers consider three factors: (a.) to the extent to which reasonable efforts were made to accommodate the student in the general education setting with the use of supplemental supports and services; (b.) the outcome of comparing the benefits of educating the student general education versus the more-restrictive setting; and (c.) the possible negative effects of inclusion on the general education students. *Id.*

In the case at bar, the ALJ did not apply any of the *Oberti* factors and, instead, concluded that the ICR placement was not appropriate. (Vol., I A25). In fact, the ALJ's Order is bereft of any mention of *Oberti* and its factors. Rather, the ALJ overlooked that A.T. did not make progress because of the poorly implemented IEP's and because the District did not offer an IEP at all during the 2022-2023 school, when stay-put was in effect[3].(Vol. II, 577-592). Here,

---

[3] The IDEA's stay-put provision requires, "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the

10

applying the first prong of *Oberti*, the record shows that there were minimal efforts to accommodate A.T. in the ICR setting. Most notably, the District frequently failed to implement the IEP, including the accommodations, assistive technology, and related services. (Vol. I, A104). In addition, the District also did not offer an IEP for the 2022-2023 school year. (Vol. II, A758; A800).  Despite the fact that the record shows that the District failed to implement and/or to offer an IEP, the ALJ determined that the LLD placement was appropriate. Before the ALJ reached that conclusion, however, he was required to apply the *Oberti* factors. Because the District failed to even satisfy the first prong of this test, it could not show that the LLD placement was appropriate. As such, the ALJ erred when he found that the LLD placement was appropriate for A.T.

> **3.  The ALJ erred when he did not find that two of the District's proposed IEP's were never offered to Parents.**

The ALJ erred when he gave favorable weight to the falsified IEP's adduced during the due process hearing and to the District's evidence. N.J.A.C. 1:6A-14.1(d) specifies, "The judge's decision shall be based on the preponderance of the credible evidence, and the proposed action of the board of education or public agency shall not be accorded any presumption of correctness." At the due process hearing, no evidence was presented that shows that the District ever provided the draft IEP to Parents in August 2022.

Per N.J.A.C. 6A:14-3.7(1), the child study team must keep a record of all individuals who participated in the meeting to develop the IEP. The IEP, notably, lacks signatures and a date for the IEP meeting. (Vol. II, A577; A578; A592). Additionally, during testimony, Dr. Howland struggled to locate a date on the draft IEP and could not match it with the August 2, 2022 meeting (Vol. V., A1550). Similarly, Ms. Fitzhenry failed to find a date during her testimony

---

then-current educational placement of the child . . . until all such proceedings have been completed." 20 U.S.C. § 1415(j).

(Vol. V, A1676).Despite the fact that no record exists for this IEP being the product of an IEP meeting, the District, nonetheless, attempted to introduce it into evidence. Similarly, the District introduced an IEP it alleges was created in October 2022. The IEP contains the date of a meeting, but contains no signatures for meeting participants. (Vol. IV, A137);(Vol. I, A138; A149; A154) .The ALJ should have found that, based on the false IEP's, the District's witnesses were less than credible. By failing to give the appropriate weight to the fictive IEP, the ALJ erred in reaching his final decision.[4]

**B. The ALJ Erred When he Did Not Find that the District Denied A.T. a FAPE when the Defendant District Failed to Develop Appropriate IEP's for A.T.**

Central to special education is the IEP. The Supreme Court opined that an IEP "is constructed only after careful consideration of the child's present level of achievement, disability, and potential for growth." *Endrew F. v. Douglas County Sch. Dist., RE-1*, 137 U.S. 988, 999 (2017). The Court affirmed that the IDEA "requires participating States to educate a wide spectrum of handicapped children," and "the benefits obtainable by children at one end of the spectrum will differ dramatically from those obtainable at the other end, with infinite variations in between." *Id.* at 999 (citing *Rowley,* 458 U.S. at 206-09). The Court held, "an educational program must be appropriately ambitious in light of [the student's] circumstances…[and] every child should have the chance to meet challenging objectives." *Id*. at 1000.

Furthermore, the District did not provide adequate counseling services through the IEP. The IDEA contemplates that school districts will provide related services to students, which

---

[4] The weight to be given to an expert depends upon "the witness' candor, intelligence, knowledge, and especially upon the facts and reasoning which are offered as foundation of [his or] her opinion." *County of Ocean v. Landolfo,* 132 N.J. Super. 523, 528 (App. Div. 1975). New Jersey Rule of Evidence 703 requires that an expert's opinion testimony be based upon facts or data for it to be relevant and admissible. An expert's opinion, which is unsupported by factual evidence or other data, and is merely bare conclusions, is a "net opinion." See *State v. Townsend,* 186 N.J. 473, 494-95 (2006).

includes "recreation," "therapeutic recreation," "counselling services," "social work services," 20 USCS § 1401(26). N.J.A.C. 6A:14-3.3 speaks to programming for a student's social difficulties and emotional needs. The absence of adequate counseling services jeopardized A.T.'s educational progress. The proposed draft IEP reduced A.T.'s counseling from four to two sessions per month and contained minimal goals, despite evidence showing a continued need for increased support. (Vol. I, A186). Though the psychological evaluations identified significant challenges in processing speed, motor skills, communication, and socialization; yet, these needs went unaddressed. (Vol. II, A696).

The District denied A.T. a FAPE when it did not program for A.T.'s behavior through the IEP. The IDEA Regulations mandate, "In the case of a child whose behavior impedes the child's learning or that of others, the IEP team must consider the use of positive behavioral interventions and supports, and other strategies, to address that behavior," 34 CFR §300.324(2). The Third Circuit found:

> If a mentally disabled child continuously presents an adverse behavior that genuinely interferes with his ability to garner any real benefit from the education provided and the IEP does not adequately remedy this behavior, it stands to  [**8] reason that the school district has failed to provide even a "basic floor of opportunity," much less the meaningful benefit required by our Court.

*New Milford Bd. of Educ. v. C. R.*, 431 Fed. Appx. 157, 160 (3d Cir. 2011).

As applied here, despite A.T. receiving over twenty disciplinary referrals and incidents of Harassment, Intimidation, and Bullying ("HIB") between October 2023 and April 2024, the District opted for punitive measures instead of providing necessary supports. (Vol. IV,A1294-5; A1340- A1357).This punitive approach failed to recognize that A.T.'s behavior is linked to his disability, thereby neglecting his need for supportive interventions required by IDEA and N.J.A.C. 6A:14-3.3. Here, A.T. was missing class time when he was off task or was engaged in

13

this allegedly disruptive behavior. To that end, the District should have implemented positive behavior interventions through the IEP to mitigate against the educationally-disruptive impact of A.T.'s behavior. The District, however, denied him a FAPE when it failed to program for this area of need.

The District compounded the failure to program for A.T.'s behavior when it did not complete the Functional Behavior Assessment (FBA) within the required sixty days after obtaining parental consent in May 2023 (Vol. II, A845; A850). N.J.A.C. 6A:14-3.8(e). Without a proper FBA, effective behavioral interventions cannot be developed, which, in turn, prevents students from being educated in the LRE, as required under IDEA (20 U.S.C. § 1412(a)(5)) and N.J.A.C. 6A:14-4.2(a). In the case at bar, because the District did not timely complete the FBA, it lacked critical data upon which to base his behavioral interventions. In the absence of that data, it could not meaningfully address the impact of his educationally-disruptive behavior through his IEP.

The ALJ additionally erred when he did not find that the District's IEP's lacked adequate transition services. Per 20 U.S.C. § 1414(d)(1)(A)(i)(VIII), transition services must be included in the IEP for students aged 16 or older. Similarly,  N.J.A.C. 6A:14-3.7(e), require these services to begin at age fourteen. In *Ridgewood Board of Education v. N.E.*, 172 F.3d 238 (3d Cir. 1999), the court ruled that school districts are required to provide appropriate transition services in an IEP to ensure that students with disabilities have access to post-secondary education and vocational opportunities. The court emphasized that the failure to include and implement these transition services constitutes a denial of FAPE under the IDEA. Furthermore, the absence of specific transition goals undermines A.T.'s ability to successfully navigate adult responsibilities, as emphasized in *A.A. v. North Hunterdon-Voorhees Regional High School District*, OAL Dkt.

14

No. 2017-13309. As applied here, the District failed to provide transition services in any of the IEP's. For example, A.T. 's June 2021 IEP was developed without a transition plan, despite him nearing the age for mandated transition services, which lacked a transition plan, measurable goals or services to prepare him for post-secondary life. (Vol. I, A93; A102).

Though Parents introduced sufficient evidence during the due process hearing, the ALJ did not find that the IEPs lacked adequate counseling services, appropriate behavior programming, and transition planning. The ALJ erred when he did not find that the IEP's denied A.T. a FAPE, as these IEP's were not calculated to program for his needs.

**C.  The ALJ Erred When He Did Not Award Compensatory Education.**

Compensatory education is a remedy that is designed to provide the student with the services they should have received pursuant to FAPE and "for rights the district already denied." *Lester H. ex rel. Octavia P. v. Gilhool*, 916 F. 2d 865, 872 (3d Cir 1990). Moreover, only a deprivation needs to be shown; not bad faith on the part of the district. *Id.* Additionally, the Third Circuit has concluded:

> "If an individual was deprived of his or her right to an adequate FAPE, and by extension an IEP, prior to the age of twenty-one, it follows that the student could only be fully compensated by an award of compensatory education that contains the elements of a FAPE that she was previously denied."

*Ferren C. v. Sch. Dist. of Phila.,* 612 F3d 712, 717 (3d Cir. 2010).  Furthermore, this Court, in following Third Circuit precedent, has found that it should "order an equitable remedy tailored to the particular circumstances and deprivations a case may present." *Id. See also Ferren C. v. Sch. Dist. of Phila.*, 612 F.3d 712 (3d Cir. 2010). The Third Circuit has held that compensatory education is a "remedy to cure the deprivation" of FAPE.  *Lester H.*, 916 F. 2d at 873. Courts have found:

> "The IDEA authorizes hearing officers and courts to award 'such relief as the Court determines is appropriate' 20 U.S.C. § 1415(h)(2)(B). Moreover, just as courts hearing civil actions brought to challenge a decision of a hearing officer are directed by the IDEA statute to 'grant such relief as the court determines is appropriate,' the hearing officer must, at times, fashion an appropriate equitable remedy where FAPE has been denied."

*Chichester Sch. Dist.*, 114 LRP 24895 (SEA PA 2014). *See also* 20 U.S.C. §1415(i)(2)(C); *M. S. v. Fairfax County Sch. Bd.*, 553 F.3d 315 (4th Cir. 2009). In other words, it is within the equitable power of the Judge to order compensatory education or any other relief that the court determines to be just and equitable. Third Circuit precedent recognizes that students are entitled to compensatory education in order to make them whole, based on the District's deprivation of services. *G.L. v. Ligonier Valley Sch Dist.* Auth. 802 F. 3d 601, 624 (3d Cir. 2015); *See also Reid v. Dist. of Columbia,* 401 F. 3d. 516 (D.C. Cir. 2005). Alternatively, as seen in our neighboring jurisdictions, hearing officers will review the record in its entirety, and make equitable adjustments to the program to make the student "whole." The hearing officer, thus, reviews the record and applies principles of equity when devising the award of compensatory education and other relief. *New Media Technology Charter School*, ODR File No. 17927-15-16 (IHO Jelley, 2017). As such, when a school district denies a student a FAPE, compensatory education "should aim to place the disabled children in the position that the child would have occupied but for the school district's violations of the IDEA." *Ferren C. v. Sch. Dist. of Phila.*, 612 F. 3d 712, 719-720, (3d Cir. 2010) (quoting *Reid*, 401 F.3d 516).

### 1. The ALJ Should have awarded compensatory education to A.T. for when the District Failed to Implement, Offer the IEP,  and Provide Related Services.

*P.P. v. W. Chester Area Sch. Dist.*, affirms that "A child who has been deprived of a FAPE is "entitled to compensatory education for a period equal to the period of deprivation, excluding only the time reasonably required for the school district to rectify the problem." *P.P. v. W.*

*Chester Area Sch. Dist.*, 585 F.3d 727 (3d. Cir. 2009). As the Third Circuit has observed, compensatory education "serves to 'replace [] educational services the child should have received in the first place' and . . . such awards 'should aim to place disabled children in the same position they would have occupied but for the school district's violations of IDEA.'" *Ferren C. v. Sch. Dist. of Phila.,* 612 F.3d 712, 717-18 (3d Cir. 2010) (quoting *Reid ex rel. Reid v. D.C.,* 401 F.3d 516, 518 (D.C. Cir. 2005)).

The ALJ erred when he did not order compensatory education for missed related services. In *M.F. v. Central Regional School District*, No. EDS 11873-15 (N.J. O.A.L. June 22, 2016) the ALJ found that the failure to provide speech therapy services mandated in the student's IEP constituted a violation of both the IDEA and New Jersey state regulations. As applied here, from February 2022, the District failed to provide the mandated Counseling and Speech and Language Services, as specified in A.T.'s IEP (Vol. I, A93). A.T.'s IEP required four, twenty-minute counseling sessions per 7 day cycle (Vol. I, A93). From February 2022 to June 2023, however, the District did not provide counseling services to A.T. (Vol I, A197). Similarly, A.T. did not receive Speech therapy and counseling services between February 2022 and June 2023, contributing to increased school refusal on days with scheduled sessions (Vol. III, A1079; A1085); (Vol I, A197). Though Parents introduced evidence during the due process hearing that the District did not provide these related services, the ALJ did not order compensatory education. As such, the ALJ erred when he did not award compensatory education for the missed related services.

### 2. The District Owes Compensatory Education for its substantive-procedural violations of the IDEA.

The Supreme Court has made it clear that the procedural rights provided by the IDEA are as important as substantive rights. *Board of Education v. Rowley*, 458 U.S. 176, 205-206 (1982).

17

To that end, the Third Circuit has concluded, if a procedural violation "causes substantive harm to the child or his parents," it may rise to the level of a denial of FAPE. *C.H. v. Cape Henlopen Sch. Dist.,* 606 F.3d 59, 66 (3d Cir. 2010) (citing *Knable ex rel. Knable v. Bexley City Sch. Dist.,* 238 F.3d 755, 765 (6th Cir. 2001). Furthermore, the New Jersey state regulations implementing the IDEA specify that procedural violations may entitle the student to compensatory education if the violations "(1) impeded the child's right to a FAPE; (2) significantly impeded the parents' opportunity to participate in the decision-making process regarding the provision of FAPE to the child; or (3) caused a deprivation of educational benefits." N.J.A.C. § 6A:14-2.7. *See also G.N. ex rel. J.N. v. Bd. of Educ.,* 309 Fed. Appx. 542, 545-546 (3d Cir. 2009).

### a. The District Committed a Substantive Procedural Violation of the IDEA when it excluded Parents from the IEP decision-making process.

The IDEA grants the parents of children with disabilities the right to participate in decisions about their children's placement. 34 CFR 300.116 (a)(1); 34 CFR § 300.327; 34 CFR § 300.501 (c); and 71 Fed. Reg. 46,585 (2006). Moreover, parents are an essential part of any group making the placement decision. *Id.* In other words, per IDEA and supporting regulations, Parents are members of the IEP team. The Supreme Court has made it clear that the procedural rights provided by the IDEA are as important as substantive rights. *Board of Education v. Rowley,* 458 U.S. 176, 205-206 (1982). Furthermore, under the New Jersey state regulations implementing the IDEA, procedural violations may lead to a finding that a student did not receive a FAPE if the violations "(1) impeded the child's right to a FAPE; (2) significantly impeded the parents' opportunity to participate in the decision-making process regarding the provision of FAPE to the child; or (3) caused a deprivation of educational benefits." N.J.A.C. 6A:14-2.7.

18

The ALJ erred when he did not find that the District denied A.T. a FAPE when it failed to schedule an IEP meeting for the 2022-2023 school year. IEP teams must at least review the IEP annually. 34 CFR § 300.324(b)(i). The IDEA grants the parents of children with disabilities the right to participate in decisions about their children's placement. 34 CFR 300.116 (a)(1); 34 CFR § 300.327; 34 CFR § 300.501 (c); and 71 Fed. Reg. 46,585 (2006). Moreover, Parents are an essential part of any group making the placement decision. *Id.* Here, the ALJ overlooked the fact that, despite multiple requests from A.T.'s Parents for IEP meetings, the District refused to respond and to set up the IEP meetings. In fact, whenever Parents asked for an IEP meeting to be scheduled or for other assistance with A.T.'s program, members of the child study team would ignore them or instruct them to go through their attorney. (Vol. III, A1079; A1036 ; A1040); (Vol. II, A753; A754; A755; A756;A751; A752). Similarly, the District further denied Parents meaningful participation when it failed to offer A.T. any IEP for the 2022-2023 school year. Absent the District offering an annual review IEP, which is required per 34 CFR § 300.324(b)(i), or convening meeting, there was no way for Parents to participate in the decision-making process regarding A.T.'s education or to discuss programmatic changes to the IEP in light of his circumstances.

**b.  The District committed a substantive-procedural violation of the IDEA when it denied Parents' outside evaluator the ability to observe A.T. in the classroom.**

The ALJ erred when he did not find that the District committed a substantive-procedural violation of the IDEA when the District denied Parents' evaluator the ability to observe A.T. in the classroom. Per 20 U.S.C. § 1415(b)(1), parents have the right to obtain an independent educational evaluation, which may include classroom observations. The Office of Administrative Law has interpreted procedural fairness to include the opportunity for parents' experts and independent evaluators to observe the classroom. That court found that the observation is a

19

procedural requirement of the due process hearing. *S.B. ex rel. P.B. v. Park Ridge Bd. of Educ.*, OAL Dkt. No. EDS 13813- 08, 2009 N.J. AGEN LEXIS 318, Final Decision (April 21, 2009). As observed in *Park Ridge*, "One procedural requirement is the opportunity for an impartial due process hearing." *Id.*; *see also* 20 U.S.C.A. § 1415(f)((1)(A). OAL found, moreover, that by denying the parents the opportunity to have their outside expert observe their child in the classroom amounted to a procedural violation of the IDEA. *Id.*

As applied here, Parents, in May 2022, requested that their outside speech evaluator be permitted to observe A.T. in class at school. (Vol. III, A1089 - A1095). Parents made this request after they requested a speech evaluation from the District, which it did not add to the consent for evaluation form. (Vol. III, A1070; A1072; A1083). Because the District did not include a speech evaluation, Parents requested an outside speech evaluation. The District, however, refused the evaluator the ability to observe A.T. (Vol. III, A1100; A1101) Not only did this interfere with their ability to meaningfully gather data on A.T. and to assist with making adjustments to his special education program.

Because the District denied Parents the ability to have their outside evaluator observe A.T. in the classroom, they filed a state complaint with New Jersey's Department of Education. The Department of Education considered whether the District violated N.J.A.C. 6A:14-2.5(c)(6) by denying the complainant's May 21, 2022, request to have the student's parents' evaluator observe the student in the classroom or other educational setting as part of an evaluation. (A1105). The Department of Education found that the District was noncompliant with N.J.A.C. 6A:14-2.5(c)(6) when it denied Parents' outside evaluator the opportunity to observe A.T. in the classroom. (A1107). Though Parents introduced the Department of Education's findings at the

20

due process hearing, the ALJ did not find that the District committed a procedural violation of the IDEA. (A1104-7).

### c. The District committed a substantive-procedural violation of the IDEA when it failed to offer translation services to Parents.

The ALJ erred when he did not find that the District committed a substantive-procedural violation of the IDEA when the District failed to provide Parents with the translation services that they requested. The IDEA requires notice to the parents of disabled children be provided in the native language of the parents. 20 U.S.C. § 1415(b)(4) and (d)(2); 20 U.S.C. § 6312(g)(2). 34 C.F.R. § 300.322(e) ensures that parents can attend and receive information about individualized education program (IEP) meetings—with translation or similar assistance if necessary to accommodate families with English language or other communicative difficulties—so that they may understand what is happening in the meeting. Courts have found that failure to provide translation services to a parent can amount to a lack of meaningful participation. *Marple Newtown Sch. Dist. v. Rafael N.*, No. 07-0558, 2007 U.S. Dist. LEXIS 62494, at *10 (E.D. Pa. Aug. 23, 2007).

In the case at bar, the ALJ overlooked the fact that the District denied Parent A.T. the ability to fully understand the evaluation process, including consent for evaluation forms.Both 20 U.S.C. § 1414(a)(1)(D)(i)(II) and N.J.A.C. 6A:14-2.3(a)(4).34 CFR § 300.9(a) mandates that school districts provide prior written notice "to the parents of a child with a disability a reasonable time before the public agency evaluates the student. 34 CFR § 300.9(a)(2). These provisions require that parents be fully informed of the proposed evaluations, in their native language or preferred communication mode, before consent is obtained. N.J.A.C. 6A:14-2.3(g). Here, the Child Study Team inadequately explained the evaluations, failed to provide Albanian translation services, and consent forms were incorrectly filled out and sent via email without

proper explanations. (Vol. III, A1067-A1073; A1075-A1078; A1080). Because the Child Study Team failed to translate the documents, it did not adequately explain the proposed evaluations. As such, the Parents were confused by the process. (Vol. III, A1078; A1080; A1083). This lack of clarity is evident from the forms and Dr. Howland's testimony, particularly regarding the omission of a Speech and Language Evaluation ( Vol. III, A1171; A 1172; (Vol. V, A1545). Similarly, the District ignored an inquiry about neurodevelopmental evaluations (Vol. III, A1066).

Despite Parents introducing this evidence during the due process hearing, the ALJ ignored the fact that the District denied Parents meaningful participation in A.T.'s education. Again, the New Jersey Administrative Code considers whether the child study team's conduct significantly impeded the parents' opportunity to participate in the decision-making process regarding the provision of FAPE to the child. N.J.A.C. 6A:14-2.7. Here, by denying Parents translation services, it significantly impeded their ability to participate in A.T.'s education, as they did not fully understand what the District was proposing and how it impacted his education. The ALJ erred when he failed to find that the District committed a substantive-procedural violation of the IDEA and did not award compensatory education.

Similarly, the ALJ made a credibility determination regarding Parent O.T.'s understanding of certain documents because the District did not translate them. Again, N.J.A.C. 1:6A-14.1(d) specifies, "The judge's decision shall be based on the preponderance of the credible evidence, and the proposed action of the board of education or public agency shall not be accorded any presumption of correctness." Courts have held that "credibility findings . . . are often influenced by matters such as observations of the character and demeanor of witnesses . . . that are not transmitted by the record." *State v. Locurto,* 157 N.J. 463, 474 (1999). A credibility

22

determination requires an overall assessment of the witness' story in light of its rationality, internal consistency and the manner in which it "hangs together" with the other evidence. *Carbo v. United States,* 314 F.2d 718, 749 (9th Cir. 1963). Here, the ALJ misapplied this standard when he stated that the parent "undoubtedly had language issues" but that her "claim of misunderstanding is undermined by her background in special education." (Vol. I, A12). This reasoning links the parent's language characteristics and professional background to credibility factors outside the evidence presented. This reflects an improper assumption that an educated parent who is a non-native speaker "should not" experience misunderstanding, rather than an evidence-based credibility determination. The credibility finding was not grounded in the evidence, the Parents' demeanor, or consistency of their testimony. The ALJ did not identify any inconsistency or contradiction in the parent's testimony; instead, he simply stated that her account "does not ring true" when compared to the District's witnesses. Because credibility was central to the ALJ's findings, and the reasoning relied on considerations unrelated to the evidence, the ALJ's credibility conclusions merit limited deference.

### d. The District Owes A.T. Compensatory Education for Developing Deficient IEP's.

The District owes A.T. compensatory education for failing to develop appropriate IEP's for A.T. Courts have concluded that "the appropriateness of prior IEP's is a consideration with respect to compensatory education . . . "the level of educational benefit required by IDEA depends on the potential of the pupil." *J.P. obo J.P. v. Pemberton* citing *Ridgewood Bd. of Educ. v. N.E.*, 172 F.3d 238, 247 (3d Cir. 1999). As applied here, because A.T.'s IEP's were not calculated to provide him with a FAPE, he did not make adequate progress. This, again, includes the fact that his behaviors continued to interfere with his education and that he received failing grades in many of his classes. (Vol. II, A722; A723):(Vol. IV, A1278). Similarly, the District did

23

not program for his counseling needs or provide transition services. (Vol. I, A93; A102).The

ALJ, however, overlooked the fact that the District did not produce adequate IEP's. To that end,

the ALJ should have awarded compensatory education for the deficient programming.

### e.   The ALJ erred when he ruled on the Section 504 and Americans with Disabilities Act Discrimination and Retaliation Claims.

The Office of Administrative Law does not have jurisdiction over claims arising under

the Americans with Disabilities Act and Rehabilitation Act. In  *S.W. and S.W. o/b/o N.W. v.*

*Haddonfield Borough Board of Education*, the Office of Administrative Law concluded that it

does not have jurisdiction over ADA claims. OSEP does not have independent

> authority to hear or adjudicate ADA claims, nor does OAL have derivative
> authority to do so. See M.G. and S.K. o/b/o B.K. v. Princeton Regional Bd. of
> Educ., EDS 4813-13, Decision on Emergent Relief, n. 1 (April 15, 2013).
> Accordingly, OAL is without jurisdiction to hear or adjudicate petitioners' ADA
> claim. Finally, OAL does not have jurisdiction to hear the [NJ]LAD claim in this
> matter.

*S.W. and S.W. o/b/o N.W. v. Haddonfield Borough Board of Education* OAL Dkt. No. EDS

13967-19 (2019). That court has further found that claims arising under the ADA as "outside

[the] tribunal's jurisdiction." of *J.W. and M.W. o/b/o A.W. v. Medford Lakes Borough Board of*

*Education,* 2019 N.J. AGEN LEXIS 700 (Aug. 23, 2019).

In the instant matter, the ALJ correctly noted on the record that the Section 504 claim "is

an issue for a different forum." (Vol. V., A1417). The ALJ, however, improperly ruled in his

Order that Petitioner's claim that the District violated the Rehabilitation Act and Americans with

Disabilities Act, through retaliation and discrimination, "lacks substantiation" and that "these

claims are without merit." (Vol. I, A 25). At issue in the due process proceeding was whether the

District provided FAPE to A.T. (Vol. A, A2). Because the Office of Administrative Law lacked

jurisdiction over the ADA and Rehabilitation claims, it was barred from ruling on these claims.

24

To that end, the ALJ made findings of fact and dismissed claims for which he did not exercise jurisdiction.

The IDEA guarantees parents the right to an impartial due process hearing. 34 CFR 300.507 through 513. In fact, *Perez v. Sturgis* went so far as to distinguish between claims arising under the IDEA and claims arising for discrimination under the ADA and Rehabilitation Act, finding that the latter do not concern FAPE and, as such, are properly brought in another forum for damages. *See generally Perez v. Sturgis Public Schools,* 598 U.S.__(2023) No. 21-887 (2023).

As applied here, by overstepping his jurisdictional boundaries, the ALJ denied Plaintiffs an impartial due process hearing. Instead of focusing on FAPE, he made determinations regarding issues that were properly brought in federal court. Thus, instead of making a determination whether the District provided FAPE  by a preponderance of the credible evidence, the ALJ, in part, based his decision on whether the Petitioners demonstrated whether or not the District discriminated against A.T. under the ADA and Rehabilitation Act.[5] *Lascari v. Bd. of Educ. of the Ramapo Indian Hills Reg High Sch. Dist.*, 110 N. J. 30, 40 (1989). As such, the ALJ denied Parents to an impartial due process hearing when ruled on issues that were not properly before him.

---

[5] The ADA and Rehabilitation Act established different standards for discrimination than must be shown for FAPE claims. To establish a claim under the ADA, a plaintiff must demonstrate that: (1) he has a disability, or was regarded as having a disability; (2) he was "otherwise qualified" to participate in school activities; and (3) he was "denied the benefits of the program or was otherwise subject to discrimination because of his disability." *A.G. v. Lower Merion Sch. Dist.*, 542 F. App'x 193, 198 (3d Cir. 2013). Similarly, to establish a prima facie case under the §504 of the Rehabilitation Act ("RA")#, a party must show: (a) they were a person with a disability; (b) they were otherwise qualified for participation in the program; (c.); the program they are challenging receives federal financial assistance; and (d.) they were subject to discrimination solely on the basis of their disability. *Hornstine v. Township of Moorestown,* 263 F. Supp. 2d 887, 905 (D.N.J 2003).

25

## V.    CONCLUSION

WHEREFORE, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion for Summary Judgement on the Administrative Record, reverse the ALJ's Decision, order the District to  award compensatory education; and award reasonable attorneys' fees, together with any and all other relief this Court deems just and equitable, and enter the attached Order.

MONTGOMERY LAW, LLC.
Attorneys for Plaintiffs


By    /s/Bradley R. Flynn
Bradley R. Flynn, Esq.
NJ Attorney I.D. No. 173362016

Dated:November 10, 2025.

26