MONTGOMERY LAW GROUP
Bradley R. Flynn, Esq.
NJ ID 173362016
1420 Locust Street, Suite 420
Philadelphia, PA 19012
Phone: 215-650-7563
Bradley@ed-law.com

Attorneys for the Plaintiff

**IN THE UNITED STATES DISTRICT COURT,
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| A.T. and O.T., individually and | : | |
| on behalf of A.T., | : | |
| *Plaintiffs,* | : | |
| v. | : | |
| | : | Case No.  3:25-cv-1728 |
| | : | |
| | : | |
| FREEHOLD REGIONAL HIGH | : | |
| SCHOOL DISTRICT BOARD OF | : | |
| EDUCATION, | : | |
| *Defendant.* | : | |

**STATEMENT OF UNDISPUTED FACTS**

Pursuant to Local Civil Rule 56.1, Plaintiffs, A.T. and O.T., on behalf of A.T., (*hereinafter* the "Plaintiffs"), submit the following Statement of Undisputed Material Facts:

**A. Introduction:**

1. A.T. was previously a student enrolled in the Freehold Regional High School District (*hereinafter* the "District," "local educational agency," "LEA," or "Defendant").

1

2.  Plaintiff A.T. disenrolled from the District in June 2025, which was his senior year. As such, the substance of the instant litigation concerns past claims for a denial of a free appropriate public education ("FAPE") and an appeal of the Administrative Law Judge's decision of December 11, 2024. (ECF 1).

3.  A.T. is diagnosed, *inter alia*, with Autism Spectrum Disorder, receptive-expressive language disorder, social communication disorder, spinal-cord malformations, and immune dysfunction. (ECF 1  3).

4.  The Defendant District is the LEA, which was responsible for providing A.T. with a FAPE when he was enrolled.

5.  A.T. has been classified as eligible for special education and related services since December 2015.

6.  The District has programmed for him under the classification of communication impairment through his individualized education program ("IEP").

7.  That classification would be changed to Autism Spectrum Disorder in May 2023.

8.  A.T. has been classified as eligible for special education and related services since December 2015.

9.  Parents O.T. and A.T.'s native language is Albanian. (Vol. I, A406).

**A.T.'s Educational History in the District:**

**2021-2022:**

10. A.T. first enrolled in the District in September 2021. (Vol. I, A13).

11. During A.T.'s time in the District, he attended Colts Neck High School. Colts Neck High School is owned and operated by the District. (*Id.*).

12. Throughout the time A.T. attended the District, it did not implement his IEP accommodations, modifications, or supplementary services. Because A.T. has disabilities, which interfere with his education, the lack of specially designed instruction and necessary supports interfered with his ability to access the curriculum.

13. The 2021-2022 IEP required the district to provide A.T. with assistive technology to enable him to complete his work (Vol I, A93,94, 95; 104).The science teacher, for example, forced A.T. to go without the assistive technology and, instead, compelled him to write by hand. A.T. required this accommodation because of the low muscle tone in his hands and the pain he experiences when he writes. (Vol. III, A1145, 1146 A1147-1155).; (*See also* Vol. III, A1162-1165; A1202-A1216).

14. In November 2021, Parent O.T. requested an IEP meeting to go over the IEP and the implementation of the accommodations. The District did not respond to Parent's request for the IEP meeting. (Vol. III. A1036; A1040).

15. In November 2021, A.T. 's English teacher refused to provide him with digital graphic organizers, which were one of the accommodations required by his IEP. (Vol. III. A1025 - A1035); (Vol. VI A1759-60).

16. During the 2021-2022 school year, A.T.'s geometry teacher refused to provide A.T. with any of the accommodations required by his IEP. (Vol. III, A1189-A1191).

17. These are just a few of the many examples of the District refusing to implement the IEP accommodations. This ongoing refusal denied A.T. the ability to make

3

meaningful progress and to access the benefits of his education equal to that of his non-disabled peers.

18. On January 21, 2022, Petitioners and the District Child Study Team met for an Annual Review of the IEP, Transition Planning, and a Revaluation Planning Meeting. (Vol. II, A648).That IEP, notably, lacked counseling goals, Extended School Year ("ESY") services, and transition planning, among other deficiencies. Despite parental and teacher concerns, the District refused to address and make any changes to the existing June 2021 IEP. Furthermore, the District did not revise the IEP to document the date of the meeting, update the present levels of performance submitted by teachers, include parental concerns, or any of the matters discussed during the meeting. As a result, the IEP in the administrative record does not reflect that the meeting occurred or the information that was shared by the team. (Vol. V A1539 L17; Vol. III. A1333; Vol. V A1762).

19. After the January 21, 2022, meeting, the case manager emailed Parents two types of forms: Evaluation consent forms and Protected Health Information ("PHI") consent forms. (Vol. III, A1056; A1073; A1075-1077).

20. The PHI consent forms had not been discussed during the meeting, and Parents were not informed of their purpose or scope. (Vol. III A1075-1077).

21. The evaluation consent forms were inconsistent. Some pages listed four evaluations, while others listed five. The form was also missing the additional evaluations that to which the parties agreed at the meeting. Vol. III, A1070, 1171, and 1172).

4

22. For example, several boxes on the evaluation consent forms were left blank or overlapped, and the speech evaluation did not appear. (Vol. III, A1070, 1171, and 1172). *See also* the testimony of Dr. Jessica Howland from July 29, 2024. (Vol. IV, A1460 lines 1-10).

23. Because Parents' first language is Albanian, they asked the District to translate the PHI consent forms and to explain or clarify the evaluation consent forms, so they could understand what they were being asked to sign. (Vol.III, A1078; A1080-1084).

24. The District did not respond or provide the requested Albanian translation or explanation (Vol.III, .A-1078-1085).

25. In February 2022, A.T. 's teachers began to refuse to implement the assistive technology, which was also required by his IEP. During testimony, Supervisor of Special Education Kelly Fitzhenry acknowledged that the "Gizmos" Biology assignment could be completed electronically, but stated that A.T. "chose" to complete it by hand (Vol. V, A1738–1739); (Vol. III, A1210). However, the record confirms that the District never provided A.T. access to the in class work in digital format, leaving him no choice but to handwrite the paper version of the test (Vol. III, A1194; A1210). Despite this, the District relied on handwriting differences within the same graded work to suggest that the work was not A.T.'s. The graded work, however, was completed in class under staff supervision and without the assistive technology required by A.T.'s IEP.  Vol. III, A1217-1220; Vol. IV, A1223-A1225; A1231-1234; A1239-A1243; A1250.

5

26. Ms. Fitzhenry further testified that, "based on A.T.'s profile," she did not believe he could define scientific terms such as *chlorophyll*, *adenosine triphosphate*, or *homeostasis*, and she cited this belief as part of the rationale for recommending placement in the LLD program (Tr. Vol. V, A1738–A1739). When questioned from the defense, the witness acknowledged that she herself could not define certain terms. (Vol. V. A1742-1743).

27. In February 2022, O.T. reported these concerns to the Director of Special Services, Dr. Jessica Howland; case manager Kimberly Rosas; and Supervisor of Special Education, Kelly Fitzhenry. The Parents received no response to their concerns. (Vol. III, A1043-148; A1050-1051).

28. Throughout the spring semester 2022, District staff, including the case manager, speech pathologist, counselor, guidance counselor, and nurse, did not provide A.T. with the same level of support offered to his disabled or nondisabled peers, including assistance with class scheduling, speech and counseling services, nurse access, school activities, class enrollment, and extracurricular participation.

29. Between December 2021 and February 2022, A.T. refused to attend Speech-Language and counseling sessions, which contributed to increased school refusal on days when those services were scheduled. In or around January 2022, Parent reported these issues and requested meetings to discuss the reasons for A.T.'s refusals and how to re-engage him in services. The District did not respond to any of Parent's requests. (Vol. III, A1079; A1085;).As a result, A.T. did not receive the speech or counseling services required by his IEP, further denying him

6

essential related supports and impeding his communication, emotional regulation, and academic progress.

30.  On April 13, 2022, O.T. wrote to the District:

... no one from the guidance office met with A.T. or reached out to us to explain and share the required or the elective classes offered in CNHS that A.T. could enroll. A.T. has received no help from the school on making these selections. Nevertheless, we tried to help him the best we could. You can see that selection on Genesis. I am also attaching pictures, Please [advise] what steps we need to take that A.T.'s class requests and elective choices are taken into consideration. (Vol. III, A1109- 1115).

31. The District did not respond to this correspondence or to any prior communications from Parents.  (Vol. V, A1754L24-A1756).

32. The District did not include speech services on the consent forms for evaluations and did not respond to Parents' requests for meetings to clarify the missing speech and language evaluation, the consent forms, or the speech services listed in the IEP. (Vol. III, A1070).

33. In May 2022, Parents, through their outside speech evaluator, requested that the evaluator be permitted to observe A.T. in class at school. (Vol.III, A1080-1095). The District refused to allow the observation. Notably, the New Jersey Office of Special Education ("OSE") found that the District was noncompliant on this issue. Vol. III, A1097-1108).

34. In May 2022, Parents took A.T. to the Princeton Speech Language and Learning Center ("PSLLC") for a comprehensive speech and language evaluation. Parents sought the evaluation to get an updated assessment of A.T.'s language profile and to inform academic planning. (Vol II,A435-454).

35. PSLLC assessed A.T. on May 24 and May 31, 2022. The evaluator concluded that A.T. had weak overall language skills, including foundational language,

higher-level language, reading, writing, and social communication. A.T.'s writing abilities were far below expectations for his age and grade. (*Id.*).

36. The PSLLC evaluation identified global, significant deficits in the area of social communication. The evaluator concluded: "The complexity of the above described social communication profile, in addition to his weak language skills, is the basis of [A.T.]'s difficulties with his peers during both unstructured and academic tasks. Therefore, he requires specialized instruction and intervention to improve his areas of deficit." (*Id.*). The District never discussed or considered this evaluation.

37. A.T.'s report card in June 2022 reflected, *inter alia*, that he failed Geometry, English, World History, and Lab Biology for the fourth quarter. The District did not provide any direction to the availability of summer programming and never offered or suggested extended school year programming, despite A.T.'s failing grades and clear regression. (Vol. I, A24).

38. In mid-June 2022, the parties' respective counsel sought to schedule an IEP meeting, as A.T.'s IEP was set to expire in June. That meeting never occurred. In fact, the District never took steps to convene an IEP meeting in a timely fashion. (Vol III, A1096); (Vol. V, A1753L16; A1754).

39. It should be noted that the District had not offered a new IEP from June 2021 until May 2023. (Vol II, A577-A591).

2022- 2023:

40. In August 2022, the District invited Parents to an IEP meeting (the Invitation was for an Invitation for Initial Identification and Evaluation Planning meeting). (Vol

(Vol. V A1554); (Vol. II, A532; A534).. At the August 2, 2022 meeting, District personnel told the Parents that it had unilaterally discharged A.T. from special education.  District personnel had previously claimed that the meeting was an evaluation planning meeting to reassess A.T.'s eligibility for an IEP. (Vol. II, A515. Notably, at no point during the meeting, or prior to the meeting, did the District offer prior-written notice to discharge A.T. from special education. Similarly, it did not take any steps to discharge him from special education with prior-written notice.

41. In fact, Petitioner O.T. testified:

> "18 child was eligible for Special Education. Your Honor,  if this District had a shred of evidence that this IEP was ever delivered to anyone, they would have provided  it in this Court. This IEP was never –- a draft was never delivered, was never completed, make no mistake,this is not FAPE, this draft IEP did not show up here  just by accident. They're experts in the field 20/30 25 years, they don't know that this had to be delivered,that this IEP has to have a date? Why does –- why do we have to be combative in a meeting for a kid who is already eligible for Special Education? I am not –- I am a parent, I'm not an expert, but once upon a time I was a Case Manager too, we all know –- we all know the eligibility does not stop because an IEP expires, IEP's do not expire. We can be out of compliance with an IEP meeting, we are late,scheduled, but the child is still eligible for services. (Vol. V, A1757).

9

42. No placement or draft IEP was discussed during the August 2, 2022 meeting, which focused on A.T.'s initial identification and eligibility after his IEP "expired" and he was declassified. (Vol. V, A1474-1484; A1549-50;A1553; A5154).

43. The District's unilateral decision to discharge A.T. meant that he would no longer receive special education support, even though he continued, and continues, to have several disabilities that interfere with his education and his ability to make meaningful progress on a level that is comparable to non-disabled peers.

44. Subsequent to the August 2, 2022 meeting, the District acknowledged its wrongdoing and confirmed that A.T. was still eligible for special education and related services. Significantly, however, the District never convened an IEP meeting for the 2022-23 school year. (Vol. II, A577-591).

45. In fact, the District never even offered the Parents an IEP for the 2022-2023 school year. (Vol. II, A577-591).

46. On August 19, 2022, the District then posted A.T.'s schedule that included no in-class resource instruction, per his June 2021 IEP. Instead, the district placed A.T. in all self-contained, LLD classes without any discussion with the parents at an IEP meeting or otherwise. (Vol. II, A749; A750). In other words, the District changed A.T.'s placement without first amending the IEP. It appeared the District had predetermined A.T.'s placement, programming, and schedule(Vol. II, .A761-762). A.T.'s schedule was posted without any notice or a proposed IEP. (Vol. V, A1472L19 - A1474). (The District never mentioned the LLD in the August 2022 IEP, which it did not develop at an IEP meeting (Vol. II, 577-591);(Vol. V, A1558).

47. The August 19, 2022 decision to change A.T.'s placement was done without any prior-written notice or communication. This unilateral, predetermined decision was made without conducting a formal IEP meeting, entirely excluding parental input, and failing to present a draft IEP or any documentation for review. In fact, the Parents only discovered the change in placement after A.T. reviewed his online schedule. (Vol. IIA749, A750; A761; A762); (Vol V. A1763).

48. Parents immediately reached out to A.T.'s guidance counselor to correct this error, only to be instructed that all communication must go through attorneys, rather than with the District directly. (Vol. II, A753; A754; A755; A756); (Vol. V, A1764).

49. Noting that the District had yet to convene a meeting and/or offer an IEP for the 2022-23 school year, Plaintiffs' then-attorney contacted District's counsel again about its additional unilateral actions and noted the Parents' disagreement with the change. The District never responded. (Vol. II, A751-752; A758-A753; A754; A755; A756);(Vol. V A1764).

50. In September 2022, The District changed A.T.'s placement to a learning-language disabilities ("LLD") class outside of the IEP process. This change in placement, coupled with the denial of an IEP for 2022-2023 school year, formed the basis for Parents' Petitions for Due Process. (Vol. II, A765)(Vol. V, A1491). Parents filed a Petition for Mediation on or around September 1, 2022, pursuant to the Individuals with Disabilities Education Act ("IDEA") to stop this unilateral change from going into effect, as a precautionary measure, since they were not

sure whether the District would move forward with this action in spite of not discussing same with them. (Vol. II, A765; A766; A753; A754; A755; A756 (Vol V, A1560-61; A1678).

51. The parents subsequently converted this mediation into a Petition for Due process in September 2022.

52. The District honored its stay-put obligations under the IDEA by maintaining A.T.'s placement, but never convened an IEP meeting or proposed an IEP prior to the start of the 2022-23 school year. (Vol. II, A768-769).

53. In fact, when an IEP meeting was finally convened on October 27, 2022, the district discussed A.T.'s performance, but never provided the Plaintiffs with an IEP following that meeting. (Vol V, A1565).

54. Plaintiffs never received an IEP for the 2022-23 school year, which further excluded A.T. from his education on the basis of his disabilities.(Vol. II, A577-591).

55. Despite honoring the placement, the District did not follow the June 2021 stay-put IEP.  By way of example, the District did not:

    a.  Provide speech and language services; (Vol. V, A1683-84). In fact, Ms. Fitzhenry testified, "We re-instituted Speech when the –- you know, our original staff came back after her pregnancy leave."(Vol. V, A1672L9).

    b.  Provide counseling services; (Vol II, A881).

    c.  Did not complete or provide progress reports; (Vol. V, A1569; 1569-1572; 1574; A1666); (Vol. II, A789; A790-94, A804-A805).

    d.   A.T.'s history teacher refused to provide him with any of the accommodations required by his IEP. (Vol. V, A1225; A1766-1768; A1225);( Vol. IIA809; A810; A812; A831; A838; A840-41).

    e.   A.T.'s English and science teacher ignored the extended time accommodation.(Vol. V, A1239-1243); (Vol. II, A820; A822-23; A825A816-A818). In fact, the Assistant technology evaluation observation notes that A.T. was handwriting. (Vol. II, A702). Similarly, A.T.'s science teacher was not implementing the accommodations. Vol. V, A1250-1251):(Vol, II, A827).

56. During 2022-2023 school year, A.T. was unable to complete many of his assignments, due to the District's denial of the assistive technology and other accommodations, which the IEP required. In addition, A.T.'s teachers required him to handwrite in-class assignments and graded work as late, despite his IEP accommodations for assistive technology and extended time, and he was denied computer access for certain in-class assessments. (Vol V, A1217-1220; A1223-A1225; A1231-1234; A1239-A1243; A1250).

57. Dr. Howland repeatedly refused to engage with Parents regarding A.T.'s educational needs. She instructed the Parents that all communications must proceed through counsel. Despite this directive, the Parents continued not to receive communication from the District. (Vol. V, A1771L22-1718); Vol. II, A754; A756;A764; A766; A773; A777; A780; A789; A793; A810; A812; A815).

58. On April 3, 2023, the District convened an Eligibility Meeting to review the results of the reevaluations that were administered. It was reported, *inter alia*, that A.T.'s visual perception impacted him in the classroom. More specifically, he had the skills to participate, but he took longer to complete assignments than his peers. He was supposed to have accommodations/extensions on his Chromebook to accommodate this challenge, but this was not possible, as the computer accommodations did not support the format of the assignments given by his teachers. Therefore, he was not provided with the necessary accommodations. (Vol. II, A541; A870-A898).

59. At the April 3, 2023, meeting, Parents and their then-attorney requested a Functional Behavior Assessment ("FBA"), since A.T. was off task. The District responded that it would get back to O.T. about whether or not it would conduct this evaluation. (Vol. V, A1692); (Vol II, A870-898).

60. On May 3, 2023, the parties convened to develop an IEP for the 2023-2024 school year. In that IEP, the district proposed the continuation of in-class resources for the rest of the 2022-2023 school year (where A.T. was already placed since the District never proposed an IEP for 2022-2023) and placement in the self-contained LLD class for the 2023-24 school year. The District provided the rationale that A.T. struggled with staying on task and completing his assignments, so he was receiving poor grades in his classes, even though his teachers reported that he was doing "reasonably well." (Vol. V, A1768-69);(Vol. II, A666; A870-A898.

61. The District further attempted to justify the proposed change of placement by noting that A.T. was very disruptive in class. When Plaintiffs inquired about the provision of speech and language to teach him appropriate methods of communicating his needs, the District replied that the Parents declined speech and language services by A.T.'s family on February 2, 2022 (15 months prior), so the services were not being provided. The District never issued the prior-written notice to curtail this related service. (Vol. II, A881).

62. The District excluded A.T. from his education when it refused to provide him with counseling services for fifteen months, starting in February 2022. The District documented that it did not provide the counseling services for fifteen months on the draft IEP. It should be noted that the Parents never revoked consent for the counseling services.(Vol. II, A881).

63. By failing to provide speech and counseling services to A.T., the District was further excluding him from the benefits of his education as a student with disabilities. (Vol. II, A881).

64. Correspondence with the District indicated that the Parents had agreed only to put the speech and language services "on hold" pending an IEP meeting to discuss A.T.'s participation in those sessions. However, in spite of repeated requests, the District never convened a follow-up IEP meeting after that concern was expressed to reinstate said services. Notably, the District never obtained the legally required prior-written notice to terminate or pause this related service. (Vol. V, A1079; A1085).

65. Parents pointed out that the reason A.T. was struggling because A.T.'s teachers were not following the accommodations required in his IEP. This included, *inter alia*, failing to break down assignments; failing to provide an extra copy of notes, study guides, etc; providing additional time to complete assignments, tests, quizzes, and homework; allowing up to five additional school days to turn in work; allowing additional time to complete assignments; and providing A.T. with graphic organizers. (Vol. III, A1025-A1035); (Vol. III, A1189-A1191).

66. In spite of repeated emails from the Plaintiffs to District personnel (including the Director of Special Services) the District failed to provide these reasonable and required accommodations. District personnel insisted on placing A.T. in a more restrictive environment.

67. On May 4, 2023, the District obtained parental consent to conduct a Functional Behavioral Assessment ("FBA").(Vol. V, A1770); (Vol. II, A845; A847-A850; A879).

68. The District did not complete the FBA within sixty days of receiving consent and it never finalized the evaluation.(Vol. V, A1578 -80; A1583; A1770L1-11); (Vol. II, A845; A847-A850).

69. The District failed to acknowledge that the Language and Learning Disabilities ("LLD") class was not the least-restrictive environment for A.T. In proposing that placement, the District relied on A.T.'s academic performance from a period when it had refused to provide the accommodations and supports required by his IEP, thereby basing its judgment on performance that did not reflect A.T.'s actual abilities. (Vol. II, A870-A898).

70. The draft IEP proposed for the 2023–2024 school year contained the same goals and services as the June 2021 IEP, making no substantive changes other than the classification and placement. (Vol. V, A1769).

71. The District did not consider or incorporate the results of its own evaluations when preparing the draft IEP. (Vol. V, A1769).

72. The District did not review or finalize the May 2023 IEP for the 2023–2024 school year and failed to address A.T.'s behavioral needs in the proposed plan, leaving him without an updated IEP or behavioral supports at the start of the school year. (Vol. V, A1770).

**2023-2024:**

73. The English 4 teacher did not offer any of the accommodations, especially the assistant technology listed on the IEP.  (Vol. V,A1252-A1277); (Vol. II, A933-6; A915).

74. Despite multiple parental requests for an FBA, A.T. continued to face punitive disciplinary actions for behaviors related to his disability without receiving appropriate support. When the parents inquired about the FBA, the District deferred to their attorney and cited a failed settlement agreement as justification for their inaction. The District's refusal to conduct an FBA, despite clear evidence of A.T.'s behavioral challenges, prevented the development of a Behavior Intervention Plan ("BIP") with appropriate supports. Without a proper FBA, effective behavioral interventions could not be implemented, denying A.T. access to the support he needed. Instead, the District misinterpreted A.T.'s behaviors as defiance and resorted to punitive measures, rather than positive interventions.

This approach persisted despite documented evidence of his struggles, including numerous disciplinary reports. As a result, A.T. experienced increased anxiety, isolation, and self-esteem issues, due to repeated academic and emotional penalties. (Vol. V, A1580-1383; A1584; A1776); (Vol. II, A493; A845; A847-A850; A917; A847-A850; A879; A917).

75. Despite A.T. receiving more than twenty disciplinary referrals and multiple reports between October 2023 and April 2024, including a Harassment, Intimidation, and Bullying ("HIB") report in March 2024, the District continued to impose punitive measures instead of providing necessary behavioral supports. (Vol. IV, A1294-5; A1340- A1357); (Vol. III, A964; A968); (Vol. V, A1428; A1778); (Vol. III, A979-980).

76. Due to repeated failures to conduct an FBA, Parent requested an independent FBA on March 19, 2024 IEP meeting. The District again failed to follow any established procedures to approve or deny such request. (Vol. V, A1581; A1692); Vol. II, A493-496 ).

77. In November 2023 and, again, between February and March 2024, Parent notified the District of A.T.'s unexpected health concerns and the scheduling of spinal-cord surgery. (Vol. V., A1716 -A1719; A1722; A1738; A1327; A1327; Vol. III, A976-77; A971-75; A927; A842; A947).

78. The District took no action to address A.T.'s educational needs that arose before the surgery, such as coordinating assignments, planning for missed instruction, or providing accommodations during the pre-surgery period. When Parent attempted

18

to communicate with staff about these concerns, District personnel instructed her to put all communication through her own attorney instead. (Vol. III, A936; A947.; A971-75; A927; A929; A924; A1014-1019; A1018; A976-77).

79. Following the surgery, the District failed to address or provide home instruction through the IEP process, leaving A.T. without any educational supports during his recovery. (Vol III, A976-7).

80. While stay-put protections were in effect, the District finalized an IEP dated March 2024 without obtaining parental consent. The District implemented this IEP for the remainder of the 2023–2024 school year. (Vol. V, A1806-807).

81. The March 2024 IEP did not address A.T.'s health condition, spinal-cord surgery, need for home instruction, or the ongoing HIB and behavior reports. (Vol. V, A1806-807).

82. The District subsequently provided Parent with progress reports that had been generated under the unauthorized IEP. These reports reflected services that were neither approved nor delivered, as A.T. was recovering from surgery and not attending school during the period for which the District claimed services were provided. (Vol. III, A989-A997; (Vol. IVmA1297); (Vol. V A1806-807).

83. Though A.T. had a stay put IEP from June 2021, the District refused to implement many, if not all, of A.T.'s accommodations and to provide him with the supports necessary to make meaningful progress in his education. (Vol. VI, A1025-A1035).

84. The District did not provide quarterly IEP progress reports for 2022–2023 and did not include transition goals or services to prepare A.T. for postsecondary education or employment from 2021-2024.

**B.  Procedural History:**

85. Parents first filed for due process on September 21, 2022.  One of the main issues in the first Petition for Due Process was that the District failed to offer an IEP.

86. Then, on March 1, 2024, Parents filed a second Petition for Due Process for, *inter alia*, compensatory education. The second Petition for Due Process focused, in part, on a request for compensatory education based on the District's ongoing failure to provide A.T. with a FAPE.  (Vol. I, A2).

87. On June 6, 2024, the ALJ consolidated the Petitions into one matter. (*Id.*).

88.  Both matters were heard in the Office of Administrative Law on  July 29 and 30, 2024, in due process hearing before the administrative law judge. (*Id.*).

89. Parents were initially represented by an attorney in both matters, but proceeded as *pro se* litigants, as of May 31, 2024.(Vol. I, A1).

90. The ALJ denied the relief requested for both Petitions for Due Process. (Vol. I, A24-26).

91. The ALJ's Final Decision and Order (*hereinafter,* the "Order"), ruled favorably for the District, and against, the Plaintiffs, on all issues. (*Id.*).

92. The ALJ issued the Order on December 11, 2024. (*Id.*).

93. Undersigned Counsel timely filed the instant appeal and civil action on March 7, 2025.[1] (ECF 1).

---

[1] Plaintiffs are presently before this Court in 3:24-cv-00822, which is before the Hon. Zahid N. Quraishi, U.S.D.J. for a related case, which involves, *inter alia*, civil rights claims against the Defendant District.

94. Comes now Plaintiffs, A.T. and O.T. on behalf of A.T., who submitted the attached Brief and Motion for Summary Judgement on the Administrative Record.

I hereby certify that the foregoing statements by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

MONTGOMERY LAW, LLC.
Attorneys for Plaintiffs

By      /s/Bradley R. Flynn
Bradley R. Flynn, Esq.
NJ Attorney I.D. No. 173362016

Dated: November 10, 2025.

21