MONTGOMERY LAW GROUP
Bradley R. Flynn, Esq.
NJ ID 173362016
1420 Locust Street, Suite 420
Philadelphia, PA 19012
Phone: 215-650-7563
Bradley@ed-law.com

Attorneys for the Plaintiff

**IN THE UNITED STATES DISTRICT COURT,
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| A.T. and O.T., individually and | : | |
| on behalf of A.T., | : | |
| *Plaintiffs,* | : | |
| v. | : | |
| | : | Case No.  3:25-cv-01728 |
| | : | |
| | : | |
| FREEHOLD REGIONAL HIGH | : | |
| SCHOOL DISTRICT BOARD OF | : | |
| EDUCATION, | : | |
| *Defendant.* | : | |

**BRIEF IN OPPOSITION TO DEFENDANT FREEHOLD REGIONAL HIGH SCHOOL
DISTRICT BOARD OF EDUCATIONS MOTION FOR SUMMARY JUDGEMENT**

**MONTGOMERY LAW GROUP**
Bradley R. Flynn, Esq.
NJ ID 173362016
1420 Locust Street, Suite 420
Philadelphia, PA 19012
Phone: 215-650-7563
Bradley@ed-law.com

*Attorneys for the Plaintiff's*

**1**

**TABLE OF CONTENTS**

I. INTRODUCTION...........................................................................................................4

II. ARGUMENT AND AUTHORITIES.........................................................................4

    A. The ALJ Erred When He Made His Determination of Credibility....................................... 4

    B. The District Misrepresents the Facts Surrounding A.T.'s Evaluations................................ 5

    C. The District Incorrectly Argues That the LLD Classroom is Appropriate to Provide FAPE to A.T.................................................................................................................................... 8

        1. The District Predetermined the LDD Placement................................................................ 8

        2. The District and the ALJ Failed to Consider that the ICR Classroom is the Least-Restrictive Environment for A.T................................................................................10

    D. As to the June 14, 2021 IEP and Stay Put:.........................................................................13

        1. The District fails to advance an argument that would justify its refusal to amend the IEP.........................................................................................................................................13

        2. The District never offered Parents an IEP to reject in August 2022.............................13

        3. A.T. made no progress in the ICR program because the District did not amend the IEP; not because Parents rejected the LLD class.........................................................................14

III. Conclusion.................................................................................................................16

## TABLE OF AUTHORITIES

**Cases**

Abigail P. through Sarah F. v. Old Forge Sch. Dist., 105 F.4th 57 (3d Cir. 2024) ...................... 15

Anderson v. City of Bessemer City, N.C., 470 U.S. 564 (1985) ................................................ 4

Bd. of Educ. v. Rowley, 458 U.S. 176 (1982) .................................................................... 4

Carlisle Area Sch. v. Scott P., 62 F.3d 520 (3d Cir. 1995) ...................................................... 4

C.H. v. Cape Henlopen Sch. Dist., 606 F.3d 59 (3d Cir. 2010) …........................................ 9, 12

D.B. ex rel. H.B. v. Gloucester Twp. Sch. Dist., No. 10-4630, 2012 WL 766771 (3d Cir. 2012)............................................................................................................ 8

Deal v. Hamilton Cnty. Bd. of Educ., 392 F.3d 840 (6th Cir. 2004) ……....................... 8

Drinker ex rel. Drinker v. Colonial Sch. Dist., 78 F.3d 859 (3d Cir. 1996) .............................. 12

Endrew F. v. Douglas Cnty. Sch. Dist. RE-1, 137 S. Ct. 988 (2017) ...................................... 14

F.H. & M.H. o/b/o J.H. v. West Morris Reg'l High Sch. Bd. of Educ., EDS 10706-17 (N.J. OAL Jan. 2021) ............................................................................................ 8

Hidalgo v. N.Y.C. Dep't of Educ., No. 19-CV-2590, 2021 U.S. Dist. LEXIS 4446 (S.D.N.Y. Jan. 8, 2021) ............................................................................................ 12, 13

Johnson v. District of Columbia, 839 F. Supp. 2d 173 (D.D.C. 2012) ...................................... 12

Knable ex rel. Knable v. Bexley City Sch. Dist., 238 F.3d 755 (6th Cir. 2001) ............................ 9

Oberti v. Bd. of Educ. of Borough of Clementon Sch. Dist., 995 F.2d 1204 (3d Cir. 1993) .. 10–11

Shore Reg'l High Sch. Bd. of Educ. v. P.S., 381 F.3d 194 (3d Cir. 2004) ................................ 4–5

Spielberg ex rel. Spielberg v. Henrico Cnty. Pub. Schs., 853 F.2d 256 (4th Cir. 1988) .............. 8

**Statutes**

20 U.S.C. § 1415 ...................................................................................... 4, 12, 13

20 U.S.C. § 1415(b)(4) ...................................................................................... 7

20 U.S.C. § 1415(d)(2) ...................................................................................... 7

20 U.S.C. § 1415(e)(3) .................................................................................. 12–13

20 U.S.C. § 1415(i)(2)(B)(iii) ................................................................................ 4

20 U.S.C. § 6312(g)(2) ...................................................................................... 7

**Federal Regulations**

34 C.F.R. § 300.300(c)(1) .................................................................................... 6

34 C.F.R. § 300.322(e) ...................................................................................... 7

34 C.F.R. § 300.503(a) .................................................................................... 7–8

34 C.F.R. § 300.503(b) ...................................................................................... 8

**New Jersey Administrative Code**

N.J.A.C. § 6A:14-2.3(d) .................................................................................... 15

N.J.A.C. § 6A:14-2.7 ........................................................................................ 9

N.J.A.C. § 6A:14-3.7 ..................................................................................... 5, 13

N.J.A.C. § 6A:14-3.8(e) .................................................................................. 8, 14

**Other Authorities**

New Jersey Office of Administrative Law (OAL) Decisions ........................................................ 8

**3**

## I.    INTRODUCTION

Plaintiffs respectfully request that this Court: (a) deny the Defendant Freehold Regional High School District's (the "Defendant" or the "District") Motion for Summary Judgement on the Administrative Record; (b) reverse the Final Decision and Order of the ALJ; (c) award compensatory education, together with the relief sought in Parent's appeal to this Court; and (d) award attorneys' fees and costs of suit to Parent. The following paragraphs set forth Plaintiffs' rationale in support of the relief requested herein.

## II.    ARGUMENT AND AUTHORITIES

### A.  The ALJ Erred When He Made His Determination of Credibility.

In reviewing credibility determinations, the District Court must make its own findings by a preponderance of the evidence. 20 U.S.C. § 1415(i)(2)(B)(iii). The District Court, however, "must also afford "due weight" to the ALJ's determination." Board of Education v. Rowley, 458 U.S. at 206 (1982); Shore Reg'l High Sch. Bd. of Educ. v. P.S. 381 F.3d 194; 199 (3d Cir. 2004). If a state administrative agency has heard live testimony and has found the testimony of one witness to be more worthy of belief than the contradictory testimony of another witness, that determination is due special weight. *Id.*; Carlisle Area School v. Scott P., 62 F.3d 520, 527-29 (3d Cir. 1995). To that end, a District Court must accept the state agency's credibility determinations "unless the non-testimonial, extrinsic evidence in the record would *justify* a contrary conclusion." Carlisle, 62 F.3d at 529. Courts have noted that the word justify demands essentially the same standard of review given to a trial court's findings of fact by a federal appellate court. *See* Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 574, 84 L. Ed. 2d 518, 105 S. Ct. 1504 (1985).

**4**

Contrary to Defendant's Brief, Parents contend that the ALJ erred when he failed to fully consider that "the non-testimonial, extrinsic evidence in the record" justified finding the District witnesses less credible than Plaintiff Parent. <u>Shore Regional High School Board of Education v. P.S. on behalf of P.S.,</u> 381 F.3d 194, 199-200 (3d Cir. 2004); **(**Def. Br. at 9.). Though the ALJ states that he reviewed and applied the documentary evidence in support of his credibility determination, the administrative record belies that statement. (<u>See</u> Vol. I at A12). Rather, the record shows that the District failed to issue finalized IEP's, which, notably, included the District's witnesses entertaining a draft IEP into evidence that was never issued to Parent and that was not the result of an IEP meeting. (<u>See</u> Vol, I at A137-155;) (<u>See also</u> Exhibit B, Vol. II at A577-593.) <u>N.J.A.C.</u> 6A:14-3.7(1) required that the child study team must keep a record of all individuals who participated in the meeting to develop the IEP. The draft IEP, notably, lacks signatures and a date for the IEP meeting. (Vol. II, A577; A578; A592).

Here, parents contend the ALJ overlooked the fact that both Dr. Howland and Ms. Fitzhenry could not locate the date on the draft IEP and could not match it to the August 2, 2022 meeting (Vol. V., A1550); (Vol. V, A1676). In other words, had the ALJ compared the unissued IEP with the witness' testimony, he should have found these witnesses to be less credible. Although Parents did not voice objection to qualifying Dr. Howland and Ms. Fitzhenry at the due process hearings held on July 29, 2024, and July 30, 2024, as the witnesses testified, parents questioned their credibility after listening to their testimony. (<u>See</u> Vol. V, A1438, 32: 17-20); (<u>See also</u> A1633, 12: 12-17).

### B. The District Misrepresents the Facts Surrounding A.T.'s Evaluations.

Parents contend that the District's brief misrepresents the facts when it alleges that it could not evaluate A.T. without Parents' consent. (Def. Br. at 15). The IDEA Regulations specify

**5**

that school districts "Must obtain informed parental consent, in accordance with § 300.300(a)(1), prior to conducting any reevaluation of a child with a disability." 34 CFR § 300.300(c)(1)(i). The Regulations go on to say, "If the parent refuses to consent to the reevaluation, the public agency may, but is not required to, pursue the reevaluation by using the consent override procedures described in paragraph (a)(3) of this section." 34 CFR § 300.300((c)(1)(ii). As applied here, the District sent Parents the consent for reevaluation on January 21, 2022. (See Vol. III at A1067-A1073). That consent for evaluation form listed Parents consenting to speech, occupational therapy, psychoeducational, and neurodevelopmental evaluations. (See Vol. III at A1072-73.) Parents noted on the signature page disagreement with, *inter alia*, the procedures and level of teacher input, "as no data supports these claims. It is not a true description of our son, or the supports he has received." (See Vol. III at A1073). On January 25, 2022, Parents' then-attorney sent counsel for the District a letter, indicating that Parents do not object to the evaluations, but, rather, that they objected to "the form of the plan itself." (See Vol. III at A1059). The letter, additionally, noted that the level of detail from the teacher reports in the evaluation plan was not "warranted or appropriate." (See Vol. III at A1059). The letter concludes by affirming that Parents would sign the consent form once the District made revisions to it and requested information regarding the assistive technology evaluation. (See Vol. III at A1060).

As shown in the records, parents contend that the District never responded to this letter or the request to modify the consent for evaluation form. Id. Then, on January 26, 2022, Parents then-attorney sent a follow-up letter requesting that an outside, independent evaluator observe A.T. in their program. The District, however, denied that request. (See Vol. III at A1061-62). Again, on February 2, 2022, Parents' then-attorney renewed her request for the observation, but she received no response from the District. (See Vol. III at A1065). Parents' then-attorney,

**6**

subsequently, on February 3, requested clarification regarding the neurodevelopmental evaluation listed on the consent form, but, again, she received no response. (See Vol. III at A1066.) On that same date, Parents, through their then-attorney, returned the signed consent form. (See Vol. III at A1067- A1073). Contrary to the District's Brief, Parents signed the consent for evaluation form. (See Vol. III at A1073).

The District, on February 7, sent Parents two personal-health-information forms ("PHI") for the District and its physician to receive records from A.T. 's medical providers, which included confidential medical, psychiatric, psychological and/ or sociological information. (See Vol. III at A1075-77). These forms were to obtain records to inform the evaluations. Parents contend, however, that although Parent requested translation of the forms into Albanian, as she did not understand them, the District refused to do so, in violation of 20 U.S.C. § 1415(b)(4) and (d)(2); 20 U.S.C. § 6312(g)(2), and 34 C.F.R. § 300.322(e);[1]A1755. On February 12, Parent reached out to Director of Special Education, Dr. Jessica Howland, to revoke her consent for the forms and the evaluations until the District could translate and explain the forms. (See Vol. III at A1080, 1082- 1084). Moreover, by failing to translate the forms into Albanian, parents contend that the District denied the Parents meaningful participation as members of the IEP team. Absent their informed consent, the District barred them from participating in the development of A.T. 's IEP.

Parents contend they never revoked consent for A.T. 's FBA.[2] 34 CFR § 300.503(a) requires school districts to provide prior-written notice when the district proposes to initiate or

---

[1] C.F.R. § 300.322(e) ensures that parents can attend and receive information about individualized education program (IEP) meetings—with translation or similar assistance if necessary to accommodate families with English language or other communicative difficulties—so that they may understand what is happening in the meeting.

[2] As shown in the attached Exhibit A, the District alleges that Parents' prior counsel revoked consent for the FBA. While Exhibit A belies this contention; even, assuming, *arguendo*, it was the case that prior counsel revoked consent for the FBA, such a revocation of consent would be invalid. Parents, and not their attorney, can only revoke consent through prior-written notice. 34 CFR § 300.503(a)(1)-(2). (Ex. "A.").

7

change an evaluation, or refuses to initiate or change an evaluation, of a child in special education. 34 CFR § 300.503(a)(1)-(2). Furthermore, the Regulations dictate that the notice provide a description of the action, an explanation of why it refuses to take the action; A description of each evaluation procedure, assessment, record, or report the agency used as a basis for the proposed or refused action; and a statement of procedural safeguards. 34 CFR § 300.503(b)(1)-(7). As applied here, the administrative record does not show that the Parent revoked consent for the FBA in May of 2023. (See Vol. II at A845-850). Rather, Parents' then-attorney informed the District's counsel that the May 2023 FBA consent had expired and that the District would need to issue a new consent form for behaviors and discipline that occurred in January and February 2024[3]. (See Vol III at A949-A953).The record specifically reflects an email sent from Defendant District to Plaintiffs' former counsel on February 14, 2024, requesting dates for an FBA to which Plaintiff provided consent on May 4, 2023. (See Vol. III at A946-A956.) Though Parent signed consent for the FBA, the District failed to complete it within the required sixty days after obtaining parental consent in May, 2023 (Vol. II, A845; A850). N.J.A.C. 6A:14-3.8(e).

### C. The District Incorrectly Argues That the LLD Classroom is Appropriate to Provide FAPE to A.T.

#### 1. The District Predetermined the LDD Placement.

The LLD classroom is not appropriate, as the District predetermined this placement. A predetermined IEP is actionable because it seriously deprives parents of their participation rights, "exclud[ing] parents from meaningfully participating in the decision-making process." D.B. ex rel. H.B. v. Gloucester Twp. Sch. Dist., No. 10-4630  *771 (3d. Cir. 2012).[4] OAL case law is

---

[3] The District was required to complete the May 2023 FBA within sixty days of parental consent. N.J.A.C. 6A:14-3.8(e).

[4] *See also* Deal v. Hamilton, 392 F.3d 840 (6th Cir. 2004); Spielberg ex rel. Spielberg v. Henrico County Public Schools, 853 F.2d 256 (4th Cir.1988);

**8**

similarly persuasive on this point, as that court found that a school district predetermined the student's placement when "The District showed no effort to meaningfully include the Petitioners' valid concerns or to resolve the matter amicably." F.H. and M.H. o/b/o J.H. v. West Morris Regional High Board of Education, EDS 10706-17 (January 2021).

As applied here, the District's procedural violations began with the predetermination of A.T. 's placement in 2021 without parental involvement and outside of the formal IEP process. (See Vol. III at A748-A752, A762). In fact, the District, since the articulation meeting in 2021, insisted that A.T. be placed in the LLD class. Though the District insisted on the LLD placement, the parties agreed to the ICR placement. (See Vol. V at A1453, 47:1-21; Vol. I at A137.) Nonetheless, following that meeting, parents contend that the District, for the rest of the time A.T. was a student, continued to pressure Parents to place him in the LLD class. This included the District changing A.T.'s schedule from in-class resource to a more-restrictive, LLD special education classes during the 2022-2023 school year, without convening an IEP meeting. (See Vol. III at A748-A752, A762). Despite the record showing that the District sidelined the Parents in the IEP process, the ALJ did not find that the District predetermined the IEP for the LLD placement, thus, committing a substantive-procedural violation of the IDEA.[5]

Furthermore, the District argues that November 2022 autism diagnosis justified that LLD placement. (Def. Br. at 25). Parents contend, however, that the District had been arguing for that placement since the 2021 articulation meeting, which was nearly a year prior to this diagnosis. (See  Vol. V at A1447.) The District's hind-sight bias does not establish that he should have been

---

[5] If a procedural violation "causes substantive harm to the child or his parents," it may rise to the level of a denial of FAPE. C.H. v. Cape Henlopen Sch. Dist., 606 F.3d 59, 66 (3d Cir. 2010) (citing Knable ex rel. Knable v. Bexley City Sch. Dist., 238 F.3d 755, 765 (6th Cir. 2001). As the regulations affirm, compensatory education is the appropriate remedy for a substantive procedural violation of the IDEA. N.J.A.C. § 6A:14-2.7. To that end, procedural violations may lead to a finding that a student did not receive a FAPE if the violations "(1) impeded the child's right to a FAPE; (2) significantly impeded the parents' opportunity to participate in the decision-making process regarding the provision of FAPE to the child; or (3) caused a deprivation of educational benefits." N.J.A.C. § 6A:14-2.7.

**9**

placed, all along, in an LLD class; rather, it shows that the District had predetermined this placement well before it had all of the data. (See Vol. III at A748-A752, A762.)

**2. The District and the ALJ Failed to Consider that the ICR Classroom is the Least-Restrictive Environment for A.T.**

Parents contend that the ALJ and the District failed to apply the Third Circuit's standard for determining whether the LLD class was the least-restrictive environment. Oberti v. Bd. of Educ. of Borough of  Clementon Sch. Dist. 99 F.2d 1204 (3d. Cir. 1993).  The two-prong test asserts: (1.) Can the District satisfactorily educate the student in the general education classroom with the use of supplementary aids and services; and (2.) if after considering the factors outlined under the first prong, then to what extent does the proposed placement allow for the student to interact with non-disabled students? Id. Under the first prong, hearing officers[6] consider three factors: (a.) to the extent to which reasonable efforts were made to accommodate the student in the general education setting with the use of supplemental supports and services; (b.) the outcome of comparing the benefits of educating the student general education versus the more-restrictive setting; and (c.) the possible negative effects of inclusion on the general education students. Id.

Applying the first factor, the District failed to make reasonable efforts to educate A.T. in the ICR class with supplementary aids and services. Here, the record shows that the District did not even offer an IEP at all during the 2022-2023 school year. (See Vol. II, A577-592). Furthermore, the record also shows that the District did not timely complete the FBA, for which Parents signed consent.  (See Vol. III at A946-A956.) Absent conducting the FBA, Parents contend that the District lacked adequate data, upon which it could make changes to A.T. 's IEP, including a behavioral intervention plan. Additionally, the record shows that the District never

---

[6] Hearing Officer and Administrative Law Judge are used interchangeably throughout the briefs, but, essentially, mean the same thing: The trier of fact in a special education due process hearing.

**10**

took steps to adjust the IEP after A.T. 's surgery, failed to account for how his pain impacted his education; did not implement the IEP, including the accommodations, assistive technology, and related services. (Vol. I, A104). Further, it did not offer to make any changes to the IEP to see what, if anything, could be done to keep him in the ICR class.  (See Vol. 4 at A1278;) (See Vol. V at A1521-1522, 114:3-116:20.) (See also ECF 1-3 at Findings of Fact ¶32.) (See also Vol. III at A972-976.)  Before racing to place him in the LLD class, the District was required to attempt to program for A.T. in the least restrictive environment, with appropriate support, which it failed to do when it did not make changes to his IEP.

Had the District focused on the right goals and objectives in the IEP, he could have succeeded in the ICR class. Here, the record shows that in May of 2022, Parents took A.T. to Princeton Speech Language and Learning Center for a comprehensive speech and language evaluation. Parents sought the evaluation to get an updated assessment of A.T.'s language profile and to inform academic planning. The evaluations were completed on May 24 and May 31, 2022. (See Speech and Language Evaluation by Marcie Fountaine, MS, CCC-SLP, Vol. II at A435-454.). In reviewing A.T.'s records, the evaluator reported that despite A.T. having a documented history of language/learning difficulties, there was only one objective for reading and two objectives for writing for the 2021-2022 IEP. Whereas A.T. 's 2020-2021 IEP had seven objectives for reading and three for writing.  Therefore, it is clear that Defendant District was not adequately utilizing, nor preparing data, to provide A.T. with a FAPE. It is also clear that A.T. would have been successful in the least-restrictive environment had Defendant District focused on the right goals and objectives to allow him success.

It is anticipated that the District will argue that stay put prevented it from revising the IEP, so A.T. could remain in the ICR class, as it intimates in its brief. (Def. Br. at 21). 20 U.S.C.

**11**

§ 1415 (e)(3) of the IDEA, the "stay put" provision, holds: "During the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then current educational placement of such child, or, if applying for initial admission to a public school, shall, with the consent of the parents or guardian, be placed in the public school program until all such proceedings have been completed." For purposes of stay put, "courts have explained that a child's educational placement 'falls somewhere between the physical school attended by a child and the abstract goals of a child's IEP.'" Johnson v. D.C., 839 F. Supp. 2d 173, 176-7 (D.D.C. 2012). The test for determining the current educational placement is "the operative placement actually functioning at the time the dispute first arises." Drinker ex rel. Drinker v. Colonial Sch. Dist., 78 F.3d at 867 (3rd. Cir., 2018).  It is notable that the IDEA expressly allows for the parents and the district to revise the IEP during stay put. Hidalgo v. N.Y.C. Dep't of Educ., No. 19-CV-2590 (RA), 2021 U.S. Dist. LEXIS 4446 (S.D.N.Y. Jan. 8, 2021) at 13; 20 U.S.C. § 1415 (e)(3). Furthermore, the Third Circuit affirms, "the stay-put provision was never intended to suspend or otherwise frustrate the ongoing cooperation of parents and the school district to reach an amenable resolution of a disagreement over educational services." C.H. v. Cape Henlopen Sch. Dist., 606 F.3d 59, 72 (3d Cir. 2010).

### D.  As to the June 14, 2021 IEP and Stay Put:

1. **The District fails to advance an argument that would justify its refusal to amend the IEP.**
   The District argues, *ipse dixit*, and without any legal support, that it was unable to amend any of the IEPs. (Def. Br. at 21). The above legal authorities, however, show that this simply is not correct. Hidalgo v. N.Y.C. Dep't of Educ., at 13; 20 U.S.C. § 1415 (e)(3). As shown by the record, Parents, repeatedly, requested revisions to A.T.'s IEP.  (See Vol. III at A788; A809-A821,

**12**

A826.) Here, Parents contend that there was nothing preventing the District from revising the IEP to include FBA data or to accommodate his recent spinal surgery. (See Vol. III A945.) Despite these changing circumstances, Parents contend that the District refused to even consider the Parent's request to amend the IEP. Both the ALJ and the District overlooked the fact that the child study team could have amended the IEP in light of A.T. 's changing circumstances and by mutual agreement, even in the face of stay put. Hidalgo v. N.Y.C. Dep't of Educ., at 13; 20 U.S.C. § 1415 (e)(3). Because the District failed to make reasonable changes to the IEP, the program it provided to A.T. was not calculated to provide him with a FAPE.

**2. The District never offered Parents an IEP to reject in August 2022.**

Contrary to what the District alleges, Parents never rejected the August 2, 2022 IEP, as the District never presented it to them. (Def. Br. at 19). Per N.J.A.C. 6A:14-3.7(1), the child study team must keep a record of all individuals who participated in the meeting to develop the IEP. The IEP, notably, lacks signatures and a date for the IEP meeting. (See Vol. II, A577; A578; A592). Furthermore, nowhere on the IEP does it offer an LLD placement. (See Vol. II at A577-592.) Because the District never presented this IEP to Parents, they contend that there was nothing for them to reject or accept. Moreover, both the ALJ and the District overlook the fact that not only was there no IEP to reject, the District, again, failed to offer A.T. a program.

**3. A.T. made no progress in the ICR program because the District did not amend the IEP; not because Parents rejected the LLD class.**

The District incorrectly argues that A.T. did not make academic progress because he was in the ICR setting. (Def. Br. at 23). Rather, A.T. was not making progress in the ICR setting because the District refused to amend the IEP as needed and because it was not calculated to provide him with FAPE. In Endrew F., the United States Supreme Court held that the local education agency ("LEA") "must tailor the IEP to meet the unique needs of the child, and that

**13**

such an IEP must be "appropriately ambitious in light of the child's circumstances." <u>Endrew F. v. Douglas County Sch. Dist.,</u> RE-1, 137 S. Ct. 988 (2017). As applied here, the District failed to make necessary adjustments to A.T. 's IEP, even after Parents apprised the District of his challenges and areas of need. (<u>See</u> Vol. III at A788; A809-A821, A826.)  For example, the District notes in its Brief that A.T. did not make progress in math class because his behavior remains distracting. (Def. Br. at 24). The District, however, overlooks the fact that, though it had obtained consent for the FBA in May 2023, it never completed this evaluation within the required sixty days to address this behavior, which was interfering with math. (<u>See</u> Vol. II, A845; A850). <u>N.J.A.C.</u> 6A:14-3.8(e). Similarly, though the District concedes that A.T. 's behavior interfered with math, at no point, as shown in the record, did it offer to conduct an FBA at an earlier time. Additionally, Parents contend that although the they requested changes to the IEP, the District refused to make these changes, relying on the excuse that stay put prevented it from adjusting the IEP to allow A.T. to make progress. (<u>See</u> Vol. II at A906.)

Following the January 21, 2022, IEP meeting, Plaintiffs' former counsel requested that Dr. Harold Tarriff, a prior Director of Special Services, observe A.T. during English, Geometry and Biology. Defendant District, however, denied this request. (<u>See</u> Vol. IV at A1061, 1062) Had this evaluation been approved, the parties would have been given data to better establish what A.T. needed to succeed in the ICR environment. Information from this evaluation, further, could have been implemented into his IEPs.

The District argues that A.T. did not make progress in the ICR setting, but it ignores the fact that it repeatedly failed to implement his IEP. (Def. Br. at 23). The Third Circuit observed that failing to implement a substantial or significant portion of an IEP is a denial of FAPE. <u>Abigail P. through Sarah F. v. Old Forge Sch. Dist.,</u> 105 F.4th 57, 66 (3d Cir. 2024). Additionally,

**14**

N.J.A.C. 6A:14-2.3(d) requires the District to implement the agreed-upon IEP without delay. In the case at bar, the District failed to provide assistive technology specified in A.T. 's IEP; when the District failed to provide speech therapy per his IEP between February 2022 and June 2023; and when his teachers failed to implement his accommodations, such as digital graphic organizers.   (See Vol. IV, A1217-A1220; A1223- A1225; A1231- A1234; A1239-A1243; A1250); .(See Vol. II, A881);   (See Vol. III, A1025-A1035). Absent the District implementing A.T. 's IEP, he, of course, had no way to make progress. The District cannot *place its thumb on the scale* by refusing to implement his IEP, and then be heard to say that he made no progress in the ICR class. Plaintiffs even requested IEP progress reports and associated data; however, Plaintiffs never received such data. (See Vol. III at A855.)

**III.    Conclusion**

Based on the foregoing reasons, Plaintiffs respectfully request that this Court deny the Defendant Freehold Regional High School District's Motion for Summary Judgement, and that Plaintiffs' Motion for Summary Judgement of the Administrative Record Should be granted.

MONTGOMERY LAW, LLC.
Attorneys for Plaintiffs


By      /s/Bradley R. Flynn
Bradley R. Flynn, Esq.
NJ Attorney I.D. No. 173362016

Dated: December 12, 2025.