MONTGOMERY LAW GROUP
Bradley R. Flynn, Esq.
NJ ID 173362016
1420 Locust Street, Suite 420
Philadelphia, PA 19012
Phone: 215-650-7563
Bradley@ed-law.com

Attorneys for the Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| A.T. and O.T. individual and on behalf of A.T., *Plaintiffs.* | : | Case No. 3:25-cv-1728 |
| v. | : | |
| FREEHOLD REGIONAL HIGH SCHOOL DISTRICT BOARD OF EDUCATION | : | |

**PLAINTIFFS' ANSWER TO THE DEFENDANT'S RULE 56 STATEMENT OF FACTS**

1. It is admitted that Plaintiff filed for due process against the Freehold Regional District Board of Education ("Defendant District"). It is further admitted that Plaintiff filed two federal lawsuits against Defendant District. It is denied, however, that there are three petitions for due process filed. Rather, Plaintiff only filed two petitions for due process. A.T. and O.T. on behalf of O.T. vs. Freehold Regional Board of Education, EDS 09467-2022; A.T. and O.T. on behalf of O.T. vs. Freehold Regional Board of Education, EDS 05894-2024.
2. It is admitted that Plaintiff filed the federal lawsuits against Defendant District styled A.T. and O.T. o/b/o A.T. v. Freehold Regional High School Board of Education, No.

3:24-cv-00822- (ZNQ)(JTQ). While it is admitted that Plaintiff brought claims under the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and the New Jersey Law Against Discrimination, it is denied that these are the only claims. Plaintiffs additionally brought claims under 42 U.S.C. § 2000d for discrimination on the basis of language and national origin; Discrimination in Violation of the Equal Education Opportunities Act, 20 U.S.C.S. § 1703; and denial of equal protection, 42 U.S.C. § 1983. See ECF1- Counts 5, 6, and 7.

3. It is denied that there were three due process petitions filed. Rather, Plaintiff only filed two petitions for due process: OAL Nos. 2023-34912 and 2024-36857. It is denied that there was a third petition for due process, 2024-37156. The existence of this due process petition is unsupported by the certified record. See Volume I, A1-A43.

4. It is admitted that the hearing on Plaintiffs' due process matters took place on July 29, 2024 and July 30, 2024 before ALJ Jacob S. Gertsman. See ECF 1-3.

5. It is admitted that Defendant offered the testimony of its Special Education Supervisor Kelly A. Fitzhenry and that the parties stipulated that she was an expert in special education and as a Learning Disabilities Teacher Consultant. See Exhibit C, Vol. V at A1633-1637, 12:16-16:6. However, Plaintiff's Mother began to question Ms. Fitzhenry's expert testimony after the due process hearing began, as she listened to her testimony.

6. It is admitted only as to the contents of Ms. Fitzhenry's testimony regarding her claim that she has reviewed and consulted on well over a thousand IEPs in her career. Id. at 16:2-16:6. However, Plaintiff's Mother began to question Ms. Fitzhenry's expert testimony after the due process hearing began, as she listened to her testimony.

7. It is admitted that Defendant offered the testimony of Jessica M. Howland, Ed.D., Defendant District's Director of Special Services, who was qualified as an expert in special education, by stipulation of parties. See Exhibit C, Vol. V at A1437-1439, 31:19-33:22. However, Plaintiff's Mother began to question Dr. Howland's expert testimony after the due process hearing began, as she listened to her testimony.

8. It is admitted as to what Dr. Howland testified regarding the amount of IEP meetings she has attended. Id. at 33:16-22.

9. It is admitted that Plaintiffs filed the instant appeal on March 7, 2025, of ALJ Gertsman's final decision. Plaintiff only filed two petitions for due process: OAL Nos. 2023-34912 and 2024-36857. It is denied that there was a third petition for due process, 2024-37156. The existence of this due process petition is unsupported by the certified record. *See* Volume I, A1-A43. It is denied that the ALJ correctly ruled on the issues before him. Furthermore, contrary to what Defendant District alleges in its Rule 56 Statement of Fact, "that at all times during the 2021-2022, 2022-2023, and 2023-2024 school years, Defendant District provided student A.T.1 Individualized Educational Programs ("IEPs")," Defendant never offered any draft or finalized IEPs to Plaintiff for the 2022–2023 or 2023–2024 school years. The Administrative Record does not contain the final IEPs and, in fact, the District never offered an IEP to A.T. in August 2022. See Exhibit A, Vol, I at A137-155; See also Exhibit B, Vol. II at A577-593.

10. It is admitted that A.T. is an eighteen-year-old adult, born on May 8, 2007. *See* Exhibit A, Vol. II, A630-645.

11. It is admitted that A.T. was homeschooled from 2012–2015. See Exhibit C, Vol. V at A1642-1643, 21:21-22:1.

12. It is admitted that O.T. (Plaintiff Mother) has earned a masters degree in both special education and general education. See Exhibit C, Vol. V. at A1792-1793 171:16-172:3.
13. It is admitted that Plaintiff Mother is certified by the state of New York to teach disabled students grades five (5) to eight (8). See Exhibit C, Vol. V at A1792, 171:5-12.
14. It is admitted that Plaintiff Mother holds a second New York education license in general education grades five (5) to eight (8). See Exhibit C, Vol. V at A1792, 171:13-14.
15. It is admitted that Plaintiff Mother taught special education for five (5) years, until A.T. got sick. See Exhibit C, Vol. V at A1793, 172:14-15.
16. It is admitted that in New York, the special education teacher is the Case Manager for a number of special education students. See Exhibit C, Vol. V at A1791, 170:11-21.
17. It is admitted that Plaintiff Mother served as a Case Manager for special education students. See Exhibit C, Vol. V at A1757-1758, 136:24-137:5.
18. It is admitted that Plaintiff Mother attended twenty (20) to thirty (30) IEP meetings, in her role as a special education case manager in New York. See Exhibit C, Vol. V at A1794, 173:11-21.
19. It is admitted that Plaintiff Mother taught Science, Math, and Italian to disabled and non-disabled students. See Exhibit C, Vol. V at A1791, 170:21-25. Notably, Plaintiff Mother also testified that her own language barriers prevented her from teaching English or History classes. See Exhibit C, Vol. V at A1791–1792.
20. It is admitted that A.T. was found eligible for, and received, special education and related services from the Lower District under the classification of communication impaired after being evaluated in the third grade. See Exhibit A, Vol. 2, A630-645; Exhibit C, Vol. 5, A1642 at 21:15-19 and A1644 at 23:10-12. See also ECF 1-3, at Findings of Fact ¶2.

21. It is admitted that in 2018, while in the sixth grade, A.T. was reevaluated by the Lower District and was found still eligible for special education and related services with the same classification of communication impaired. See Exhibit A, Vol. 2, A630-645. See also ECF 1-3, at Findings of Fact 3.

22. It is admitted as to what the raw scores were in Defendant's IQ test and social-skills composite. See Exhibit C, Vol. V at A1454, 48:14 (Howland). See also Exhibit A, Vol 2 at A634. See also ECF 1-3, at Findings of Fact ¶4. See Exhibit C, Vol. V at A1605, 199:23-25, A1606, 200: 1-5. Furthermore, the characterization that A.T.'s IQ score was "well below average" is specifically denied.

23. It is denied that "Plaintiffs' insist that A.T.'s social-skills composite score falls within the "above average range."" See Exhibit C, Vol. 5, A1454-1455 at 48:14-49:7 (Howland); See also ECF 1-3, at Findings of Fact ¶4. Rather, Plaintiffs never asserted that A.T.'s 2018 social-skills composite score of 66 was "above average." The Lower District's own 2018 report explicitly described it as "well below average," and Plaintiffs accepted that finding.

24. It is admitted as to what Fitzhenry testified regarding what was discussed when Defendant District met with the Lower District to review A.T. 's academic levels, social skills, and draft IEPs, while he was in 8th grade preparing for 9th grade. See Exhibit C, Vol. V at A1650, 29:9-19. See also ECF 1-3, at Findings of Fact ¶3.

25. It is denied the Lower District recommended a self-contained language learning disability program ("LLD"). Parents contend that the Lower District was a part of the finalized June 14, 2021 IEP, which contains no reference to LLD. The ALJ relied solely upon Fitzhenry's testimony to support this finding. No documentation, nor anything in the

certified administrative record, states that this was ever recommended. Furthermore, any characterization of A.T. is denied. See Exhibit C, Vol. V at 1650-1651, 29:20-30:22. See also ECF 1-3, at Findings of Fact ¶5. See also Vol. II at A630-645.

26. It is admitted only that Dr. Howland testified that A.T. was unable to meet grade-level expectations of Math and for English language arts literacy ("ELA") and never moved beyond the first level of achievement in NJSLA testing for math or ELA. See Exhibit C, Vol. V at A1455, 49: 8-23. It is denied, however, that A.T. cannot meet expectations for Math and English language arts in his current placement. This is purely speculative.

27. It is admitted in part and denied in part. It is admitted that Dr. Howland testified that the lower district recommended that A.T. attend Marlboro High School's LLD program. See Exhibit C, Vol. V. at A1448, 42:17-25. It is denied that the lower district recommended that A.T. attend Marlboro High School's LLD program. While Dr. Howland testified as to this, it is disputed that the lower district recommended that A.T. attend Marlboro High School's LLD program, as there is no supporting documentation.

28. It is admitted in part and denied in part. It is admitted only that Dr. Howland testified that Defendant District agreed with the Lower District's recommendation of an LLD program. See Exhibit C, Vol. V at A1446-1448, 40:18-42:7. It is denied that the lower district recommended that A.T. attend Marlboro High School's LLD program, and that Defendant District agreed with the Lower District's recommendation of an LLD program. While Dr. Howland testified as to this, Parents contend that the lower district never recommended that A.T. attend Marlboro High School's LLD program, as there is no supporting documentation.

29. It is admitted that Dr. Howland testified that A.T. 's present academic achievement levels reflected in his 8th grade IEP indicate that A.T. would fit the profile for LLD, and that Dr. Howland testified that data from A.T. 's October 8, 2019 Functional Behavioral Assessment (FBA) indicated that A.T. had difficulty with transitioning, communication, and understanding directions within the classroom environment. See Exhibit G (FRHSD-00634-642). See also Exhibit C, Vol. V at 1446-1448, 40:18-42:7. However, the October 8, 2019 FBA is not and has never been in the administrative record and, therefore, cannot be relied upon. Furthermore, this FBA was from a previous school district and bears no relevance to his then-current programming in the District or any justification to program for him in the LLD classroom.

30. It is admitted that Plaintiff Mother attended an articulation meeting on February 21, 2021. Parents contend, however, that the Colts Neck Township School District recommended placement in Marlboro High School's high-functioning LLD classroom was appropriate. Defendant District and the ALJ rely solely on Ms. Fitzhenry's testimony to support this conclusion. The certified administrative record contains no meeting notice, IEP, draft IEP, prior-written notice, or any document showing that an LLD placement was formally recommended at a February 2021 articulation meeting. Email correspondence from Colts Neck Township School District to Plaintiffs indicates that "no decisions have been finalized regarding [A.T.'s] high school program." See Vol. II at A559.

31. It is admitted that Plaintiffs sent an email to Defendant District and Lower District regarding their decision to unilaterally place A.T. at Marlboro High School. Any characterization of Plaintiffs' email is specifically denied. See Exhibit C, Vol. V at A1448, 42:8-16. See also Exhibit A, Vol. II at A559-560.

32. It is admitted only that Dr. Howland testified that he reached out to Plaintiffs after the February 8, 2021, email. Any characterization of the telephone conversation between Plaintiff Mother and Dr. Howland is denied. See Exhibit C, Vol. V at 1449-1450, 43:14-44:7.

33. It is admitted only that Dr. Howland testified that Plaintiff Mother responded to her phone call stating that A.T. wanted to go to Colts Neck High School to be with his friends. Any characterization of the telephone conversation between Plaintiff Mother and Dr. Howland is denied. See Exhibit C, Vol. V at A1450, 44:8-19. See also Exhibit A, Vol. II at A559-560.

34. It is admitted only that Dr. Howland testified that he explained to Plaintiff Mother that Colt Neck High School's LLD program may or may not be appropriate and that Marlboro High School has an LLD program Defendant District would like to try. Any characterization of the telephone conversation between Plaintiff Mother and Dr. Howland is denied. See Exhibit C, Vol. V at A1450, 44:8-19.

35. It is admitted only that Dr. Howland testified that Plaintiff Mother stated that "A.T. wants to be with his friends, and his friends go to Colts Neck." Any characterization of the telephone conversation between Plaintiff Mother and Dr. Howland is denied. *See* Exhibit C, Vol. V at A1450, 44:8-19. See also Exhibit A, Vol. II at A559-560. Defendant District conveniently leaves out key pieces of Plaintiff Mother's email. Plaintiff Mother's email at the citation listed states that Colts Neck High School has the services that Defendant District recommended and is conveniently in their home town and, thus, A.T. should be afforded the opportunity to stay at Colts Neck.

36. It is admitted only that Dr. Howland testified that the Defendant District provides a "special education continuum" of placement that offers different types of support in programing and placement to special education students. See Exhibit C, Vol. V at A1440-34:4-10.
37. It is admitted that Dr. Howland testified that Defendant District has four (4) different in-district programming and placements options. See Exhibit C, Vol. V at A1443, 37:7-13.
38. It is admitted that Dr. Howland testified that Defendant District testified that the placements are considered with the idea of allowing special education students to move forward on the least restrictive continuum, from the general education setting (least restrictive) to the self-contained classroom. See Exhibit C, Vol. V at A1443, 37:7-13.
39. It is admitted that Dr. Howland testified that "if a special education student can make meaningful progress on their goals and objectives in the general education setting, with minimal support, they would start there." See Exhibit C, Vol. V at A1440, 34:10-17. However, it is denied that this is the appropriate theory applicable to all special education students.
40. It is admitted that Dr. Howland testified that the Defendant District offers supplemental support, which is support that is directed by the student's IEP, and provided by either a certified staff member or a paraprofessional, typically revolving around organizational and behavioral management. See Exhibit C, Vol. V at A1440, 34:18-22.
41. It is admitted that Dr. Howland testified that "From there we go to and we're still talking about the general education setting, ICR, which is two teachers. A general education teacher and a special education teacher. … The general education teacher provides new

information from the curriculum to all of the class. And the special education teacher's responsibility is to modify the instruction, the curriculum, and the as – assessment attached to it in line with the student's IEPs." See Exhibit C, Vol. V at A1440-1441, 34:22-35:7.

42. It is admitted that Dr. Howland testified that if the ICR placement is not feasible, Defendant District considers a resource classroom, which is a smaller group setting where the curriculum is modified to such extent that it would not be feasible to do in the ICR setting, and that if a special education student requires the curriculum to be heavily modified, LLD placement is considered. See Exhibit C, Vol. V at 1441-1442, 35:8-26:2. However, it is denied that LLD placement is the only consideration for special education students in this situation. Furthermore, Parents contend that Defendant District never formally recommended LLD, as there are no finalized IEPs that make this recommendation.

43. It is admitted that Dr. Howland testified that if a special education student needs more support than is offered in the self-contained classrooms, Defendant District also offers a mild and moderate level cognitive impairment classroom and an autism spectrum program with different levels based on that student's needs. See Exhibit C, Vol. V at 1442, 36:16-22.

44. It is admitted that Dr. Howland testified that there are anywhere from twenty (20) to twenty-five (25) and upwards of twenty-eight (28) to thirty-five (35) students in core general education classes. See Exhibit C, Vol. V at A1443, 37:14-17.

45. It is admitted that Dr. Howland testified that there are upwards of about thirty (3) to thirty-one (31) students in ICR, with no more than ten (10) to twelve (12) special education students in the classroom. See Exhibit C, Vol. V at A1443, 37:18-21.

46. It is admitted that Dr. Howland testified that LLD classrooms have usually around twelve (12) students and are composed of a certified staff member, a classroom paraprofessional, and any other paraprofessionals that are required to be with a specific student pursuant to that student's IEP. See Exhibit C, Vol. V at A1444, 38:1-6.

47. It is admitted only that Ms. Fitzhenry testified that Defendant District has a LLD program with approximately sixty (60) students in different levels of self-contained classroom. See Exhibit C, Vol. V at A1668-1669, 47:17-48:20.

48. It is denied that Defendant District's LLD self-contained classrooms are structured to afford students a typical high school experience. See Exhibit C, Vol. V at A1668-1889, 47:17-48:20. Defendant District provides a mischaracterization of Fitzhenry's testimony. Plaintiffs dispute that the LLD placement would afford A.T. with a typical high school experience. Plaintiffs further dispute that the LLD recommendation was ever provided to Plaintiffs, as there has not been a finalized IEP since 2021.

49. It is admitted only that an IEP meeting was held on June 14, 2021. Any characterization of what occurred at the IEP meeting is specifically denied. See Exhibit C, Vol. V at A1654-1655 at 33:12-34:13. Defendant District submits that the LLD placement would have been the most appropriate option for A.T. However, Defendant District pre-determined this placement of their own accord without any input from Plaintiffs' parents. Defendant District never offered a finalized IEP that would solidify that this

placement is the best option. Furthermore, the June 14, 2021 IEP contains no recommendation for LLD.

50. It is admitted only that the June 14, 2021, IEP provided for the special education programming/related services: (1) daily in ICR for Science, English, Geometry, and History; (2) daily Pull-out Supplementary Instruction: Reading Workshop; (3) speech/language group therapy once a week for thirty minutes; (4) individual counseling services once a week for twenty minutes; and daily shared group aide. See Exhibit A, Vol. II, A630-645. See also ECF 1-3 at Findings of Fact ¶6. Most notably, this IEP does not recommend LLD placement.

51. It is denied that students with A.T. 's profile are guaranteed to move through the special education continuum usually into a resource setting once the support and academic basis and routines are established. Defendant District has provided no proof to support this allegation. Parents contend that Defendant District pre-determined without parental input and a finalized IEP that A.T. would be better served in the LLD placement.

52. It is admitted that Defendant District's Director of Special Services, Dr. Howland, testified that he agreed to place A.T. in an ICR program, monitor his progress, and reassess. See Exhibit C, Vol. V at A1453, 47:1-21.

53. It is admitted that Dr. Howland testified that A.T. was due for his tri-annual evaluations at the beginning of 9th grade, during the Fall of 2021. See Exhibit C, Vol. V at A1454, 48:8-13.

54. It is admitted in part that Dr. Howland testified that she disregarded her own opinion regarding A.T. 's needs and placed A.T. in ICR. It is denied that placing A.T. in LLD would have provided A.T. with a free and appropriate public education. Defendant

District provided no finalized or draft IEP for 2022-2023 and no finalized IEP for 2023-2024, to substantiate their pre-determined decision to place A.T. in LLD. See Exhibit C, Vol. V at A1453, 47: 6-13.

55. It is admitted that A.T. began the 9th grade at Colts Neck High School, with a June 14, 2021 IEP that placed him in an ICR program. See Exhibit C, Vol. V, A1453 at 47: 1-21. See also Exhibit A, Vol. 2, A630-645. See also ECF 1-3 at Findings of Fact ¶7.

56. It is admitted only that A.T. was not doing well in the ICR setting. However, Defendant District speculates that A.T. could have done better in another placement. Defendant District has presented no finalized IEP nor evidence that A.T. could have done better in LLD placement. See Exhibit C, Vol. V at A1457, 51:12-19.

57. It is denied that the fact of A.T.'s progress was evident to school professionals and to Plaintiffs. Dr. Howland's testimony is wholly speculative. See Exhibit C, Vol. V, A1457 at 51:12-19.

58. It is admitted that Dr. Howland testified that A.T. 's teachers were aware of A.T. 's functioning, and had concerns as to how his needs could be met in a large ICR setting, even with a one-to-one paraprofessional. See Exhibit C, Vol. V at A1457, 51:5-11.

59. It is admitted only that on October 24, 2021, Plaintiffs emailed Defendant District. Any characterization of Plaintiffs' email correspondence is denied. See Exhibit A, Vol. 2 at A543. See also ECF 1-3 at Findings of Fact ¶8. Furthermore, the email correspondence referenced requested written communication solely regarding Lab Biology accommodations.

60. It is admitted only that on November 3, 2021, Plaintiffs emailed A.T.'s case manager. Any characterization of Plaintiffs' email correspondence is denied. See Exhibit A, Vol. II, at A561. See also ECF 1-3 at Findings of Fact ¶9.

61. It is admitted only that A.T.'s case manager answered Plaintiffs' email. Any characterization of A.T.'s email correspondence is denied. See Exhibit A, Vol. II at A561. See also ECF 1-3 at Findings of Fact ¶9.

62. It is admitted only that on November 11, 2021, correspondence from Plaintiffs was sent to Defendant District. Any characterization of this correspondence is specifically denied. See Exhibit A, Vol. II, A562-563. See also ECF 1-3 at Findings of Fact ¶10. The email correspondence sought to schedule a meeting with A.T. 's team and teachers so all were aware of his IEP modifications and accommodations.

63. It is admitted that on December 1, 2021, Defendant District sent Plaintiffs correspondence for an invitation for annual review meeting because A.T. was due for his tri-annual re-evaluations. See Exhibit A, Vol. II, A649-653. See also ECF 1-3 at Findings of Fact ¶11. However, the meeting notice also came with a request for Plaintiffs to consent to waive 10-day written notice for a Child Study Team Meeting.

64. It is admitted only that Dr. Howland testified that Defendant District presented Plaintiffs with a re-evaluation plan, dated January 21, 2022, to ascertain A.T.'s current levels of functioning and needs, and assist Defendant District in developing an appropriate IEP that would meet A.T.'s needs, address parent concerns about his progress, and assist with developing appropriate post-secondary transition goals. See Exhibit C, Vol. V at A1458-1460, 52:25-54:1.

65. It is admitted that on January 21, 2022, Plaintiffs and Defendant District met for A.T.'s triennial reevaluation planning meeting, annual IEP and transition meeting. It is admitted only that at that meeting the following reevaluations were discussed: Occupational Therapy; Psychoeducational; Neurodevelopmental; and Assistive Technology. See Exhibit A, Vol. II at A521-527. See also ECF 1-3 at Findings of Fact ¶12. Defendant District cites to the consent form which omits Speech-Language evaluation, which was discussed at the January 21, 2022, meeting, and includes Neurodevelopmental, which, in turn, was not discussed. Parents contend that this is not a clear record. Furthermore, Defendant District sent Parents the consent for reevaluation on January 21, 2022. See Vol. III at A1067-A1073. That consent for evaluation form listed Parents consenting to speech, occupational therapy, psychoeducational, and neurodevelopmental evaluations. See Vol. III at A1072-73. Parents noted on the signature page disagreement with, *inter alia*, the procedures and level of teacher input, "as no data supports these claims. It is not a true description of our son, or the supports he has received." See Vol. III at A1073.

66. It is admitted only that on February 2, 2022, Plaintiffs provided signed consent to the proposed reevaluations. See Exhibit A, Vol. II, A521-527. See also ECF 1-3 at Findings of Fact ¶12. However, former counsel explicitly objected to the "present levels" section on the consent form cited to by Defendant District, and asked for clarification on the Neurodevelopmental evaluation. Defendant District did not answer. Therefore, Plaintiffs were forced to sign the form only to avoid an immediate due-process filing.

67. It is admitted only that on February 11, 2022, Plaintiffs revoked consent for the agreed upon evaluations. See Exhibit A, Vol. II at A548. See also ECF 1-3 at Findings of Fact ¶12. Plaintiffs were forced to revoke consent after Defendant District ignored former

counsel's written objections and questions about the consent form, and emailed two HIPAA/PHI release forms demanding unrestricted access to A.T. 's medical records. Defendant District never answered repeated requests for clarification or translation.

68. It is admitted only that Ms. Fitzhenry testified that A.T. struggled to keep up academically in his 9th grade ICR placement and that his levels of reading comprehension were far below that of the ninth grade curriculum and grade level reading comprehension is a skill assumed in an ICR setting. See Exhibit C, Vol. V at A1656, 35:10-21 (Fitzhenry). See also ECF 1-3 at Findings of Fact ¶13. However, any characterization of A.T. 's progress and Ms. Fitzhenry's testimony is specifically denied and purely speculative. Parents contend that Defendant District did not add or continue the supports that previously made A.T. successful in ICR, including supplementary reading intervention, counsel goals, BIP/FBA, and fully digital accessible work.

69. It is admitted only that Ms. Fitzhenry testified that A.T. struggled to read and understand material in History and Biology and keep up with the pace of instruction in the ICR setting. See Exhibit C, Vol. V at A1656, 35:21-25. However, any characterization of A.T.'s progress and Ms. Fitzhenry's testimony is specifically denied and purely speculative. Parents contend that the certified administrative record shows that Defendant District failed to implement the June 14, 2021, IEP accommodations including digital access, assistive technology, and advance materials.

70. It is admitted only Ms. Fitzhenry testified that A.T. behaviors such as putting an "X" through the assignment when he did not want to do the assignment. See Exhibit C, Vol. V at A1657, 36: 1-4. Any characterization of A.T's. behaviors are specifically denied. Defendant District's own Assistive Technology evaluation documents A.T. has

handwriting concerns as the reason he crossed out work – not behavioral avoidance. See Exhibit A, Vol. I at A171. Furthermore, Defendant District never conducted an FBA to determine the source of A.T.'s behaviors. (See Exhibit C, Vol. III at A946-A956.)

71. It is admitted only that Ms. Fitzhenry testified that A.T. would rather complete something on a worksheet, rather than a Google Document, if the whole class was using the worksheet. See Exhibit C, Vol. V at A1657, 36:4-10. Any characterization of A.T. 's IEP is specifically denied. Furthermore, Plaintiffs have sent multiple emails to Defendant District stating that A.T. is not receiving digital access to schoolwork, and therefore, is being forced to write, although he is unable. See Exhibit A, Vol. II at A543; See also Vol. III at A1160.

72. It is admitted only that Ms. Fitzhenry testified as to the social behaviors of A.T. It is specifically denied that A.T. struggled socially. Ms. Fitzhenry's testimony is purely speculative. See Exhibit C, Vol. V at A1657-1658, 36:19-37:14. See also ECF 1-3 at Findings of Fact ¶13. Furthermore, parents contend that the certified administrative record contains no documentation that A.T. continuously struggled socially and behaved poorly in school, requiring a change in placement, for grades 9 and 10.

73. It is admitted only that Ms. Fitzhenry testified as to the social behaviors of A.T. It is specifically denied that A.T. struggled socially. Ms. Fitzhenry's testimony is purely speculative. See Exhibit C, Vol. V at A1657-1658, 36:19-37:14. Furthermore, parents contend the certified administrative record contains no documentation that A.T. continuously struggled socially and behaved poorly in school, requiring a change in placement, for grades 9 and 10.

74. It is admitted only that Ms. Fitzhenry testified as to an incident involving A.T. 's gym classmate. Ms. Fitzhenry's testimony is purely speculative. See Exhibit C, Vol. V at A1658-1659, 37:15-38:5. Furthermore, parents contend that the certified administrative record contains no documentation that A.T. continuously struggled socially and behaved poorly in school, requiring a change in placement.

75. It is admitted only that Ms. Fitzhenry testified as to an incident involving A.T. 's gym classmate. See Exhibit C, Vol. V at A1658-1659, 37:15-38:5. Any characterization of this incident is specifically denied. Furthermore, parents contend that the certified administrative record contains no documentation that A.T. continuously struggled socially and behaved poorly in school, requiring a change in placement.

76. It is denied that Defendant District assigned a paraprofessional to A.T. during gym and non-structure times. Ms. Fitzhenry, however, testified only that Defendant District assigned a paraprofessional to A.T. during gym and non-structure times. Any characterization of the students' feelings is specifically denied. See Exhibit C, Vol. V at A1658-1659, 37:15-38:5. Furthermore, parents contend that the certified administrative record contains no documentation that A.T. continuously struggled socially and behaved poorly in school, requiring a change in placement.

77. It is admitted only that Ms. Fitzhenry testified that these behaviors would have been addressed if A.T. was enrolled in the LLD, rather than the ICR, program, because the LLD curriculum is based on the development of personal skills. It is denied that these behaviors could not be addressed, however, in other programs, like the ICR program. In the ICR program, the special education teacher could have modified the curriculum based on A.T.'s IEP which could have, in turn, helped his behavior. Furthermore, despite

providing consent, no FBA was ever conducted. See Exhibit C, Vol. III at A946-A956. See also Exhibit C, Vol. V at A1659, 38:10-24. Furthermore, parents contend that the certified administrative record contains no documentation that A.T. continuously struggled socially and behaved poorly in school, requiring a change in placement.

78. It is admitted only that Ms. Fitzhenry testified that LLD classes have classroom behavioral plans based on positive reinforcement and include on-the-spot teaching and learning. See Exhibit C, Vol. V at A1659, 38:10-24.

79. It is admitted only that Ms. Fitzhenry testified that in an LLD classroom, if a student is having a difficult time with another student and says something inappropriate, the teacher or the paraprofessional can stop the lesson in place and address it. See Exhibit C, Vol. V at A1659, 38:10-24. Furthermore, parents contend that the certified administrative record contains no documentation that A.T. continuously struggled socially and behaved poorly in school, requiring a change in placement, for grades 9 and 10.

80. It is admitted in part and denied in part. It is admitted that A.T.'s final ninth-grade report card for the 2021-2022 school year reflected failing grades in Biology and History. It is denied that he failed Geometry and English, as parents contend that his scores reflect passing. See Exhibit A, Vol. II, at A722. See also ECF 1-3 at Findings of Fact ¶14.

81. It is admitted only that on May 31, 2022, Defendant District sent an invitation to Plaintiffs for a June 7, 2022, IEP Annual Review meeting. However, Plaintiffs received the invitation on June 3, 2022, and that Plaintiffs advised Defendant District that they and their counsel were not available that day. See Exhibit A, Vol. II at A 622-624 and A567-575. See also ECF 1-3 at Findings of Fact ¶15.

82. It is admitted only that on June 6, 2022, Defendant District proposed two more dates for the IEP Annual review meeting, June 14 and 15, 2022; and that Plaintiffs and their counsel were not available those days. It is denied that the dates provided were rejected. As evidenced by the certified administrative record, Plaintiffs' counsel had prior engagements and could not attend. See Exhibit A, Vol. II at A 622-624 and A567-575. See also ECF 1-3 at Findings of Fact 15.

83. It is denied that on June 16, 2022, Defendant District and Plaintiffs, through their respective counsel, agreed to continue A.T. 's eligibility under the terms of his June 14, 2021 IEP, which was set to end on June 30, 2022, until the Parties could meet. The cited correspondence contains no agreement. Defendant District requested "express consent" from Plaintiffs' former counsel to continue eligibility for A.T. until the parties were able to convene an IEP meeting. Plaintiffs' former counsel did not provide express consent; rather, Plaintiffs' counsel simply requested additional dates for the meeting. In turn, Defendant District responded: "I am accepting your email below as consent to continue eligibility for A.T. until all Parties can meet for an IEP meeting." See Exhibit A, Vol. II at A 622-624 and A567-575. See also ECF 1-3 at Findings of Fact ¶15.

84. It is admitted only that on July 21, 2022, Defendant District sent Plaintiffs an invitation for an initial identification and evaluation planning for August 2, 2022. See Exhibit A, Vol. II at 625-627. See also ECF 1-3 at Findings of Fact ¶16.

85. It is admitted only that the parties met for an eligibility meeting on August 2, 2022. However, the August 2, 2022, meeting was noticed to Plaintiffs solely as an initial-identification, eligibility meeting. Plaintiffs were not provided any draft nor finalized IEP, or reevaluation consent form. Defendant District relies upon A577-593 to

support the allegation at Paragraph 85. However, this document is an unsigned, undated draft, with no attendance page, nor signature. See Exhibit A, Vol. II at A577-593. See also ECF 1-3 at Findings of Fact ¶16.

86. It is admitted only that Dr. Howland testified that at the August 2, 2022, IEP meeting, A.T. 's 9th grade progress and a draft IEP for the 10th grade were discussed. Any characterization of Dr. Howland's testimony and A.T. 's grades are denied. Additionally, Defendant District contradicts itself by now saying this IEP meeting was to discuss ninth-grade progress, present levels, and a tenth-grade draft IEP. Defendant District has already alleged this was an initial identification and planning meeting for special education. See Exhibit C, Vol. V. at A1468-1468, 61:11-62:2.

87. It is admitted only that Dr. Howland testified that at the August 2, 2022, IEP meeting, the recommendation for the self-contained LLD programming was once again proposed. However, the alleged draft August 2, 2022 IEP includes no reference to the LLD recommendation. See Exhibit C, Vol. V. at A1468-1468, 61:11-62:2.

88. It is admitted only that the Plaintiffs did not provide consent for the implementation of the alleged August 2, 2022 draft IEP and the recommended reevaluations. However, Plaintiffs did not provide consent because no IEP, draft IEP, or written reevaluation plan was ever presented or provided to them. Parents contend that Plaintiffs were not shown this draft IEP until it first surfaced in 2024 discovery in the federal case 3:24-cv-00822. See Exhibit A, Vol. II at A577-593. See also ECF 1-3 at Findings of Fact ¶16.

89. It is admitted only that Plaintiff Mother testified that she attended six (6) IEP meetings while A.T. was enrolled with Defendant District. Any characterization of Plaintiff

Mother's testimony is specifically denied. See Exhibit C, Vol. V at 1801-1802, 180:21-181:3.

90. It is admitted that Dr. Howland testified that following the August, 2022 IEP meeting, Defendant District's guidance department, which generates student schedules based on what is contained in the proposed IEP, prepared a proposed schedule for A.T. that reflected an LLD program, which was uploaded to the student information system, Genesis. However, the Defendant District created this schedule unilaterally. This placement change triggered Plaintiffs' September 1, 2022, due process filing. This change should not have been made as no finalized IEP was completed, nor any drafts were completed. See Exhibit C, Vol. V at A1473, 67:5-18 (Howland). See also ECF 1-3 at Findings of Fact 17. See also Vol. II at A751.

91. It is admitted that on September 1, 2022, Plaintiffs filed a petition for due process, invoked stay-put, and A.T.'s educational programming reverted to the last agreed upon IEP, the June 14, 2021 IEP that placed A.T. in an ICR program. This was because Defendant District unilaterally changed his program without a parent permission, nor proposed and/or finalized IEP. See Exhibit C, Vol. V, A1472-1474 at 66:22-68:10. See also ECF 1-3 at Findings of Fact ¶18. See also Vol. II. at A751. See also Vol. I at A44-A73.

92. It is admitted that Dr. Howland testified that the Defendant District's practice is that once a parent retains counsel that any questions, comments, and concerns regarding the disagreements must go through their attorney or advocate. See Exhibit C, Vol. V at A1474-1476, 68:11-70:3.

93. It is admitted that Ms. Fitzhenry testified that Plaintiffs' Mother sent emails to her. Any characterization of Ms. Fitzhenry's testimony regarding Plaintiff Mother's emails are specifically denied. See Exhibit C, Vol. V at A1667, 46:2-16.

94. It is denied that Plaintiffs' behavior was, in any way, combative, aggressive, and egregious. Any characterization of Dr. Howland's testimony is specifically denied. See Exhibit C, Vol. V at A1476-1477, 70:4-71:16.

95. It is admitted only that on October 13, 2022, Plaintiffs signed an invitation for an October 27, 2022, Annual Review IEP meeting. See Exhibit A, Vol. II, A654-657. See also ECF 1-3 at Findings of Fact ¶19.

96. It is admitted only that on October 27, 2022, the Parties met for an Annual Review IEP meeting. Any characterization of this meeting is denied. It is further denied that Plaintiffs refused to permit implementation. Defendant District relies upon the October 27, 2022 IEP which was a draft and unsigned document. Parents contend this draft IEP has no attendees listed and was not seen until civil discovery. See Exhibit I, Vol. I at A137-155. See also ECF 1-3 at Findings of Fact ¶19.

97. It is admitted only that on October 27, 2022, the Parties met for an Annual Review IEP meeting. It is further admitted that Dr. Howland testified regarding the October 27, 2022, Annual Review IEP. Any characterization of this meeting is denied. Furthermore, any characterization of Dr. Howland's testimony is denied. The corresponding averment mischaracterizes A.T. 's behaviors in class and puts the onus on him to complete and fixate on work. See Exhibit C, Vol. V at A1499-1501, 93:17-95:5. See also ECF 1-3 at Findings of Fact ¶21.

98. It is admitted only that the October 27, 2022 draft IEP recommended the following: Special Class Mild/Moderate Learning or Language Disabilities for Science, English, Math and History, as well as recommended Speech/Language Therapy, Counseling Services, and a shared personal aide. It is denied that this IEP was appropriate. Parents contend this draft IEP only showed up in the civil case of June 2024. The draft IEP contains no attendee list, nor signatures. See Exhibit I, Vol. 1 at A137-155. See also ECF 1-3 at Findings of Fact 20.

99. It is admitted only that on October 27, 2022, Plaintiffs' signed consent for the following reevaluations: Speech/Language Therapy; Occupational Therapy; Psychoeducational evaluation; Neurodevelopmental evaluation; and Assistive technology evaluation. However, Defendant District never obtained consent for a separate psychological evaluation or a separate educational achievement evaluation. Nevertheless, Defendant District never obtained consent for a separate psychological evaluation or a separate educational achievement evaluation. Parents contend that both were conducted without Plaintiffs' consent. See Exhibit A, Vol. II at A533. See also ECF 1-3 at Findings of Fact ¶22.

100. It is admitted only that Dr. Dorothy Pietrucha, M.D. performed the pediatric neurologic-neurodevelopmental evaluation on November 10, 2022, which diagnosed A.T. with autism-spectrum disorder. Any characterization of Dr. Howland's testimony is denied. It is further denied that this was the first time Defendant District became aware of possible autism-related needs. Parents contend that the certified administrative record contains multiple indicators, including social-communication deficits, rigid behaviors, sensory issues, and prior behavioral supports, that triggered child-find obligations well

before November of 2022. See Exhibit A, Vol. II at A628-629; See Exhibit C, Vol. V at 1501-1502, 95:23-96:16. See also ECF 1-3 at Findings of Fact ¶23.

101. It is admitted that on November 22, 2022, and December 23, 2022, a Speech and Language Re-evaluation was conducted, which found that A.T.'s performance in expressive language was in the third percentile; his receptive percentile was in the fourteenth percentile; and his pragmatic skills were in the first percentile. Any characterization of Dr. Howland's testimony is specifically denied. See Exhibit C, Vol. V at A1502-1503, 96:23-97:14. See also ECF 1-3 at Findings of Fact ¶24.

102. It is admitted only that a psychological evaluation was conducted on December 15, 2022. Any characterization of the evaluation and Dr. Howland's testimony is specifically denied. However, the psychological evaluation report has no mention of Woodstock-Johnson IV and zero "broad achievement score." See Exhibit C, Vol. V at A1504-1504, 98:19-99:17, A1663-1664, 42:4-43:13. See also ECF 1-3 at Findings of Fact ¶25.

103. It is admitted only that a psychoeducational evaluation was conducted in January of 2023. Any characterization of this evaluation and Ms. Fitzhenry is specifically denied. The document Defendant District cites is only an academic achievement test. Parents contend the certified record contains two identical copies of this same report - one is labeled "Educational Evaluation" and the other is re-labeled Psychoeducational Evaluation, with no substantive differences. See Exhibit C, Vol. V at A1664-1665, 43:18-44:15. See also ECF 1-3 at Findings of Fact ¶26. See also A715-730.

104. It is denied and disputed that the data from the reevaluations are consistent with prior evaluations, and support Defendant District's recommendations in June 2021, August

2022, October 2022, and May 2023 for LLD placement. It is further denied and disputed that the data is reflective of what is observed in the classroom, and consistent with how A.T. performed in the general education classroom/ICR placement. Any characterization of Dr. Howland's testimony is specifically denied. Furthermore, the 2022-2023 revelation data Defendant cites did not exist in June 2021, August 2022, or October 2022, and, therefore, could not support any LLD recommendation made on those dates. Parents contend the only prior evaluations actually available at transition did not recommend LLD; they documented that A.T. was making progress in mainstream/ICR with proper accommodations, assistive technology, and other related services. No contemporaneous classroom observation, teacher report, or qualified evaluation links A.T.'s performance to a need for self-contained LLD placement. See Exhibit C, Vol. V at A1505-1506, 99:22-100:16.

105. It is denied that Plaintiffs had the responsibility to provide any contradicting findings of the Fall and Winter 2022 evaluations prior to Plaintiffs' due process petition hearings of July 29 and July 30, 2024. Parents contend that two of the five fall/winter 2022-2023 evaluations were legally invalid, as they were conducted without consent and re-labeled; the underlying performance data was tainted, as the data was collected during unlawful non-implementation of the June 14, 2021 IEP; and the district never followed its own findings by providing the identified supports. Plaintiffs have no obligation to contradict this data. See Exhibit C, Vol. V at A1505-1506, 99:22-100:16.

106. It is admitted that on March 17, 2023, Plaintiffs signed an invitation to the April 3, 2023, reevaluation eligibility, with annual review IEP meeting. However, no lawful IEP meeting occurred. Plaintiffs requested translation services on the invitation form, but such

were not provided, thereby denying meaningful parental participation. See Exhibit B, Vol. II, at A660. Parents contend the meeting addressed only evaluation results; no draft IEP or finalized IEP was provided or discussed. The meeting was then stopped and rescheduled because the speech-language pathologist was absent to interpret her evaluations. Parents requested an FBA and additional evaluation data due to WISC subtest discrepancies indicating possible other disabilities, but this request was not honored. See Exhibit A, Vol. II at A658-660. See also ECF 1-3 at Findings of Fact ¶27.

107. It is admitted that the Parties held a May 3, 2023, IEP meeting. Any characterization of the meeting is denied. Parents contend the May 3, 2023 meeting was a continuation of the April 3, 2023 reevaluation/eligibility and annual-review IEP meeting. Document translation was requested on the invitation for parent A.T. but was not provided. Although the May 3, 2023, draft relied on the recent reevaluation data, it was substantively identical to the June 14, 2021 IEP in services, accommodations, and goals, except it changed placement to LLD, which is more restrictive, and reduced counsel services, which is less supportive. Parents contend the meeting could not be finalized because Defendant District did not provide the evaluation information the parent requested to address the significant scatter in A.T.'s WISC-V subtest scores. Defendant District also failed to initiate or complete the requested FBA. See Exhibit A, Vol. II at A455-483; See Exhibit C, Vol. V at A1506-1507, 100:24-101:24. See also ECF 1-3 at Findings of Fact ¶27.

108. It is admitted only that Plaintiff Mother testified that the May 2023 IEP has a section delineating Parental Concerns. Parents contend the May 2023 draft IEP contains a Parental Concerns section, but it does not accurately reflect the concerns Plaintiffs

expressed at the April and May 2023 meetings. See Exhibit C, Vol. V at A1803-1805, 182:5-184:10.

109. It is denied that the Defendant District proposed an IEP with a classification of autism, and a program of special education and related services to be provided in an LLD class. Parents contend that no final IEP proposing an autism classification or an LLD placement was ever presented at the May 3, 2023 meeting. The team deferred all placement and program decisions pending completion of the requested FBA and additional data, which were necessary due to the significant scatter in A.T.'S WISC-V subtest scores suggesting possible other disabilities. It is further denied that this recommendation to place A.T. in an LLD program was appropriate. See Exhibit A, Vol. II at A455-483; See Exhibit C, Vol. V at A1506-1507, 100:24-101:24. See also ECF 1-3 at Findings of Fact ¶27.

110. It is admitted only that the May 3, 2023, draft IEP proposed special class mild/moderate learning or language disabilities for Science, English, Math, and History, as well as speech-language therapy, counseling services, and a shared aide. It is denied that this proposed IEP was appropriate. It is further denied that this IEP was finalized, offered, or provided to parents at or after the May 3, 2023 meeting. Parents contend that placement decisions were expressly deferred pending further evaluations, including an FBA for which parents provided consent. See Exhibit A, Vol. II at A484-511. See also ECF 1-3 at Findings of Fact ¶28. See also Vol. II at A845-850.

111. It is admitted only that Dr. Howland testified as to the May 3, 2023, draft IEP. Any characterization of the May 3, 2023 draft IEP and Dr. Howland's testimony is specifically denied. Parents contend that the cited present levels provided by Defendant District are

unverified staff assertions placed in an unsigned draft. Defendant District recognized that A.T. 's behaviors required an FBA before any valid behavioral present levels or programming could be established, obtained consent for the FBA in May 4 2023, then abandoned it and never completed the FBA nor reconvened a meeting. See Exhibit C, Vol. V at A1510-1511, 104:12-105:16. See also ECF 1-3 at Findings of Fact Paragraph 28. See Exhibit A, Vol. II at A845-850.

112. It is admitted that Dr. Howland testified as to what grades were in A.T. 's report card for the 2022-2023 school year. See Exhibit C, Vol. V at A1514-1515, 108:20-109:7. See also ECF 1-3 at Findings of Fact ¶29.

113. It is admitted only that on March 1, 2024, Plaintiffs filed a due-process complaint. Any characterization of Plaintiffs' due process complaint is specifically denied. See ECF 1-3 at Findings of Fact ¶30.

114. It is admitted that on March 19, 2024, the parties met for a follow-up meeting wherein the Defendant District proposed an IEP. It is denied that the proposed IEP was appropriate, as it was not finalized, nor corrected with updated data. Parents contend that this draft IEP was simply the unchanged May 2023 draft, reissued without any of the required updated data. Defendant District still did not conduct FBA, although consent was provided on May 4, 2023, one year prior, no transition or vocational assessments, no provisions for A.T. 's spinal condition which required a surgery, and no reference to the confirmed HIB incident of March 14, 2024. At the meeting, Plaintiffs again requested long-overdue FBA. Defendant district refused and then unilaterally implemented the finalized March 14, 2024 draft IEP in violation of stay-put and parental participation rights. See Exhibit A, Vol. II at A484-511. Vol. IV A1297A1323A1784; A1806- A1807.

115. See also ECF Findings of Fact 31.

116. It is admitted that during the March 19, 2024 IEP, Defendant District proposed an IEP. It is denied that the proposed IEP was appropriate, as it was not finalized, nor corrected with updated data. Parents contend that during this meeting, no finalized IEP with autism classification or LLD placement was ever proposed or agreed. Only an incomplete draft was presented. The draft contained no FBA results, no provisions tied to the confirmed HIB incident, and no accommodations for A.T.'s spinal cord surgery. Plaintiffs objected to these omissions and renewed their request for overdue FBA. Defendant District refused to discuss. Thereafter, Defendant District unilaterally issued a draft IEP on or about April 4, 2024, without parental participation and in violation of stay-put. See Exhibit A, Vol. IV A1297A1323 A484-511. See also ECF 1-3 at Findings of Fact ¶31. See also Exhibit C, Vol. V at. A1784 and my exchange with Judge A1806-A1807.

117. It is admitted only that the March 2024 draft IEP lists nine (9) concerns raised by Plaintiffs. However, it must be noted that Plaintiffs raised the following concerns, as the record omits and sanitizes such concerns: (1) Defendant District's refusal to conduct an FBA; (2) the need for an independent FBA, which the parents had requested; (3) safety and behavioral needs following the confirmed March of 2024 HIB incident; (4) required home instruction and accommodations related to A.T.'s spinal surgery; (5) the absence of post-secondary transition planning; (6) failure to implement assistive technology; and (7) the denial of translation services for parent A.T. Parents contend that during the time leading up to the March 2024 draft IEP, A.T. had a medical condition that forced him to be absent from school multiple times. These significant absences were never addressed

nor accounted for by Defendant District, rendering the performance data relied upon by Defendant District unreliable for determining placement and FAPE. See also Exhibit C, Vol. V at A1520, 114:4-16.

118. It is admitted only that during the March 19, 2024 IEP meeting that Plaintiffs requested that A.T. be provided a Functional Behavioral Assessment. However, no FBA consent form was ever issued by Defendant District on or after March 19, 2024; none exists in the certified record and, therefore, there was nothing for Plaintiffs to revoke. The cited testimony refers to a different meeting/request, not March of 2024. See also Exhibit C, Vol. V at A1520, 114:4-16.

119. It is admitted only that A.T. 's report card for the 11th grade shows that he received a D+ in U.S. History; C- in Business Management, and an E in English III. Any characterization of his report card is specifically denied. However, Parents contend that Defendant District was on notice from November of 2023 until present that A.T. had a deteriorating spinal-cord condition and medically necessary absences followed. Despite this, Defendant District failed to amend the stay-put IEP, or any IEP to address his health-related needs; provided no accommodations, no home instruction, and no services during months of medically required absences before and after surgery; and issued a unilateral April 2024 IEP that contained no home instruction or services as per his IEP while not in school for medical recovery for A.T.'s spinal cord condition nor upcoming surgery, although Plaintiffs had submitted paperwork to school; the draft IEP also did not contain counseling or speech services when he was in the hospital, nor at home, and could not do his work at school. See Exhibit B, Vol. IV at A1278; See Exhibit C, Vol. V

at A1521-1522, 114:3-116:20. See also ECF 1-3 at Findings of Fact ¶32. See also Vol. III at A972-976.

120. It is admitted only that Dr. Howland testified that he was of the opinion that A.T. should not remain in an ICR program. Dr. Howland's opinion bears no weight, however, as it relies on no completed FBA, false testimony that Parents revoked consent to FBA, and is based on unsigned, undated, draft IEPs that were never presented to Parents. See Exhibit C, Vol. V at A1525, 119:5-14.

121. It is admitted only that Dr. Howland testified as to A.T. being placed in an ICR program. Any characterization of Dr. Howland's testimony is specifically denied. Furthermore, Parents contend that Dr. Howland's testimony that A.T. had "almost zero" chance of progress in the ICR setting is unsupported and unreliable because: (1) no FBA was conducted; (2) Defendant District's own psychoeducational evaluation revealed significant WISC-V subtest scatter indicating possible additional disabilities and no further testing or programming was followed; (3) no current behavioral data or vocational/transitional assessments were conducted; (4) the opinion was formed while A.T. received zero special-education services for two full school years; and (5) Dr. Howland's testimony is based on the belief that Parents revoked FBA consent in 2024. Dr. Howland and the team took no action to evaluate or accommodate a major medical health condition, resulting in surgery, for which they were made aware of multiple times. His medical condition caused many absences for which are not accounted for in subsequent draft IEPs, which impede Defendant District's ability to include reliable data. See Exhibit C, Vol. V at A1525, 119:5-14.

I hereby certify that the foregoing statements by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

MONTGOMERY LAW, LLC.
Attorneys for Plaintiffs

By /s/Bradley R. Flynn
Bradley R. Flynn, Esq.
NJ Attorney I.D. No. 173362016

Dated: December 12, 2025.