John D. Rue[†]
(founder)

—

Krista L. Rue

—

Francis X. Geier

**RUE LAW GROUP**[*]
A PRIVATE PUBLIC INTEREST LAW FIRM
5 LAKE DRIVE
WOODLAND LAKES, RANDOLPH, NJ 07869
(862) 283-3155 (main)
(973) 860-0869 (facsimile)

June 29, 2026

***Via ECF only***
The Honorable Zahid N. Quraishi, U.S.D.J.
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

RE:     ***A.T. and O.T. o/b/o A.T. v. Freehold Regional High School District Bd. of Educ.,***
           **(No. 3:25-cv-01728-ZNQ-JTQ)**

Dear Judge Quraishi:

This letter is submitted on behalf of A.T. pursuant to the Court's June 15, 2026 Order (ECF 43), which granted leave to supplement the Administrative Record and administratively terminated the parties' cross-motions for judgment on that record.

Undersigned counsel entered an appearance on June 17, 2026. Since that time, counsel has reviewed the materials inherited from prior counsel, the Administrative Record volumes maintained by prior counsel, additional materials obtained from the New Jersey Department of Education and the Office of Administrative Law, and the filings presently before this Court. That review demonstrates that the following issues should be resolved before the cross-motions are reinstated.

   I.     **The docket does not appear to contain the certified Administrative Record upon which the parties based their cross-motions.**

The files inherited from prior counsel contain five volumes labeled **"Administrative Record,"** internally and consecutively paginated. Those volumes plainly served as the source material cited throughout the parties' briefing.  That said, the volumes do not contain any facial evidence of their provenance, so it would be adventurous to casually identify them as the "Certified Administrative Record."

The undersigned has consulted orally with prior counsel, who states that a link was received from the New Jersey Department of Education on or around October 30, 2025.  (Prior counsel forwarded a copy of that link, which is no longer functioning.)  Prior counsel states that, to the best of his recollection, that link led to a document download that was subsequently assembled by his office into five volumes.  This, I am informed, is the documentation referred to by both parties as Volumes I-V, pages A-1 to A-1816.  My office has these documents, and an index

---

*Bene facere bonum - Doing well by doing good*

†     Licensed in New York as well as New Jersey
1     John Rue & Associates, LLC has registered "Rue Law Group" as a DBA, to ensure compliance with NJ RPC 7.5 (incorporating RPC 7.1). The underlying legal entity remains John Rue & Associates, LLC.

which has been checked against it.  So for purposes of this letter, although the documents bear no certification seal nor any footer indicating their provenance, the undersigned treats these pages as the undisputed Administrative Record.  However, the entire record does not seem to be on the docket in one place, unless it is sealed and counsel for A.T. (newly appearing in this case) does not have access to it.

The Court gave examples of where it was puzzled by citations to the record. The citations in ECF No. 20-2, paragraphs 9, 13, and 15, are addressed below.

- Paragraph 9 cites to Volume I at A406 as support for the proposition that A.T. and O.T. speak Albanian as their native tongue.  The cited document is a letter from Hilary Freeman to ALJ Gertsman, in which reference is made to the Plaintiffs' need for a translator.

- Paragraph 13 cites for A.T.'s need for assistive technology, to Volume III A1146 (an email from O.T. to the science teacher about A.T.'s need for assistive technology)[1], and a *see also* citation to Volume III at A1147-55 (various emails and school work product).

- Paragraph 15 cites, as support for the proposition that A.T.'s English teacher refused to provide him with digital graphic organizers (as required by his IEP), to Volume III at A1025-35 (written communications about the organizer), and Volume V[2] at A1759-60 (hearing testimony by O.T. on the digital organizer).

The above examples are attached hereto (in redacted form) as Exhibits A, B, and C, respectively.

The problem, therefore, is not that the parties cited nonexistent evidence. Rather, they cited throughout to a multi-volume Administrative Record that does not appear to have been filed with the Court in certified form or otherwise.

For the convenience of the Court and counsel, the undersigned (with consent from counsel for the District) will file the full record (as received from prior counsel) on the docket, together with a motion to seal to protect the sensitive information contained therein.

II.        **Certain materials before the Administrative Law Judge appear to be absent from the Volumes I-V from which the Parties have been working.**

Separate from the absence of the complete Administrative Record from the Court's docket, the undersigned understands from O.T. that she has identified numerous additional materials that *were* before the ALJ, but *were not* included in the record that was linked to prior counsel.  I have not had an opportunity to review the full list of such documents and confirm that they were both before the ALJ below and omitted from the administrative record.  However, a single example (which I have examined) will illustrate the need to ensure that the record is complete.

On July 24, 2024 (two business days before the hearing), the ALJ convened a final prehearing conference.  On that conference, the question arose about how the ALJ would treat the assertion

---

[1] The citation incorrectly cites to A1145-46.
[2] The filing refers to Volume VI, but that appears to have been a typo.  There is no Volume VI, and the referenced pages appear in Volume V.

of claims under Section 504 at the hearing.  The ALJ expressly held at the July 24, 2024 conference that Section 504 is "not part of this case."  This was an exclusion of the Section 504 claims from the hearing.  Nonetheless, in the final decision, the Judge expressly held:

> Regarding the parents' contention that the District violated Section 504 . . . ADA, I CONCLUDE that the record lacks substantiation of any harassment or retaliation by the District against either A.T. or the parents, and therefore these claims are without merit and are DENIED."

The transcript of the July 24, 2024 conference was not included in the files transmitted by NJDOE.  However, as recently as last month (in May 2026), the parents were able to obtain a copy of it to document the above recited colloquy.  *See* Exhibit D, page 10.  Very clearly, this document belongs in the administrative record on this appeal.  In addition, the parents have obtained the transcripts from four other pre-hearing conferences.  None are included in the record obtained from NJDOE.  All must be considered by this Court.

As indicated above, O.T. has informed the undersigned that numerous other documents, properly before the ALJ at the hearing, were excluded from the record transmitted by NJDOE.  Given time to review her full list, the undersigned expects to be able to represent to the Court the full parameters of that document set.  When a complete set has been gathered, it is anticipated that a motion would be in order (unless consent can be obtained) to expand the administrative record.  A.T. respectfully submits that the Court should ensure that the Administrative Record includes all proceedings and filings that were before the Administrative Law Judge.

**III.      The District's submission at ECF No. 48 should not become part of the Administrative Record.**

The District's June 18, 2026 submission (ECF No. 48) consists of documents that, by the District's own description, were not before the Administrative Law Judge. The District's letter characterizes those documents, more than once, as outside the administrative record, and offers them as evidence of the student's progress after the events at issue. Material that was not before the ALJ is not part of the administrative record, and it does not become part of that record merely because a party attaches it to a letter.

On review of an IDEA administrative decision, the record is the record of what was presented in the proceedings below. The only avenue by which a court receives anything beyond that record is the additional-evidence provision, 20 U.S.C. § 1415(i)(2)(C)(ii), which permits the court to "hear additional evidence at the request of a party." *Susan N. v. Wilson School District*, 70 F.3d 751 (3d Cir. 1995) (construing the predecessor provision, then codified at § 1415(e)(2)), is the controlling authority on that clause, and it forecloses the use the District attempts here.

The District has made no request that satisfies the statute. It has filed a letter, not a motion, and it offers no argument that any attached document is relevant to any issue on this appeal. Section 1415(i)(2)(C)(ii) admits additional evidence only "at the request of a party," and Susan N. contemplates a proffer that the district court evaluates for admissibility before anything is received. 70 F.3d at 758. The District has tendered nothing for the Court to evaluate in its favor.

On that basis alone, the documents are not properly before the Court and should not be treated as part of the administrative record.

Even if the District's letter were construed as a request, its documents fail the governing standard. *Susan N.* holds that "additional" evidence means "supplemental" evidence, and that the starting point for what may be received "is the record of the administrative proceeding." 70 F.3d at 759. The court may receive only evidence that is "relevant, non-cumulative and useful," *id.* at 760, and it retains discretion to exclude evidence that merely repeats or embellishes the proceedings below, *id.* at 759-60.

Most important, *Susan N.* sharply limits evidence generated after the decisions under review. The court held that after-acquired evidence "may be considered only with respect to the reasonableness of the district's decision at the time it was made," and that a court may exclude evidence "that could have been available when the school district made its decision." 70 F.3d at 762. The court expressly warned against "Monday Morning Quarterbacking" in evaluating the appropriateness of a child's program. *Id.* Later evidence of how a student fared cannot be used to validate, in hindsight, decisions that must be judged as of the time they were made.

The District's documents are precisely the evidence Susan N. confines or excludes. The District offers them, by its own account, to show the student's later progress, which is the hindsight use the Third Circuit forbids. Several postdate not only the IEPs at issue but the July 2024 hearing and the ALJ's December 11, 2024 decision, so they could not have informed any decision under review. Others could have been placed before the ALJ and were not. The District offers no relevance showing for any of them and ties none to an issue on appeal. Under *Susan N.*, such material is either excluded or, at the very most, received solely to test whether the District's decisions were reasonable when made, which does not appear to be the purpose for which the District offers it.

The principle is symmetrical, and A.T. asks the Court to apply it evenhandedly: the administrative record on this appeal is defined by what was before the ALJ, and neither party may enlarge it by attaching out-of-record material to a letter. A.T. therefore respectfully requests that the Court decline to treat the documents submitted at ECF No. 48 as part of the administrative record, and exclude them unless and until the District files a proper motion under 20 U.S.C. § 1415(i)(2)(C)(ii) and demonstrates, document by document, that the requirements of *Susan N.* are satisfied.

## IV.        Requested Relief.

A.T. respectfully requests that the Court:

1.  With consent (solely as to this Number One), A.T. requests leave to upload the full administrative record (as received by prior counsel on or around October 3, 2025) to the docket, accompanied by a motion to seal the entire document, to protect highly sensitive information contained in these materials; and

2.  Set a briefing schedule for any party who wishes to expand the administrative record beyond that provided by NJDOE on or around October 30, 2025, which briefing (where seeking to include materials that were not before the ALJ) should rely on the legal standard articulated

in *Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 753 (3d Cir. 1995).  In order to permit the undersigned a full opportunity to review the possible materials, we respectfully request that said briefing schedule commence within approximately thirty days, and

3. Once the content of the record is settled, convene a status conference to discuss whether the previously submitted briefing on summary judgment should be supplemented or replaced.

Respectfully submitted,

*John Rue*

John D. Rue
Counsel for A.T., individually and on behalf of his son, A.T.

# Exhibit A

FREEMAN LAW OFFICES, LLC

4) Whether the Freehold Regional High School Board of Education denied Petitioners FAPE for the 2023-2024 school year in violation of the IDEIA and/or Section 504 of the Rehabilitation Act by:

   a. Failing to propose an IEP at the May 2023 IEP meeting and again at the March 2024 IEP meeting that was individualized to address A.T.'s social, emotional, transition and other academic needs after the Parents expressed their challenges with A.T. agreeing to go to a more restrictive environment;
   b. Failing to implement accommodations and modifications as set forth in A.T.'s June 14, 2021 ("stay put") IEP;
   c. Inappropriately penalizing A.T. by suspending him for conduct that was a manifestation of his disability, thus denying A.T. access to his education; and
   d. Refusing to communicate with A.T.'s parents to address their concerns.

5) Whether the Board denied FAPE when it failed to provide documents and/or a translator in the family's native language.

6) If it is determined that the Board failed to provide FAPE during the 2021-22, 2022-23 and 2023-24 school years, we ask Your Honor to consider whether the Petitioners are entitled to compensatory education to make up for missed educational opportunities and/or instruction tailored to address A.T.'s academic, social, emotional and transition needs that would have been provided but for the aforementioned violations. This could take the form of additional education services and reimbursement for tutoring and related expenses incurred by the Petitioners as a result of the Board's failures.

7) Should Your Honor determine that the Petitioners are the prevailing parties under Section 504 of the Rehabilitation Act, the Petitioners request an Order directing the Board to reimburse any fees incurred for experts engaged in relation to this case;

8) If it is determined that Petitioners are prevailing parties, Petitioners reserve the right to seek reimbursement of legal fees in the appropriate forum.

Lastly, please accept this correspondence as a request to arrange an Albanian interpreter at the upcoming hearing to ensure Petitioners understand the testimony at the hearing.

Thank you for your attention and courtesies in this regard.

Respectfully,

*Hillary Freeman*

Hillary D. Freeman

Cc:    John Comegno, Esq.
       Clients

PRACTICING THROUGHOUT NEW JERSEY AND PENNSYLVANIA

**A406**

# Exhibit B

**P -189**

 Gmail

**Lola Tafani <lolatafani@gmail.com>**

---

**Re:** ███████ **IEP**

---

██████████████████                                            Sun, Oct 24, 2021 at 11:47 AM
To: Danielle Recine <DRecine@frhsd.com>, Kimberly Rosas <KRosas@frhsd.com>
████████████████████

Hi Mrs. Rosas and Mrs. Recine,
I received your phone call at 12:45 pm on 10/22, however we would prefer that our communication is in writing until we have clarification on the issue of IEP accommodations and whether they are going to be met in Mrs.Recine class (Lab Biology).
███████

> On Oct 20, 2021, at 7:45 PM, L██ T████ <███████@gmail.com> wrote:
>
> Dear Mrs. Recine and Mrs. Rosas,
> Per A██'s IEP, Aldi needs digital access to his assignments in advance in order to improve his chances of success academically. His IEP also clearly states that he is to be allowed to type or use speech-to-text for all written work. For reference, this accommodation is found on page 11 of Aldi's current IEP. Handwriting is not, and will never be, a skill that A██ should be required to perform due to underlying medical diagnoses that prevent him from successfully handwriting. I have attached a PDF copy of Al█i's IEP to this email for your review.
> A███ unable to type his class assignments or any assignment unless it is first assigned in Google Classroom. Telling a child 'you can type' is not equivalent to providing him with the tools he needs to type.
> For the last 6 years, A██'s IEP and google classroom were very successfully applied in general education setting in every subject. In high school, you decided to full stop follow the IEP, throw accommodations here and there as you see fit, eliminate google classroom and go to paper and pen.
> In your review of A██'s IEP, please also note that modifying coursework, assessments and assignments is included, as is providing a preview of the material for all courses, which would require posting materials and assignments on Google Classroom. Finally, A██, again per his IEP, has up to 5 additional days to submit all work for all classes, as well as additional time for all tests and assessments.
> All of A██'s accommodations and modifications are very clearly and succinctly spelled out in his IEP on page 11. Countless hours of work from attorneys to develop A██'s IEP. Both schools agreed on it. You full stop following his IEP! Imagine that!
> Should you have questions about how to implement these legally required accommodations and modifications, let me know. I anticipate that A██'s accommodations and modifications will be honored going forward.
> L██

---

📄 **Tafani, Aldi IEP and Letter 6-17-21.pdf**
226K

**A1146**

**P -190**

 Gmail

L█ T█████ ████████@gmail.com>

## Biology

**Kimberly Rosas** <KRosas@frhsd.com>                              Mon, Oct 25, 2021 at 4:43 PM
To: L█ T████ <████████@gmail.com>

Dear Mrs. T████,

I hope you are doing well. Mrs. Recine and I tried to call you and left a voicemail on Friday, October 22. I also wanted to inform you of A██'s difficulty during the fire drill earlier that day. During the drill he panicked, screamed, grabbed his backpack and ran over people and out of the door in a couple of seconds. One of his teachers was standing by the door and was able to run after him and catch him before he left the building. In addition, we also wanted to discuss your IEP concerns, as sometimes tone can be misconstrued in email and we want to ensure you that we are taking your concerns seriously.

Since you do not want to speak over the phone, I will relay our message to you, here, with the hopes that you will call to discuss further.

Each of A██'s teachers, myself and the supervisor take following a child's IEP very seriously and IEPs are adhered to. A██ does get speech to text and the accommodation to type. A██ is able to use a Google Doc to type any of his responses instead of writing them on paper. He is given access to hard copies and digital copies of the notes and Powerpoints so that he does not have to write them down. He repeatedly chooses not to type during class assignments and chooses to write instead, even with teacher reminders that he is not required to handwrite his responses. A██ is part of a separate Google Classroom for Biology with additional materials to support his needs.

We want to ensure you that A██'s assignments and assessments are modified and accommodations are provided. A██ is given extended time for assignments, and additional time for assessments is provided during the school day.

I look forward to hearing from you to discuss any further concerns.

Thank you,


*Kim Rosas, NCSP*
School Psychologist
Colts Neck High School
732-761-0190  x1021


**Confidentiality Notice:** The information contained in this communication is privileged and confidential and is intended for the sole use of the intended recipient. If you are not the intended recipient of this email, do not read, distribute or reproduce it (including any attachments). If you have received this email in error, please immediately notify the sender by telephone or email reply.

**A1147**

**P -191**

 L██ Ta██ <lolatafani@gmail.com>

## Re: Biology

L██ ████ <██████@gmail.com>                                    Mon, Oct 25, 2021 at 7:24 PM
To: Kimberly Rosas <KRosas@frhsd.com>
Cc: A██ <a█████@gmail.com>

Hi Mrs. Rosas,
In order for me to tell Aldi what the teacher wants him to do in class, I need to understand, where is the teacher instructing him to type his work or copy notes when assignments like the following are handed in the classroom ?
L██

**A1148**

P -191
pg. 1



Per: 5  Date: 10-1-21

**Geological History of Oxygen**

*How has Earth's atmosphere changed over time?*
*How have the Earth system and life co-evolved over time?*

1. Go to: http://www.hhmi.org/biointeractive/geological-history-oxygen    click "launch interactive"
2. Click "Start, click, and learn"
3. Go through each segment on the graph and fill in the graphic organizer below. Keep in mind the guiding questions above as you work. In each Stage of the graph, click and read/listen to the videos and animations. Answer the following questions:
   a. What was the environment/atmosphere like? How do we know? (evidence)
   b. What was the life on Earth like? How do we know? (evidence)

\* click environment + life for each stage

**Stage 1: Earth Without O₂**

| Years: | Environment: | Life: |
|---|---|---|
| 3.8-2.4 Billion | There was very little O₂ in the atmosphere | X |

**Stage 2: The Great Oxygenation Event**

| Years: | Environment: | Life: |
|---|---|---|
| IDK | X | X |

**Stage 3: The "Boring Billion"**

| Years: | Environment: | Life: |
|---|---|---|
| 2.4-1.8 Billion | X | X |

IS2T2Explain2 HHMI Graphic Organizer History of Oxygen Student Handout

A1149

**P -191**

**pg. 2**



Stage 4: Increase in Atmospheric $O_2$

Environment    Life:

Stage 5: $O_2$ Levels Above Present Day

Environment    Life:

Stage 6: Recent $O_2$ Levels

Environment    Life:

...th the graph, click on each type of organism. Describe the organism in one sentence. How long have ... organisms been on Earth?

| ...ganism | Description | | Length of Time on Earth |
|---|---|---|---|
| ...aerobes | | | |
| ...archaebacteria | | | |

IS2T2Explain2 HHMI Graphic Organizer History of Oxygen Student Handout

**A1150**

P -191

pg. 3



A1151

P -191
pg.4



**58** Summative Assessment

1. The diagram below shows the South Atlantic ocean. Samples taken from the seabed were dated using radiometric dating. The positions of the sample and their age are shown in the table below:

(a) Plot the data on the map above to show the position where the sample was taken.

(b) What happens to the age of the rock as you move from west to east across the South Atlantic?

The land will fit together

(c) Draw a line on the map to indicate where rocks of the age 0 million years would be found.

(d) Explain what causes the production of new rocks on the seabed: It is just land

2. Explain why rocks in the continental crust are older than rocks in the oceanic crust:

© 2016 BIOZONE International
ISBN: 978-1-927309-37-7
Photocopying Prohibited

A1152

P -191

pg. 5



**101** Soils and Microbes

**Key Idea.** Soils are a complex mix of weathered rock and organic material. Microbes play an important role in producing soil.

1. When did the first soils appear? _500 million years ago._

2. Describe the role of weathering in soil formation:

3. Describe the role of microbes in soil formation:

4. Describe role of plants in soil development:

5. How did soils influence the evolution of plants and soil organisms?

A1153



## 96 The Coevolution of Earth's Systems

**Key Idea** The Earth and life on Earth have evolved together. Life modifies the environment and the environment shapes the evolution of life.

1. What is meant by coevolution? The influence going up.

2. Describe how life causes the environment to change: It changes the land structures.

3. How does the environment allow for life to evolve?

4. Describe a specific example of life modifying the environment:

A1154

**P -191**

**pg.7**



On Oct 25, 2021, at 4:43 PM, Kimberly Rosas <KRosas@frhsd.com> wrote:

Dear Mrs. T█████,

I hope you are doing well. Mrs. Recine and I tried to call you and left a voicemail on Friday, October 22. I also wanted to inform you of A██'s difficulty during the fire drill earlier that day. During the drill he panicked, screamed, grabbed his backpack and ran over people and out of the door in a couple of seconds. One of his teachers was standing by the door and was able to run after him and catch him before he left the building. In addition, we also wanted to discuss your IEP concerns, as sometimes tone can be misconstrued in email and we want to ensure you that we are taking your concerns seriously.

Since you do not want to speak over the phone, I will relay our message to you, here, with the hopes that you will call to discuss further.

Each of A██'s teachers, myself and the supervisor take following a child's IEP very seriously and IEPs are adhered to. A██ does get speech to text and the accommodation to type. A██ is able to use a Google

**A1155**

# Exhibit C

8

**P -127**

 Gmail





---

**Erin Meredith Pray** <epray@frhsd.com>                                    Tue, Nov 9, 2021 at 3:46 PM
To: Lola Tafani <lolatafani@gmail.com>, Kimberly Rosas <KRosas@frhsd.com>

Dear Mrs. T▇▇▇,

I wanted to let you know that A▇▇'s behavior in English class has become increasingly disruptive this past Monday.  He is continually shouting questions about when the last day of school is and yelling that it's too much work and he doesn't want to do it and he will go on his laptop to play games.  In the past he was able to transition to classwork much faster but Monday specifically he refused to do the classwork.  He eventually did some of the work, but it required multiple attempts from the para and assistance from me to settle him down.

The students are going to write a personal narrative based on one of the topics they brainstormed last week.  He was not able to immediately recall the events he wrote about in the brainstorming session.  Once he chose two events to write about, he had difficulty identifying adjectives that could be used to describe his experiences.
We are reviewing figurative language again and the students are creating their own figurative language to use in their personal narratives.

Please email me with any questions.

Thank you,

Mrs. Pray

**Confidentiality Notice:** The information contained in this communication is privileged and confidential and is intended for the sole use of the intended recipient. If you are not the intended recipient of this email, do not read, distribute or reproduce it (including any attachments). If you have received this email in error, please immediately notify the sender by telephone or email reply.

**A1025**

**P. 128**
**pg.1**

 Gmail

L████ <██████@gmail.com>

**Re: A█**

████████████afani@gmail.com>
To: Erin Meredith Pray <epray@frhsd.com> Cc:
Kimberly Rosas <KRosas@frhsd.com>

Hi Mrs. Pray,
The personal narrative work it's not in google classroom. The graphic
organizer posted is 190 pages of blank document with 3 words 'Personal
Narrative Organizer' . There is no lesson anywhere in figurative language
either. I checked everywhere, in every class.
Where is the class work that he became disruptive about? I cannot locate
that either.
Attached is what I see.
Have a good night.

████████

**A1026**

**pg.2**

☰ Period 2 English I – Ms. Ryan an...          Stream          Classwork

📹 **Meet**          ⋮

**Join**

**Upcoming**

Woohoo, no work due soon!

View all

Announce something to your class

**Cathy Ryan**
10:03 AM

You can complete this graphic organizer on the cor

**Personal Narrative Wri**
Google Docs

Add class comment...

📋 Cathy Ryan posted a new assignme
Nov 2

📋 Cathy Ryan posted a new assignme
Nov 2 (Edited Nov 2)

📋 Erin Meredith Pray posted a new as
Nov 1 (Edited Nov 2)

?

A1027

Writing a Personal Narrative - Mentor

pg.3

(Edited Nov 2)

Due Nov 3, 10:00 PM

icle and answer the open-ended questions. This is an example of what the expectation for the
you will be writing.

ents

nent



A1028

Personal Narrative Writing Graphic Organizer/Rubric ☆

File   Edit   View   Tools   Help

*Personal Narrative Organizer*

A1029



On Nov 9, 2021, at 3:46 PM, Erin Meredith Pray <epray@frhsd.com> wrote:

Dear Mrs. T███i,

I wanted to let you know that A██'s behavior in English class has become increasingly disrup ve this past Monday.  He is con nually shou ng ques ons about whe the past he was able to transi on to classwork much faster but Monday specifically he refused to do the classwork.  He eventually did some of the work, but it req

The students are going to write a personal narra ve based on one of the topics they brainstormed last week.  He was not able to immediately recall the events he be used to describe his experiences.
We are reviewing figura ve language again and the students are crea ng their own figura ve language to use in their personal narra ves.

Please email me with any ques ons.

Thank you,

Mrs. Pray

**Confidentiality Notice:** The information contained in this communication is privileged and confidential and is intended for the sole use of the in attachments). If you have received this email in error, please immediately notify the sender by telephone or email reply.

**A1030**

**Gmail**

Lola Tafani <lolatafani@gmail.com>

---

## Re: Aldi

---

**Erin Meredith Pray** <epray@frhsd.com>                                    Wed, Nov 10, 2021 at 8:24 AM
To: a████ ████ <a███████@gmail.com>, L██ T███ <███████@gmail.com>,
Cc: Kimberly Rosas <KRosas@frhsd.com>

**A1031**

*Personal Narrative Organizer*

Name ▮▮▮▮▮▮▮

Christmas Show

| Figurative Language: Include at least four vivid examples of the devices listed below<br><br>• Imagery (visual, sound, touch, smell, taste)<br>• Metaphor<br>• Simile<br>• Personification<br>• Alliteration<br>• Hyperbole<br>• Onomatopoeia | #1 The Show was so long and made my hair turn gray. | #2 I was excited like a dog with its owner. | #3 | #4 |
|---|---|---|---|---|
| Events: Include a clear conflict (obstacle, problem, or tension) that is resolved in some way.<br><br>Brainstorm key plot events you will include in your story. | Conflict: The Show is boring. How was it resolved? I got to leave a few minutes early | Key Plot Event: | Key Plot Event: | Key Plot Event: |
| POV/Voice | | | | |
| Theme<br>What lesson did you learn? | | | | |

A1032

## Untitled: Number One
by Laurence Bass

Anthony Johnston remembered very little regarding what happened minutes ago. Recollections of a block party, the taste of fruit punch and his older sister's voice were faint. They were vivid images transitioning into shadows, a choir lulled to a whisper. Breathing is a luxury. The plastic mask covering his nose and mouth halts speech, more oxygen is forced into his mouth. Light above him is obstructed by a figure. He fights to adjust his blurred vision only to have it regained seconds later. The apparition is true—God is a black woman, donning latex gloves shouting his name. The tiny room quakes and sways over potholes and sharp turns. Each movement adds a new sensation. Where there once was fiery led now resides a cool vacancy. His naked chest displays the crimson tattoos of entry wounds. Nickel-sized holes allow life to ooze into his shirt and onto the white sheeted bed cradling him. Sins of the target repented for with the blood of the innocent bystander. His tears follow, mixing with the sweat upon his face. Voices replace the stalled engine that vibrated the room. The unlatched door reintroduces Anthony to the muggy June night atop Chicago. Stars are the lone respite from pain. A neon-red sign soon cuts through his vision as he enters his destination. Shouts become louder. The wheels below him wiggle down the taupe corridor. Fluorescent lights pass over him in rhythm. His head is now heavy, weighted down by the inevitable. Ice water replaces the warmth that pumped through his 11-year-old body earlier that day when his mother let him lick the cake batter from the spoon. His lungs contract as his extremities relax. The change is as slow and dramatic as the tilting of his head to the side. He sees the running brown stripe on the wall broken only by doors. A fleeting moment before all fades to white.

MY Story is about imagery.

| Christmas Show | A good grade |
|---|---|
| The show was long. | • I was excited. |
| I needed to leave early. | • I did great. |
| MY dad didn't let me leave | • I got a Sticker. |

I'm sorry about that, Ms. Ryan must have attached the wrong document to google classroom.

**A1033**

**P -129**

**pg.4**

He is choosing not to use the option of writing on the computer, however.

He will need to add imagery to his personal narrative, we helped him with some ideas.

This week and next week we will be writing the narrative in class.

Thank you,

Mrs. Pray
Get Outlook for iOS

---

**Warning:** This message came from an EXTERNAL address. <u>DO NOT</u> click on links or attachments unless you know the sender and the content is safe. Suspicious? Forward the message to Technology@frhsd.com

**A1034**

**P -130**

 Gmail

**Lola Tafani <lolatafani@gmail.com>**

---

## Phone Conversations

---

**Julia Chrobocinski** <jamchrobocinski@gmail.com>                    Thu, Oct 14, 2021 at 1:55 PM
To: L████ T████ <████████@gmail.com>

Hi - in addition to what I texted you, Pray said she has two RR classes - one with 5 students and one with 8 and feels that Aldi would do better in that environment as his frustration level in the class of 30 is evident every day. You and I knew this was going to be the recommendation. She said the other day he was engaged in conversation with another boy and it was a pleasure to see. She said he requires one-on-one support and she can't give that to him in the larger class but in the smaller class he is much more productive. I told her that my job was to make her life and A██'s life easier with school and to please use me as a resource for him - when things are getting to be too much, to let me handle the work with him and to please just post it online. We ended on a positive note.

Recine was very nice too but is also pushing for A██ to be in a smaller class size. She said he tells her every day how much he hates Science, he hates the class, he insists on writing things down. I asked her why all materials used in class weren't in the class drive folder for us to type on and she said that it is a reasonable expectation for students to be expected to hand write short assignments and that it is a skill to be practiced. That made my head spin. Of course I kept it professional but I said that I have students who type everything - no matter how short the assignment. She said she did check with his case manager about the need to type and the case manager said that it was not unreasonable to expect Aldi to handwrite these notes to be used for tomorrow's essay. She was not budging on it. She kept repeating that they have gone over everything A██ needs for this essay all week in class - they were in group discussions in class, the class discussed this concept as a whole, that one as a whole, blah, blah, blah. The study guide is going to be graded for completion so we can submit that, I finished it. They are expecting him to have handwritten notes for tomorrow and as much as I asked if he could please type them out, she kept saying "they are expected to have handwritten notes". She could have been speaking in front of someone else, I'm not sure. She assured me that A██ would not fail but cautioned that she "didn't know how much he was getting out of class". Pray also used that term as well so they may have been coached prior to my phone calls. Both are happy to work with me in the future, everyone is on same page that he will not fail but I'm getting the feeling only Art and I are on team for Aldi staying in gen. ed. class but Pray and Recine are team RR.

For this essay tomorrow I would just have A██ hand write some notes from the study guide I did on his graphic organizer that has the essential question on it and bring that in. At least they can't say he didn't do it. However, I am not expecting A██ to have a good experience with this essay writing task in school - I feel bad for him already!!!

**A1035**

# Exhibit D

9

STATE OF NEW JERSEY
OFFICE OF ADMINISTRATIVE LAW
OAL DOCKET NOS. EDS 09467-22
EDS 05894-24

```
_____
                              :
A.T. AND O.T.                 :
ON BEHALF OF A.T.,            :
                              :
        Petitioner,           :
                              :        TRANSCRIPT
-vs-                          :            OF
                              :    RECORDED PROCEEDINGS
FREEHOLD REGIONAL BOARD       :
OF EDUCATION,                 :
                              :
        Respondent.           :
_____:
```

July 24, 2024


BEFORE:

THE HONORABLE JACOB GERTSMAN, A.L.J.


APPEARANCES:


A.T. AND O.T., PRO SE
Petitioners


COMEGNO LAW GROUP
By: John B. Comegno, ESQ
Attorney(s) for Respondent


Transcriber: Deborah Plyler
CRT SUPPORT CORPORATION
2082 Highway 35, P.O. Box 785
South Amboy, N.J.  08879
Phone: (732) 721-4330
Fax:   (732) 721-7650

I N D E X                                                    2

| WITNESS | DIRECT | CROSS | REDIRECT | RECROSS |
|---------|--------|-------|----------|---------|

{ALL COLLOQUY}

E X H I B I T S                                    3

NO.          DESCRIPTION                          I.D.   EVID.


{NO EXHIBITS MARKED}


NO.          DESCRIPTION                          I.D.   EVID.

Colloquy                                    4

THE COURT: Good afternoon.  We're on the record, we are here for a status conference for the consolidated matter of EDS 05894-2024 and -- I'm sorry, excuse me, I've got to get that -- (out of microphone range) and it's 09467-2022, it's <u>A.T. and O.T. On Behalf Of A.T. vs. Freehold Regional Board of Education.</u>

Can I get everyone's appearances please, first for the -- for the County -- I'm sorry, for the District?

MR. COMEGNO: John Comegno, Comegno Law Group, here for Freehold Regional and Roberto Fernandez, not entering an appearance, also here from my office.

THE COURT: Good afternoon.  And for the parents?

MS. T.: O.T. -- (the Petitioner states her 7full name for the record)

MR. T.: A.T., parent -- (the Petitioner states her full name for the record)

THE COURT: Okay.  A couple things, so quite frankly everyone you have been inundating my chambers for the last week and a half, we have this hearing and on -- coming on Monday and I was not confident that we were going to be prepared and I wanted to make sure that we had everything taken care of before so we could

just start right away on -- on Monday morning at 9:30.

So the first thing on the -- my agenda for today is I want to memorialize on the record my decision yesterday that was sent by email about I am granting the depart -- I keep saying department, pardon me, I am granting the Board's Motion to Quash the subpoena of Kelsey Rebelo pursuant to N.J.A.C. 1:1-11.3, I have found that they have demonstrated good cause.

Now let's move on to the first email that came in this morning with a letter from Mr. Comegno. So, Mr. Comegno, first of all, due tot he short time frame before the hearing on Monday I will not be issuing an amended prehearing order, but I did want to discuss what you brought up.

So you want to -- there was an issue in the prehearing order, which I will bring up in a moment -- now I'm glad you brought to my attention, it should have been brought to my attention earlier, but we are here and I wanted to make sure that this is -- that this is done correctly.

So the District is saying that number "6: Whether the District violated Section 504 in the IDEA by discriminating against A.T. and retaliating against A.T. and/or his parents," and you said that that count

was withdrawn by the Petitioner's prior counsel.  It is Exhibit D, it is the letter of August 3, 2023 and I'll read the letter in its entirety into the record here, "Dear Judge Gertsman, This office represents the Petitioners in the above referenced matter, please be advised that while my clients deny any and all allegations set forth in the Respondent's motion, the Petitioners hereby withdraw their Count 3 claims without prejudice in this matter and reserve the right to refile same should the need arise and/or file one in Federal Court in the near future.  Thank you.  Please do not hesitate to contact me with any questions or concerns.  Very Truly Yours, Hilary D. Freeman."

So -- Mr. Comegno, so that was for the original case, 09467-2022, am I correct in stating that the 504 claim is not referenced at all in the 2024 filing?

MR. COMEGNO: That's correct, Your Honor.

THE COURT: Okay.  So, Mr. and Mrs. T., can you please explain your objection to Mr. Comegno's request?

[TRANSCRIBER'S NOTE: IT IS VERY DIFFICULT TO HEAR AND/OR UNDERSTAND THE PETITIONERS AT TIMES AND TALKING OVER ONE ANOTHER]

MS. T.: The order was saying that is for the

three years, so you were saying this was for three years -- (out of microphone range)

THE COURT: No, but the - but the -- but hold on, Ma'am, I just -- I just -- we're talking about a process question here.  Your prior counsel when it was just 09467-2022, the original case that had multiple adjournments, the -- that your prior counsel withdrew the Count 3 claims which is the 504 question and that was being dealt with in Federal Court.  Is that not correct that it's being dealt with in Federal Court, Mrs. T.?

MS. T.: Yes -- (out of microphone range)

THE COURT: So I'm not really sure --

MS. T.: Yes -- (out of microphone range)

THE COURT: I -- I didn't really understand your -- your objections.  So, I mean, if it's -- what your counsel stated there that they reserve the right to refile it this forum or in Federal Court, they have filed it in Federal Court and therefore it is no longer a part of this case.

MR. T.: I thought, Your Honor, Hilary Freeman filed that in a second filing.

THE COURT: No, it is -- it is --

MR. T.: A 504 also -- (out of microphone range)

THE COURT: I'm look -- I'm looking at the letter here and it was in Mr. -- it was Exhibit D to Mr. Comegno's submission this morning and I just read it into the record.  It was dated August 3, 2023 and they withdrew Count 3, which was the 504 claim, and you have refiled that in Federal Court, that was your right to do and there is nothing preventing you from filing it in any forum.

All Mr. Comegno is saying, and I believe that he is correct but I wanted to flush it out with you here, is that that count was withdrawn from the first petition and it was not part of the second and therefore it is not part of this case.

MS. T.: Did she file this between the file in May, the -- (out of microphone range) the letter before -- like a day or two before we got the case and she claimed the 504 for the three years?

THE COURT: Well, she could -- to be blunt with you, Ma'am, she can claim whatever she wants and she could have claimed whatever she wants, and you could claim whatever she (sic) wants, but I'm telling you the only issues in this case -- look, I -- it was -- and one of the things we need to talk about is the lack of cooperation on the basic matters here.

The reason why I went directly to the -- the

petitions themselves and looked at the relief and that's what I put in the for the nature of the proceedings and issues to be resolved today because all of you were incapable of coming to the basic cooperation to -- to make sure that you can just agree on what the actual case is about.

That's why this happened, and the 504 claim is not part of this second application -- or the petition for due process.  It is part of your claim in Federal Court, that is not -- we are not dealing with the issues in Federal Court here, that's -- unless you can tell me that it is in the second, and don't ask me whether it is, this is your petition, Ma'am.

I didn't see it, I went to the -- when I came up with the -- with the list -- the list of nine items here, I took it directly from the petition for due process filed by your former counsel.

So unless you could show me where the 504 claim is in the second one I'm going to grant the -- I'm going to state on the record now that the 504 issue is not part of these proceedings.

MR. T.: Can we have time to -- (out of microphone range)

THE COURT: No, you may not.  The hearing is on Monday, you should know what's in your petition,

Sir, it's either there or it's not.

MR. T.: I know, but at the same time they filed this in the last minute, so you just have -- (out of microphone range)

THE COURT: You know -- but, you know, Mr. -- Mr. T., with all due respect, Sir, I have zero sympathy for either side here for the amount of work you are flooding my assistant with, I got three letters within an hour this morning.

The hearing is two business days away and you're going to answer my question now, the 504 -- Mr. -- Mr. Comegno, do you see in the second petition -- I -- I took these issues here directly from the relief requested from the end of your petition, Mr. and Mrs. T., do you agree that the 504 issue is not part of this, you filed it in Federal Court.  Right?

MR. T.: Yes.

MS. T.: Yes.

MR. T.: We did.

THE COURT: Then it's not part of this case. I'm granting the -- I'm not -- I am -- so the 504 is not part of this case, it is being -- it is being adjudicated in Federal Court, I wish you luck there, but it is not part of this case.

So now we move on --

Colloquy                                11

MR. COMEGNO: Thank you, Your Honor.

THE COURT: Now we move on, so Ms. Rebelo will not be testifying.  Is it correct to say -- am I correct in assuming that Ms. Lombardo is not available to testify?

MS. T.: Yes, she is not available.

THE COURT: Okay.  And, Mr. Comegno, again my recollection from one of the many letters I received in the last several days is that Ms. Rebelo -- you made an effort and she is not available.

MR. COMEGNO: That's correct, Your Honor.

THE COURT: Okay.  All right.  Well, not withstanding the fact I quashed the subpoena for the reasons stated before but, you know, and I -- I thank the -- the District for at least trying.

So at this point let's talk about the witnesses themselves.  So, Mr. and Mrs. T., let's talk about yours first, you are each going to testify.  Correct?

MS. T.: Yes.

MR. T.: Yes.

THE COURT: Okay.  Now the second question is Mr. Congoli (phonetic) -- did I pronounce that right?

MS. T.: Yes.

MR. T.: Yes.

THE COURT: Now I am not going to just -- to rule on Mr. Comegno's objections at this point because they have not -- you have not sought to enter them into the record, enter the report into the record, and you have not sought to have him qualified as an expert.

But I will say that, you know, I seem -- I read your letter today -- this morning about Mr. Congoli -- and let me -- let me see if I can pull that up here, just bear with me.  I think that we were kind of -- I wasn't really sure what your -- your concern was, why don't you -- let me -- let me pull up the letter here, tell -- Mr. -- Mrs. T., you wrote the letter and I'm just going to ask you to speak for you and your husband right now, explain -- can you explain to me what your response is to Mr. -- to Mr. Comegno's letter and just maybe trying to work this out to the extent that we can today?

MS. T.: So what did I write to answer Mr. Comegno's letter?

THE COURT: No, no.  You respond -- you sent me a letter this morning --

MS. T.: Hm-hm.

THE COURT: One of two letters you sent me this morning, Ma'am --

MS. T.: Okay.

Colloquy                                            13

THE COURT: -- an issue you're talk -- you were talking about Mr. Congoli and -- and you were responding to Mr. Comegno's letter from yesterday regarding him and about the translations for -- for -- into Albanian.

And now let me just also say that your request -- your prior request for the -- for a translations of the documents, that was not denied by me or by the Office of Administrative Law, that was denied by the Department of Education, that is their role.

Now in terms of -- I will reiterate again that if you wish to have an Albanian interpreter with you during the hearing tell me now and we will do -- I will -- and we will put the request in today.

MR. T.: We believe that there is difference between translation and interpretation and we wrote that in a letter, Your Honor, and I think it's clear what we're saying that we have an issue with the documents to be translated.  We cannot afford to have an interpreter in court -- (out of microphone range)

THE COURT: So it's -- no, but -- but the interpreter would be for you and would be provided by the Department of Education, so you need to -- so you're -- are you saying that you're having an issue

with the -- utilizing the documents in court and that -- that you're having trouble understanding them because it's not your first language?

MR. T.: Yeah, from somebody -- you saw what happened with your order, we didn't understand how to file an order -- I mean, to file a list of witnesses and you -- you ruled against us, you basically said you cannot -- you cannot have this witness in court because we didn't file it in time, and the opposing counsel opposed -- objected to the idea of giving us more time for us to do it the right way.

So it is -- it is obvious that we have issues understanding about the legal documents --

THE COURT: But if -- but if -- but if I could get --

MR. T.: -- because it is not our first language.

THE COURT: Right, and I -- and I understand that, Sir.  I'm just trying to understand what your request -- you made the request, you request was forwarded to the Department of Education, it was denied.

MS. T.: Okay.

THE COURT: I'm not -- I'm not sure --

MR. T.: Yes -- (out of microphone range)

THE COURT: I'm not sure what else I can do to assist you other than once again to offer you an interpreter to be in the hearing room with you and if you want one just let me know right now.

MR. T.: But we cannot talk -- if we have anything further we cannot talk and ask me in court after.  Right -- we cannot talk directly to you. Right?

THE COURT: I'm -- I don't understand the question, Sir.

MR. T.: O., help me out with this, please.

MS. T.: Yes.  If there is an interpreter in court we cannot speak in English, we can speak only in Albanian.

THE COURT: No, I don't think that that's -- if you need the interpreter to assist you and if you have an issue that's up to you.

You know, Mr. Comegno, any thoughts about this about -- you know, this is a unique situation where the Petitioners themselves are representing themselves *pro se* and they are the ones with the language barrier?  I have seen several -- many instances where we have a witness who is -- who is not a native English speaking and then to use a -- an interpreter.

Does the District have any feeling one way or the other about how this could work with -- I mean, I don't think that -- I don't -- I don't believe, you know, if they have the interpreter they would have to use the interpreter with everything and they could talk to me in English?

MR. COMEGNO: Yes -- (out of microphone range) And we agree with Your Honor's perspective on this and what you shared, it's certainly -- you know, we're -- we're happy to facilitate and, you know, for lack of a better word, be flexible and be understanding in the moment on the record if there is a request for an interpreter.

I will say respectfully I think there is a different -- and I think we see some issues being conflated here and -- and I say this with all respect to the Petitioners, not following an order is different than not having English fluency which I think for the years in this case it has been demonstrated, as well as -- and I say this respectfully as well, the extraordinary job that these two lay litigants are doing in prosecuting their claims.  I will also so -- and again I say that respectfully and the record reflects it, in the years that the student has been attending I do not believe there's been a request for

an interpreter at IEP team meetings or otherwise.

All that said, if there is a request we're not going to object to it or take any position other -- other than we'll abide by Your Honor's ruling and certainly be cooperative on Monday and Tuesday if -- if such a service is provided.

THE COURT: But I think that maybe, you know, Mr. and Mrs. T., you know, in order to kind of make this easier on you if you would like and if you can request it right now to -- to have an interpreter in the hearing room with you if you have an issue with a document, like what if you -- if you have an issue -- if for example one of you is asking a question and you're not sure how to phrase it properly in English, if you want to ask a question of each other of a witness and you need a little help, or just to have that person there to assist you in case -- now, look, you're -- you're -- you're -- I -- I echo what Mr. Comegno was saying, you two are very much on top of this, I have been impressed with, you know, not only how quickly your -- your filings would be and at the head of -- you know, I have -- I have seen *pro se* litigants do way worse and I am -- and I -- and I complement you with that.

But I think that if you make the request we

can -- we can put it in and have -- do our best to have somebody here -- again I can't promise something I can't deliver, but if you tell me right now I will go to our -- to the higher-ups and make sure that it is requested from the Department and even if it's just a matter of -- if you don't even need that person, they are there in case you do need them.

MS. T.: Your Honor, we agree with that, the only issue we have is we are under the impression that if there was an interpreter we could not talk at all in English, but if the --

THE COURT: No, that is -- that is not the case.

MS. T.: -- the interpreter is there to assist us, that's fine.

THE COURT: That is -- that is -- that is not -- that is not the issue.  I will put it -- after we're done in the phone call here, I will get right to our higher-ups here and request it and be very clear that you two are the *pro se* litigants and you are requesting an Albanian interpreter to assist them -- to assist you during the day, you may or -- but you are going to be doing your best to speak English but you may have an issue and then to have them there is -- is -- is what you're requesting.

Colloquy                                           19

So I will make that request, of course I'll have to -- I'll have to

MS. T.: I'm sorry to interrupt, I -- I just have to make a statement because the District always claims that we do not request the services, but I still am stressing interpreting a situation is two totally different things and they are not the same for me to speak -- because I know that none of you work listening to a different language, but it's so different and we have made this request.

THE COURT: Okay.

MS. T.: And we are the ones -- yes, we do tremendous work because we put a lot of work and we are paying a lot of people to check our English so we don't make mistakes.

THE COURT: Okay.  But -- but let's -- so that's -- the record -- when I give my opening statement on Monday morning the -- one of the things I'm going to say -- and I'm going to say it now too, is my decision is based upon the record, I have your -- your hearing exhibits -- and I want to get to that -- something about that in a moment, between the exhibits and the testimony that's what I'm going to make my factual findings on, and the factual findings are the four corners of the case, like that's what happened,

and I will make -- and I will apply those facts to the law.

Now in terms of Mr. Congoli's Report, Mr. Comegno, can you just reiterate what the District's issue is number 1, with him as an expert and the report itself?

MR. COMEGNO: Yes -- (out of microphone range)

THE COURT: And by the way -- (out of microphone range) hold on just one second, but I do not want to get into the weeds of the report, I just want to get into your overall --

MR. COMEGNO: Yes, Judge.

THE COURT: -- overall concern and then I want to hear from the T.'s and I want to do my best to try to resolve that today and if not we will deal with it on -- during the hearing.

MR. COMEGNO: Yes, Judge.  And for -- for our ownership of clogging your assistant's in box, I apologize.  We wrote with regard to this so called "Expert" issue simply to preserve it for the record mindful of the prehearing order noting a certain time period and we simply wanted to preserve the objection.

As Your Honor has noted correctly, we haven't formally moved, we simply wanted to bring it to your attention and preserve it for the record, that's the

only reason we wrote to you about this, Judge --

THE COURT: Okay.

MR. COMEGNO: -- number 1.  So and -- and I say this for the benefit of the Petitioners, for someone to be offered in a hearing they have to know something about the facts and circumstances that are at issue in the case, or alternatively as a fact witness,

Right, "I was there when the accident happened, the light was green, the light was red".  Right, "I was at an IEP team meeting and I saw what was shared, I heard what was said, I -- I" -- a teacher, "This is what's going on in class" or otherwise.

If you don't have factual knowledge, you're not a factual witness.  It's our understanding this individual has no factual background with any facts and circumstances here, so he's not a fact witness.

And then we look at experts -- (out of microphone range)

THE COURT: If I could just -- can I just jump in for a moment, Mr. Comegno?  Mr. and Mrs. T., I do recall one of our early conversations or in one of our early phone conferences that you had mentioned that one of your witnesses was going to be an Albanian translator that -- that did have some factual knowledge of certain things that you were dealing with, is this

that witness?

MS. T.: Yes, he can place -- we had asked him several times for documents that come from the school to translate it to help us out with understanding the language.

THE COURT: And -- and then my follow-up question to that is how does that relate to the issues in this case?

MS. T.: Because the District refused to translate this form and to respond -- (out of microphone range) refused and did not respond when we asked which forms to be translated --

THE COURT: And is --

MS. T.: -- so we had to get our own people to complete it.

THE COURT: Okay.  Under -- understood --

MR. T.: And he was in -- in our house helping us translating this form and seeing how frustrated we are not being able to understand certain legal documents that we asked to be translated.

THE COURT: And with all that -- with all that said, Mr. and Mrs. T., how does that relate to the issues in this case that were brought in your petition?

MS. T.: Because those are the documents, the consent forms, that they wanted us to sign without them

explaining to us what they were for, so it does --

because it denies my son years of education because of

those consent forms.  I sent emails and asked for

meetings and they ignored them.

THE COURT: But I don't understand --

MS. T.: -- (out of microphone range)

THE COURT: But Ma'am -- but Ma'am, I -- I'm

having a little difficulty following what you're

saying.  So you're saying that this -- this gentleman

translated them to you -- for you after you had signed

them.

MS. T.: No.  We didn't even submit them

because nobody called us from the school.  The school

doesn't follow up on the meetings, I sent meetings --

the requests and they don't respond -- they decided not

to respond -- (out of microphone range)

THE COURT: Okay.  But again but how does --

how does -- no, I hear -- I hear what you're saying

and, you know, certainly you -- when you are sworn in

on Tuesday and you -- and you give your testimony you

will say all that and you can point to the -- to the --

to the exhibits you are seeking to enter and you can

talk about that.

But I'm just a little confused as to what Mr.

Congoli is going to say about it if he was not in any

of these meetings, if he just -- if he is -- if he is -- you know, I think that -- I don't know if the District would -- would -- would consent to the fact that you were confused with this, you know, but I'm not really sure what that means in terms of the overall issue here of whether the District meets its burden to show that FAPE was provided to your son or not.

MS. T.: So my understanding and this is my belief that -- we are adjudicating the case here I guess.

THE COURT: Right.

MS. T.: My belief is that the Court gives us this right so when there is consent being asked and we have questions we are afforded the opportunity to have it explained to us or translated.  When they refuse to explain it to us and then they refuse to translate too what are the parents supposed to do.  The Court requires this to the District -- (out of microphone range)

THE COURT: But if I -- but I could just -- but, Ma'am, if I could just jump in one -- no, I understand exactly what you're saying.  You're going saying -- what you are saying is when you signed these consent forms -- and I'm sure we're going talk more about this when you are testifying on -- on Tuesday,

that you didn't necessarily understand it all.

But my question to you is what is Mr. Congoli going to say -- look, the issue is not whether you are -- your -- you are claiming here, and I'm sure you will claim it on the record on Tuesday, that the District didn't provide the translations for you, you didn't understand, you asked for follow-ups, and they didn't give it to you.

Again, I'm not saying whether that's -- whether I'm going to find that credible testimony, or believable testimony, it hasn't happened yet because you're -- we're -- we're on the record but you're not under oath, but question is what does Mr. Congoli have to do with any of that?

MS. T.: He translated the forms for us.  The service that was supposed to be provided from the District, he did it for us.

MR. T.: And he will explain the difference between translating and -- (out of microphone range)

MS. T.: Because for the District's Counsel to respond that we are not giving the parents an interpreter -- which we didn't even ask for, we asked for translation, because the parents is clearly fluent in an email, that to me is a red flag.  So they're denying our rights because they think we are fluent and

we don't deserve -- the Code doesn't say that fluency is a measurement of a parents' language.

MR. T.: And he has done this for Federal Court and for many courts -- (out of microphone range)

THE COURT: All right, all right, all right -- okay, okay.  All right, Mr. and Mrs. T. -- Mr. T. -- Mr. T., that's quite enough.  What we are not going to do today -- and I am telling you right now I will stop it the minute this goes on, this is not a venting session, this is not score settling.

This is fact finding and whatever issues -- and clearly you have issues with the District and I'm saying that -- I'm not saying that you should or you shouldn't, but that is not -- the issue here is that the District is going to put their case on on Monday, they are going to -- they are going to, you know, present their case and they will meet their burden or they won't, and you will put your case on on Tuesday.

But, again, so I am -- Mr. -- Mr. Comegno, do you have any other thoughts on this based on what Mr. and Mrs. T. just said -- there is -- if you squint hard enough you can see he certainly dealt with the T.'s and certainly these documents, whether he is an expert or not -- I'm not sure what he's an expert in and I'm not sure whether his report is admissible, but as a fact

witness I tend to -- I'm kind of leaning to limited testimony from him and his -- his involvement with the T.'s in their dealings with the District.  Do you have any thoughts on that?

MR. COMEGNO: So a couple of thoughts, Judge, and -- and I want to -- it want to first note -- and your prehearing order is very helpful, we now have eight issues.  Nowhere in here is there any issue with translation, interpretation, violation of the process, -- (out of microphone range) FAPE depredation, we've had multiple petitions filed, we've had multiple counsel and this issue has not been raised.

I -- I respect the fact that we've got lay litigants here that may see the case a certain way but the procedural history lays us on -- leads us on the road down to where we are just as Your Honor articulated and painstakingly, respectfully, looked through the petitions, the answers, and the issues that we have, and these issues are not here.  So I -- (out of microphone range)

THE COURT: I just -- if I could just interrupt you for a moment, I'm going to read the issues that are in prehearing order, which again were taken directly from the relief requested by -- in the -- in the two due process petitions.  Number, "1)

Whether the" --

MR. COMEGNO: Yes -- (out of microphone range)

THE COURT: -- "Whether the District's program for 2021-2022, 2022-2023, 2023-2024 school years were inappropriate to meet A.T.'s needs and were not reasonably calculated to offer a free and appropriate public education or FAPE.

"Whether A.T. should remain in an ICR setting as his stay-put placement.

"3) Whether the District failed to offer/provide a program quote/unquote, 'Reasonably calculated' to enable A.T. to make progress in light of his circumstances.

"4) Whether the District's placement violates State and Federal law.

"5) Whether the District violated the IDEA by failing to provide A.T. with an educational program designed to meet his individual needs."

"6" -- we just talked about is -- has been removed from the petition because it was withdrawn by prior counsel.

So, "7) Whether the Petitioners are entitled to compensatory education equal to the period of deprivation."

And, "8) Whether the District should be

ordered to be reimburse the Petitioners for the cost of their experts."

And, "9) Whether the Petitioners are entitled to reimbursement of costs and fees."

So, you know, Mr. and Mrs. T., can you point to which one of those issues that this witness, Mr. Congoli, would help with or testify directly to?

MS. T.: Is the parents participation part of -- (out of microphone range)

THE COURT: Mr. Comegno?

MR. COMEGNO: Your Honor, these issues as they have been identified and as they have been pled and as the issue is under the IDEA go to this young man's needs and whether or not those needs were met.

Number "1", whether the program was -- was inappropriate.  Number "2", whether he should remain in that setting.  Number "3", whether we offered a -- a program reasonably calculated.  Whether our placement violates the law -- here these issues of -- and I guess what I'm hearing is some alleged process violation that -- that wasn't alleged.  So I think from a gatekeeper's standpoint this is irrelevant, these -- these facts -- discussion of these facts I think even by the Petitioners doesn't go to these -- any of these, one of -- one of the eight issues, which we noted in our

letter.

So he's not a fact witness and secondly the opinion to be offered is not related to one of these issues.  I think it's also a -- a -- a net opinion, a characterization, his -- his thoughts about the difference between fluency and translation and -- you know, all of these things -- these issues process wise may mean a lot to the Petitioners and I respect that, but that's not what's before the Court.

What's before the Court is this IEP, did it meet the needs.  This program, the services that were offered in class, did they meet the needs, was it reasonably calculated.  Our placement and how we provided and implemented the IEP, did it violate the Code or Federal law.

That's what at issue here, Judge, and that's our perspective, and --

MS. T.: And the parents -- (out of microphone range)

MR. COMEGNO: -- and that's why we wanted to preserve this issue.

THE COURT: Mrs. T. --

MS. T.: And the parents participation is not part of creating an IEP.

MR. COMEGNO: Judge, can I respond to that?

THE COURT: You may.

MR. COMEGNO: If -- thank you, Your Honor.  If there was an allegation that the District violated 6A:14 as it relates to the composition of the IEP team to deprive parents of meaningful participation, then game on.  That allegation hasn't been made, that allegation wasn't made, that allegation is not in the prehearing order, so response to that would be that's not an issue here.

When -- when we litigate due process hearings we're looking at whether or not a student has learned, whether or not progress has been made, but -- but at times we're also looking at the process and was there a process failing that prevented that progress or that learning, that hasn't been alleged here.

THE COURT: Can I ask a question, Mr. Comegno, was the issue of -- were the process issues raised in the letter by Ms. Freeman that led -- that were part of the motion to amend the pleadings?  Do you recall?

MR. COMEGNO: Frankly, Your Honor, I don't -- I don't recall that.

MS. T.: Yes -- (out of microphone range)

MR. COMEGNO: I'm happy to look at that, I don't recall that.

THE COURT: Mr. and Mrs. T. --

MS. T.: Yes.

THE COURT: -- do you recall if that was part of that motion?

MS. T.: Yes, during '22 in the second due process and the first one and it says that "The parents requested an explanation about the personal health information", then I requested the meeting during '23 and during '24, they were in -- they are in the due process.

THE COURT: I'm sorry, if I could -- if I could just -- just -- are you reading from the cur -- one of the two petitions or -- or the motion to amend that was denied?

MS. T.: No.  From the current two petitions.

THE COURT: And, again, could you please repeat that?

MS. T.: So there during 20 -- so '22, February 10th, "Mrs. T. requested an explanation about or a translation on the personal health information," and then in 20 -- and that continues that quote in my email.  During '23, I -- I -- (out of microphone range)

MR. COMEGNO: And, I'm sorry, Ma'am, what are you reading from just so I could look at it?

MS. T.: -- (out of microphone range)

THE COURT: Yeah, and I'll try and pull it up myself.

MR. COMEGNO: Which document, Ma'am?

THE COURT: Are you looking in the original --

MS. T.: -- (out of microphone range)

THE COURT: Ms. -- Mrs. T., are you looking in the regular (sic) petition?

MS. T.: Yes.

THE COURT: Okay.  Just give --

MS. T.: The March 1, 2024.

MR. COMEGNO: Okay.

THE COURT: Okay.  You got to -- oh, 2024, so the new petition.  Okay.

MS. T.: Yes -- (out of microphone range)

THE COURT: Let me -- just give me a moment to pull it out.  And I just want to let you know that I only have a few more minutes here because I have another call at 4:00.  So I am pulling up the petition --

MR. COMEGNO: And, Judge, we have a witness availability issue that I wanted to raise when and if we can.

THE COURT: Yes.  Okay, Sir.

MR. COMEGNO: One of our two witnesses is out of State Monday and is available Tuesday and if we

could take her out of order we would appreciate that.

THE COURT: Okay.  We'll get to that in aa

minute.

MR. COMEGNO: Thank you.

THE COURT: So, Ms. T., are you -- you're

looking in the "Fact" section.

MS. T.: Yes.

THE COURT: Okay.  So "Fact" number -- and

what was that number again please, 22?

MS. T.: 22 and 23, yes.

UNIDENTIFIED MALE: I am there -- (out of

microphone range)

THE COURT: Okay.  "On February 10, 2022 Mrs.

T. requested an explanation about or translation of the

personal health information form the District wanted

A.T.'s parents to sign.  However, the District did not

respond at the time.  Mrs. T. wrote in an email" --

So, you know, Mr. Comegno, while it is not

one of the issues of the relief, I think it was clearly

a -- it is raised here in the second petition, however,

I want to -- so I think I'm -- I'm inclined to allow

the testimony as a fact witness and, you know, it just

-- it's going to be pretty limited to his -- I would

think to his -- to his involvement with Mr. and Mrs. T.

and their alleged issues with translation.

Now I'm not sure what he can -- I'm sure -- it sounds like what Mrs. T. (sic) is going to say is "Yes, I helped them with trans -- with translation. Yes, they were having issues with it", but I don't even know whether -- how that would -- how that would come into play and what that -- what that all means, you can all argue in your post hearing briefs the relevancy of it. But in terms of him being an expert --

MR. COMEGNO: Yes, Judge.

THE COURT: -- in terms of him being an -- and, I mean, I just -- I think I would rather error on the side of -- since the "Fact" -- it is in the "Fact" section of the petition the issue of translation, now whether that relates to any of the relief being sought, you know, that's a determination that I'm going to have to make later on whether any of -- how much that matters, it may matter a lot, it may matter nothing at all, or some -- something in between.

So, but in terms of him being an expert and his expert report that's an entirely separate issue and the two of you can -- and the two sides can discuss that over the next couple of days.

So, Mr. Comegno, if you -- so which witness do you have an issue with availability on -- for Monday?

Colloquy                                    36

MR. COMEGNO: That is Kelly Fitzhenry.

THE COURT: And refresh my memory --

MR. COMEGNO: Jessica Howland, who is -- yeah, Jessica Howland is our Director, she is going to be our primary witness, she is available and we're going to be taking all of our time and probably asking for a little bit more, almost all issues she will be addressing.

Ms. Fitzhenry may address some additional fact issues, I'll ask Roberto to share her title.

MR. FERNANDEZ: She is the Case Manager of -- of this case, of Mr. -- of the A.T.'s case.

THE COURT: Okay.

MR. COMEGNO: But she -- but she is also a Supervisor, Your Honor, so the Director and the Supervisor -- (out of microphone range)

MS. T.: She was not the Case Manager.

THE COURT: No.  He --

MS. T.: I just want to correct the record, she is not the Case Manager, she is the Director -- she is a Supervisor.

THE COURT: Do you mean Ms. Howland?

UNIDENTIFIED MALE: -- (out of microphone range)

THE COURT: But they're talking -- I'm sorry, he said Ms. -- Ms. Henry (sic) -- was that the name,

Fitzhenry?

MR. T.: Yes, Ms. Fitzhenry.

MS. T.: Yes, Fitzhenry.

MR. COMEGNO: Fitzhenry, Judge.

THE COURT: Okay.  So Ms. Howland is going to testify day one.

MR. COMEGNO: Yes.

THE COURT: And, you know, you -- and my prehearing order talks about the time so be prepared to -- you know, it's -- we're going to be fair here --

MR. COMEGNO: Judge -- (out of microphone range)

THE COURT: -- the time is going -- you're going to have to get done.  So I would think that if Ms. Howland is going to testify we certainly can be done before lunch.  So if Ms. Fitzhenry is not available until Tuesday, Mr. and Mrs. T., would you object to beginning your case on Monday after lunch and then allowing Ms. Fitzhenry to -- to finish up on Tuesday and if you need to -- and if you all need to finish up we can, you know, allow you to testify as well and go a little bit out of order?

MS. T.: -- (out of microphone range)

MR. T.: Can you please repeat that -- can you repeat that one more time, Your Honor?

THE COURT: Okay. So we're going to start on Monday morning, you both can have your opening statements and you don't need to go too deep into this and just a gen -- just a general overview of what the case is about, then the District will call Ms. Howland as the primary witness and they -- she should be done by the lunch break.

And then their second witness, Ms. -- Ms. Henry, is not available on Monday, she is available on Tuesday, would either of you object to beginning your case -- kind of going with the witnesses out of order, either you -- either, you know, Mr. -- Mr. Congoli can go on Monday afternoon and then you two can go on Tuesday, you -- one of you can go and Mr. Congoli and the other parent can go on -- on Tuesday along with Ms. Fitzhenry?

I'm open to being flexible here, Mr. and Mrs. T., do you object to kind of moving around the witnesses?

MS. T.: I object to the fact that they're going to take all the time and then -- (out of microphone range)

THE COURT: No, no, no, that's -- no, no, no, that's not what I said. Everyone is getting the same amount of time, it is listed in the prehearing order,

it is explicit, it is 60 minutes, I retain -- you know, depending on how things go I reserve the right to expand it if I deem it appropriate.

Everyone gets the same of time, you two have -- the two of you are testifying and you are bringing Mr. Congoli in.  The District has two witnesses, Ms. Howland who is available on Monday and Ms. Fitzhenry who is only available on Tuesday.

My question to you is -- to Mr. and Mrs. T., would you object to beginning your case in the afternoon on Monday and then having the District bring Ms. Fitzhenry at the beginning of the day on Tuesday and you can finish the remainder of your case, everyone gets the same amount of time?

MS. T.: Okay.

THE COURT: Is that okay?

MS. T.: -- (out of microphone range)

THE COURT: Okay.  So I guess -- I think that maybe the best way to handle this is to maybe have one of the parents go on Monday afternoon after Ms. Howland -- look, we might be able to get then both in in the afternoon and then we can have just -- and finish up with Ms. Fitzhenry and Mr. Congoli on -- on Tuesday.

But you can all -- I think that's probably the easiest way to -- instead of having somebody come

because -- so if you just tell Mr. Congoli he will be there and he can go first thing on -- on Tuesday morning, and then Ms. Fitzhenry can go, and if the parent still has to go we can work that all in in terms of the order.  Are we all okay with that?

MS. T.: I -- (out of microphone range)

MR. COMEGNO: Yes, Your Honor.

THE COURT: Mrs. T., any question, Ma'am?

MS. T.: I'm just not -- I'm not sure how this works that's why.

THE COURT: Okay.  So let's -- it's okay to ask that question.

MS. T.: I thought they were supposed to go first that's why.

THE COURT: They -- they -- they are, but one of their witnesses is not available on Monday but they are available on Tuesday.  In many cases we will take witnesses out of order to allow and make sure that everybody -- everything gets done in the allotted time, we have two days here.

So Ms. Fitzhenry is available on Tuesday, so they will -- the District will have their first witness, the primary witness -- and so, Mr. Comegno, Ms. Fitzhenry, how long is her testimony if she is not the primary witness?  It's not -- it's -- will you --

do you think -- do you anticipate is it --

MR. COMEGNO: I don't know if we're going to take an hour, Judge.

THE COURT: Okay.  So, Mr. and Mrs. T., what Mr. Comegno is saying is that, you know, there will be plenty of time on Tuesday to finish your -- to finish up your case, so you can do one of two things, you can -- I just think that it's kind of asking -- it's tempting fate to see -- to get Ms. Fitzhenry and all of the parents case in on Tuesday.

So maybe the best way to handle this is, Mrs. T., if you go -- or if you or your husband go in the afternoon on Monday and then we can work out the order on Tuesday with the other parent and -- and -- and the -- and Mr. Congoli as well, and then Ms. Fitzhenry will be -- will give her testimony and then we'll be done in the two days.

UNIDENTIFIED MALE: Okay -- (out of microphone range)

THE COURT: But I just want to -- I want to be very clear with you that it's just going a little out of order, and every witness how was going to testify is going to testify, everyone is going to get the same amount of time, everyone is being treated exactly the same.  Mr. and Mrs. T., do you have any questions?

MR. COMEGNO: Judge, yes.

THE COURT: Do you understand, Mr. and Mrs. T., are you okay with that?

MS. T.: I understand, it's just that we were not prepared with that, but I guess it is what it is.

THE COURT: But, like I said, everyone is -- the order doesn't necessarily matter, it's just a matter -- and the -- the record is going to -- you've got a voluminous record here, we have a very large binder so you have a lot of evidence to enter into the record, and the -- the -- and the District does as well, and I thank you all for coming together on a joint exhibit list.

So this is going to be a pretty -- and it's -- my goal is to get a complete record which -- which includes all of the documentary evidence subject to an objection from either party obviously, and -- and the full witnesses and everyone will get their -- their chance to be heard.

MS. T.: -- (out of microphone range)

MR. T.: Okay.

THE COURT: My other question is -- I don't want to get into this now, but you should all kind of review the party's exhibits and determine if you have any objections.

Mr. Comegno, any -- I don't want to get into any details, do you anticipate any objections to any proposed exhibits?

MR. COMEGNO: I can't say yes right now, Judge.  We -- we received a binder which is -- it must be five inches thick and I -- and I've been going through it, I don't have any objections right now, Your Honor.

THE COURT: Okay.  And the same thing, Mr. and Mrs. T., if you go through the District's exhibit binder, not your joint exhibits, just be prepared if you have any -- you have the right to object if the District moves in -- seeks to move in a -- in a -- an exhibit you have the right to object and of course I will rule on the objection if one is made.

MS. T.: -- (out of microphone range)

THE COURT: Finally, I was a little disappointed when I got the message yesterday that there was no joint stipulation of facts.  I'm going to reiterate again there are certain things that clearly are not in dispute -- and I'm not asking you to agree on -- on what these facts necessarily mean or if there is a fact that's not -- that is in dispute, you cert -- I'm not going to force you to agree on something, but for example "This meeting happened on this day, this is

who was there.  This email was sent on this day.  This -- this IEP was -- was signed for on this day.  This IEP was not signed for on this day".

You know, these are the -- those are the things that are -- really should not be that difficult for the parties to come to -- to stipulate that these are facts, and I'm going to reiterate my request that you keep doing this and I will allow you to -- to -- to submit it after the hearing if -- if you want to take another stab at it.

And if not you two -- when you do your post hearing briefs, which you have asked to do, the part -- the parties you can put in your -- in your brief "These are the -- these are the material facts that are not in dispute as we see it, and these are the material -- these are facts that are in dispute, and this is what we -- what we think you should find".  You can put that in your briefs as well, but I think that it will be easier certainly if you all can agree to the basic facts that -- that you all agree with.

So you all clearly disagree on what a lot of this means and what -- and when certain things happened, but there's certain things that really shouldn't be a problem with agreeing that -- that certain -- that these things actually existed, so I'm

going to reiterate my request that you -- that you take another stab at it either before Monday or -- or after the hearing.

And one last thing, have you all give any thought as to how long you would need to submit your post hearing briefs?

MR. COMEGNO: Judge, this is John Comegno, I would think two weeks after receiving the transcripts. I mean, I -- I would usually ask for a month but with the -- with Your Honor's ruling on how long the testimony is going to be, I -- I don't think we would need more than two weeks.

THE COURT: Well, on the other hand, you know, we're -- we're coming into mid August, I don't -- I'm not going to force you all to be -- I don't know if people are away or not, if any of you have vacations, we could just set a date for when the briefs are due and then set another date for a phone hearing to go over everything because you are going to -- you're going to submit it and I'm going to need time to review everything and review the whole record and get my decision out.

I am committed to get it done as quickly as possible, so do we want to pick just a day when they're due?

MS. T.: We need a little bit more -- (out of microphone range)

MR. COMEGNO: I'm happy to do that, Judge --

THE COURT: I'm sorry, Mrs. T., you were saying.

MR. COMEGNO: Go ahead, Ma'am.

MS. T.: I'm sorry.  Due to the language issues and we need help with the -- (out of microphone range) I need more than -- if the District needs two weeks we might need more than two weeks.

THE COURT: That's -- that is --

MS. T.: I have never seen one, this will be my first one.

THE COURT: That is -- that is perfectly fine, Ma'am.  I don't think -- based on what we've talked about today with the witnesses that they're going to be terribly long transcripts, but again as you just said you've never done this before.

So if the hearing will be over let's -- do we want to do like maybe the second week of September to give you all plenty of time?  You certainly can get it in earlier and then we can schedule a phone hearing for later in September to go over everything and make sure the record is all -- you know, all -- all in order, and then I can get -- get my decision out.  So we --

MR. COMEGNO: Yes, Judge.

THE COURT: And I'm certainly not -- again, I'm certainly not going to push you all to -- to get me something the last week of August, which I know I'm on vacation, I don't know if -- about any of you.

So looking at my calendar here how about September 10th, which is about six weeks, and obviously if there is a delay in the -- in the -- in the transcripts I'll certainly be willing to -- to -- to extend that?  Is September 10th a reasonable amount, Mr. and Mrs. T.?

MS. T.: I think so.

MR. T.: Okay.

MS. T.: Your Honor, I have a question about something just about the objection of --

THE COURT: No, one thing at a time, Ma'am.

MS. T.: -- (out of microphone range)

THE COURT: One thing -- let's get -- let me get -- I'm running very short on time before my 4:00 call, so let's do Sept -- September 10th for the briefs.

MS. T.: Okay.

MR. COMEGNO: And we said yes.

THE COURT: Okay.  Please submit them in PDF and Word format and if you can all please send me your exhibit indexes in Word format as well.

So then let me look at my calendar here, I would like to do a telephone hearing on Thursday, the 26th of September, which will be about two and a half weeks later, and -- actually that's really not a ton of time for me, I need time to review everything, it's pretty -- look, I'm just looking at the -- at the binders here.

So if they come in on 10th, the briefs, how about October 1st at 4:30 for a phone hearing?  And I anticipate --

MR. COMEGNO: Can you repeat that date, Your Honor?

THE COURT: October 1st, and I would anticipate that --

MR. COMEGNO: No objection from us.

THE COURT: Okay.  And I would anticipate, Mr. and Mrs. T., that my decision would not be -- it should be done not too long after that.

MR. COMEGNO: And what was the time, Your Honor, I'm sorry?

THE COURT: 4 -- 4:30 on October 1st.

MR. COMEGNO: Thank you, Judge.

MS. T.: I'm sorry, Your Honor, can I ask a question before -- (out of microphone range)

THE COURT: Sure, sure.

MS. T.: You said that objecting to the -- because we -- we just have maybe 600 pages and we see the same amount of pages --

THE COURT: Right.

MS. T.: -- 600, so we are going through the exhibits, when is the -- when can we send in the objections to these -- (out of microphone range)

THE COURT: No.  For example when -- if Mr. Comegno wants to put in R-1, whatever R-1 is, I --

MS. T.: Hm-hm.

THE COURT: -- and says "We want to admit R-1", I would say "Mr. and Mrs. T., do you object?" And you say "No, we know what that is" or "Yes, we have an objection", but you have to tell me what the objection is about, and then I would --

MS. T.: Okay -- (out of microphone range)

THE COURT: -- then I would say "Well, I would -- I agree with the objection and I'm not allowing that -- that exhibit in" or "I am admitting it over the objection".  So and, again, I would remind you to please -- please familiarize yourselves with the Court rules and the OAL rules prior to Monday.

But I will also say that -- that because the two of you are *pro se* litigants I think that the best way to -- for Mr. and Mrs. T. to testify would be for

each one of you to just go up there and give your

testimony, rather than the other parent asking

questions and but I will also add, that all being said,

you should organize what you both are going to say

because there is no need for duplicative testimony or

repetitious testimony.

So whoever goes first, lay it all out,

whatever you want to say and then the other parent can

go either right after or the next -- on Tuesday and we

just don't need to hear the same thing a second time.

MS. T.: Okay.

THE COURT: Okay.

MS. T.: Yes.

THE COURT: All right.  So that was almost an

hour, I'm glad we had the call, I think we res -- we at

least kind of resolved many of the issues.  Mr. and

Mrs. T., I have --

MR. COMEGNO: Judge, just can I -- I'm sorry

to interrupt, can I say one more thing before we wrap,

Your Honor?

THE COURT: Yes.

MR. COMEGNO: I apologize for interrupting.

And to -- to the Petitioners, I reached out to them

earlier in the week, we had a nice phone call, the

three of us, I encouraged them -- and obviously this is

not for a conversation now, my firm and their prior counsel had many settlement conversations over time which never seemed to go anywhere, I encouraged them to get us a written demand if there is interest this week and we remain open to that.

So I say that to the Petitioners respectfully if there is an interest in sending us a request or having further conversations, you know how to get me. That's all I wanted to say, Judge.

THE COURT: Okay.  Well, I -- I appreciate that and I appreciate that you had a -- a positive conversation the three of you.

So, Mr. and Mrs. T., my parting words to all of you is that -- is what one of the senior Judges who was here when I got here said it is -- it was true then and it's true now that Judges love settlements, and I'm going to do my best to -- I have had cases settle at -- during lunch breaks, cases scheduled (sic) on the morning of.

But what I will say is that -- that we have very limited time so we have to start opening statements right away at 9:30 on -- on -- on Monday morning, but you've got two business days and I hope that you can have some positive conversations.

MR. T.: Thank you, Your Honor.

THE COURT: Okay.  And -- and, Mr. and Mrs. T., I will -- as soon as we are off the phone I will -- I will, you know, submit the request for you to have a -- an interpreter on Monday morning.

MR. T.: Okay.

MS. T.: Okay -- (out of microphone range)

UNIDENTIFIED MALE: Thank you.

THE COURT: Well, I thank you all for coming in today on short notice, I think that we have dealt with a lot of issues and I think that we are ready to go on Monday morning, but hopefully with some -- a little ray of sunshine there potentially from Mr. Comegno, that you can keep talking over the next couple of days and -- and hopefully this can get resolved.

Okay.  All right, with that, I do have to go off the record now because I have a call in -- in five minutes.  All right.  Have a nice weekend everyone and I will see you on Monday morning.

MS. T.: Okay.  You too -- (out of microphone range)

UNIDENTIFIED MALE: -- (out of microphone range)

THE COURT: Have a good day everyone.

{Whereupon, the proceedings were adjourned.}

* * * * *

STATE OF NEW JERSEY }

COUNTY OF MERCER      }


         I, Deborah Plyler, assigned transcriber, do hereby affirm that the foregoing is a true and accurate transcript of the proceedings in the matter of A.T. and O.T. On Behalf of A.T. vs. Freehold Regional Board of Education, bearing Docket Nos. EDS 09467-22 and EDS 05894-24, heard on July 24, 2024 before the Office of Administrative Law Court.